**EXHIBIT B**

Person/Attorney Filing: Cheri L McCracken
Mailing Address: 705 E. Coronado Road
City, State, Zip Code: Phoenix, AZ 85006
Phone Number: (602)231-0595
E-Mail Address: cherimccracken@gmail.com
[  ] Representing Self, Without an Attorney
(If Attorney) State Bar Number: 006111, Issuing State: AZ

### IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
### IN AND FOR THE COUNTY OF COCONINO

Sandra Matlock, FKA Sandra Corder
Plaintiff(s),
v.
City of Flagstaff, a municipal
Corporation, et al.
Defendant(s).

Case No.    S0300CV202000504

**SUMMONS**

To: Amanda Tadder

**WARNING: THIS AN OFFICIAL DOCUMENT FROM THE COURT THAT AFFECTS YOUR RIGHTS.  READ THIS SUMMONS CAREFULLY. IF YOU DO NOT UNDERSTAND IT, CONTACT AN ATTORNEY FOR LEGAL ADVICE.**

1.  A lawsuit has been filed against you. A copy of the lawsuit and other court papers were served on you with this Summons.

2.  If you do not want a judgment taken against you without your input, you must file an Answer in writing with the Court, and you must pay the required filing fee. To file your Answer, take or send the papers to <u>Clerk of the Superior Court, 200 N. San Francisco St., Flagstaff, Arizona 86001 or electronically file your Answer through one of Arizona's approved electronic filing systems at http://www.azcourts.gov/efilinginformation.</u>
    Mail a copy of the Answer to the other party, the Plaintiff, at the address listed on the top of this Summons.
    Note: If you do not file electronically you will not have electronic access to the documents in this case.

3.  If this Summons and the other court papers were served on you within the State of Arizona, your Answer must be filed within TWENTY (20) CALENDAR DAYS from the date of service, not counting the day of service. If this Summons and the other court papers were served on you outside the State of Arizona, your Answer must be filed within THIRTY (30) CALENDAR DAYS from the date of service, not counting the day of service.

Requests for reasonable accommodation for persons with disabilities must be made to the court by parties at least 3 working days in advance of a scheduled court proceeding.

GIVEN under my hand and the Seal of the Superior Court of the State of Arizona in and for the County of  COCONINO

SIGNED AND SEALED this date:*October 6, 2020*

*Valerie Wyant*
Clerk of Superior Court

By:*JDUTTON*
Deputy Clerk



AZturboCourt.gov Form Set #5030165

2

Person/Attorney Filing: Cheri L McCracken
Mailing Address: 705 E. Coronado Road
City, State, Zip Code: Phoenix, AZ 85006
Phone Number: (602)231-0595
E-Mail Address: cherimccracken@gmail.com
[ ] Representing Self, Without an Attorney
(If Attorney) State Bar Number: 006111, Issuing State: AZ

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
IN AND FOR THE COUNTY OF COCONINO

Sandra Matlock, FKA Sandra Corder
Plaintiff(s),
v.
City of Flagstaff, a municipal
Corporation, et al.
Defendant(s).

Case No.   S0300CV202000504

**SUMMONS**

To: Richard Tadder

**WARNING: THIS AN OFFICIAL DOCUMENT FROM THE COURT THAT
AFFECTS YOUR RIGHTS.  READ THIS SUMMONS CAREFULLY. IF YOU DO
NOT UNDERSTAND IT, CONTACT AN ATTORNEY FOR LEGAL ADVICE.**

1.  A lawsuit has been filed against you. A copy of the lawsuit and other court papers were
    served on you with this Summons.

2.  If you do not want a judgment taken against you without your input, you must file an
    Answer in writing with the Court, and you must pay the required filing fee. To file your
    Answer, take or send the papers to Clerk of the Superior Court, 200 N. San Francisco
    St., Flagstaff, Arizona 86001 or electronically file your Answer through one of Arizona's
    approved electronic filing systems at http://www.azcourts.gov/efilinginformation.
    Mail a copy of the Answer to the other party, the Plaintiff, at the address listed on the top
    of this Summons.
    Note: If you do not file electronically you will not have electronic access to the documents
    in this case.

3.  If this Summons and the other court papers were served on you within the State of
    Arizona, your Answer must be filed within TWENTY (20) CALENDAR DAYS from the
    date of service, not counting the day of service. If this Summons and the other court papers
    were served on you outside the State of Arizona, your Answer must be filed within
    THIRTY (30) CALENDAR DAYS from the date of service, not counting the day of
    service.

Requests for reasonable accommodation for persons with disabilities must be made to the court by parties at least 3 working days in advance of a scheduled court proceeding.

GIVEN under my hand and the Seal of the Superior Court of the State of Arizona in and for the County of  COCONINO

SIGNED AND SEALED this date:*October 6, 2020*

*Valerie Wyant*
Clerk of Superior Court

By:*JDUTTON*
Deputy Clerk



AZturboCourt.gov Form Set #5030165

FILED
Valerie Wyant
CLERK, SUPERIOR COURT
10/06/2020  1:00PM
BY: JDUTTON
DEPUTY

Case No.: S0300CV202000504
HON.  CATHLEEN BROWN NICHOLS

Cheri L. McCracken, State Bar No. 006111
Attorney at Law
2402 North 24th Street
Phoenix, AZ 85008-1804
Phone: 602.231.0595
FAX: 602.231.0841
cherimccracken@gmail.com

Christopher R. Houk, State Bar No. 020843
**HOUK LAW FIRM, PLLC**
1050 East Southern Avenue, Suite A-3
Tempe, AZ 85282
Telephone: 480.569.2377
Facsimile:  480.569.2379
chouk@houklawfirm.com

*Attorneys for Sandra (Corder) Matlock*

Please send all documents to:
jmontanez@houklawfirm.com

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

## IN AND FOR THE COUNTY OF COCONINO

| | |
|---|---|
| Sandra (Corder) Matlock, | Case No. |
| Plaintiff, | **CIVIL COMPLAINT AND DEMAND FOR JURY TRIAL** |
| vs. | |
| City of Flagstaff, a municipal corporation, Richard Tadder and Amanda Tadder, wife and husband, | |
| Defendants. | |

Plaintiff Sandra (Corder) Matlock submits this Complaint for relief and Jury Trial Demand pursuant to Arizona Rules of Civil Procedure against Defendants because Defendants improperly interfered with Plaintiff's employment.

*Left margin (vertical text):* **HOUK LAW FIRM, PLLC**
1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282
Telephone: 480.569.2377 - Fax:  480.569.2379

**HOUK LAW FIRM, PLLC**
1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282
Telephone: 480.569.2377 - Fax: 480.569.2379

<u>**Plaintiff's Claims**</u>

1.    Tortious Interference with Employment.

<u>**The Parties and Jurisdiction**</u>

2.    The Plaintiff, Sandra Matlock, has been at all times material to this Complaint:

    a.  An adult resident of Coconino County, and currently resides in Florida;

    b.  Employed by Defendant City of Flagstaff, a municipal corporation; and

    c.  A person whose sex is female and whose age is 58 years old.

3.    Defendant City of Flagstaff is, and has been at all times material to this Complaint:

    a.  A municipal corporation and a body politic, established and operating pursuant to the Arizona Constitution, Art. XIII, § 1, and Title 9 of the Arizona Revised Statutes;

    b.  The employer of Plaintiff, as that term is defined in 2000e(b) in 29 U.S.C. § 630;

    c.  An employer of more than fifteen persons; and

    d.  Located within Arizona, including Coconino County, Arizona.

4.    Defendant Richard Tadder (Tadder) is, and had been at all times relevant to this Complaint,

    a.  An adult resident of Coconino County, Arizona;

    b.  Employed by the City of Flagstaff; and

    c.  Upon information and belief, is married to Amanda Tadder, acting on behalf of the marital community of his spouse and himself.

5.      Many of the events alleged occurred in Coconino County, Arizona, and Coconino County is the domicile of all parties at all relevant times.

6.      Coconino County is the appropriate venue pursuant to A.R.S. § 12-401 because Defendant resides in the County.

7.      Sandra has satisfied all conditions precedent to filing suit, including service of the Notice of Claim against both Tadder and the City of Flagstaff on May 27, 2020.

8.      Plaintiff gives notice that she has the additional, following claims against the City of Flagstaff based in part on Defendant's actions under Title VII on sex and retaliation against her that are not yet ripe because the EEOC has not issued a right to sue letter:

      a.   Title VII, 42 U.S.C. § 2000(e)-2(1) – Termination Based on Sex;

      b.   Title VII, 42 U.S.C. § 2000(e)-3(a) – Retaliation for Reporting Sex Discrimination;

      c.   29 U.S.C. § 623, Age Discrimination in Employment Act.

Plaintiff will seek to amend her complaint when the right to sue letter is issued.

9.      Amanda Tadder is named solely because of Arizona's community property laws and is properly joined pursuant to Ariz. R. of Civ. P. 19.

### Demand for Jury Trial

10.      While a written Jury demand is not necessary, pursuant to Rule 38 of the Arizona Rules of Civil Procedure, Plaintiff Sandra demands a trial by jury.

### Fact Allegations in Support of All Counts

**For Four years, the City of Flagstaff Recognized Sandra's Excellent Job Performance.**

HOUK LAW FIRM, PLLC
1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282
Telephone: 480.569.2377 - Fax: 480.569.2379

11.     Sandra re-alleges and incorporates each allegation of this complaint as if fully set forth in this claim.

12.     In February 2015, Sandra started at the City of Flagstaff as a Customer Service Manager.

13.     In eight months, she moved from Customer Service Manager to Sales Tax Manager, one month later to Interim Revenue Director in November 2015 and by July 2017 to Revenue Director where she remained until her termination in December 2019.

14.     In her role as Revenue Director, she oversaw the city's sizeable investment portfolio and budget, built and maintained relationships with vendors and community partners, and oversaw an award-winning team in her department, among other, important duties.

15.     During her time at the City of Flagstaff, Sandra received several performance-based awards—sometimes multiple awards per year—and often given directly by the City Manager himself. For example,

•     From 2015 to 2019, Sandra was recognized with 25 different "On the Spot" awards from co-workers, colleagues, team members and other Flagstaff employees;

•     In 2015, Sandra was honored with the City Manager Agassiz Award for Teamwork; 7K Award for Service at a Higher Elevation—bestowed directly by the City Manager; and

•     In 2016, Sandra received her second 7K Award for Service at a Higher Elevation; Wonderful Outstanding Worker for Outstanding Performance.

16.     In 2017, Sandra received her second City Manager Agassiz Award for Leadership; and

HOUK LAW FIRM, PLLC
1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282
Telephone: 480.569.2377 - Fax: 480.569.2379

17.     In 2018, Sandra earned her second Wonderful Outstanding Worker award for Outstanding Performance and a Blue Ribbon from Flagstaff Toastmasters, which demonstrates her presentation skills critical to her job duties.

18.     Before Sandra joined the City of Flagstaff, she enjoyed a 28-year career in the public service sector in Orange County, California. There, too, the County of Orange promoted her through seven levels of supervision and four levels of management to the position of Program Manager of the Alcohol and Drug Abuse Program. During her time with Orange County, Sandra's work was recognized various time, including with the following awards:

    a.     Outstanding Leadership and Achievement Award by the County of Orange United Way;

    b.     Woman of Achievement; and

    c.     Rising Gold Star.

**City of Flagstaff Management Services Director Rick Tadder Exhibited a Pattern of Sexual Harassment Towards Women, Especially Sandra.**

19.     Starting around December 2015—a few months after beginning work with the City of Flagstaff and directly following her reporting to Management Services Director Rick Tadder—Rick regularly engaged in offensive actions toward Sandra and other women.

20.     Rick repeatedly refused to train Sandra on his expectations but regularly gave her negative feedback on her projects.

21.     Rick demeaned Sandra in front of colleagues by unreasonably and unjustifiably criticizing her work.

HOUK LAW FIRM, PLLC
1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282
Telephone: 480.569.2377 - Fax: 480.569.2379

22.     Sandra coined the term "Tadderizing," a euphemism for Tadder tearing apart and "terrorizing" specifically her.

23.     The term "Tadderizing" was adopted by other colleagues who witnessed the treatment.

24.     Tadder himself began using the term in yet another effort to demean Sandra.

25.     Tadder repeatedly rolled his eyes, shrugged his shoulders, laughed, and shook his head in disdain toward Sandra and other women during meetings.

26.     In December 2018, Tadder's temper escalated during a meeting. Those in attendance included: Sandra, a new Customer Service Supervisor Danielle Tiedeman, a potential cash-handling vendor, and former customer Service Manager, Michele Bader, as well as other team members were present.   In front of others, Tadder yelled at Sandra, questioning her abilities. Tiedeman became visibly shaken. Sandra was afraid that she would lose her job if she defended herself.

27.     Shortly after this meeting in 2018, Customer Service Manager, Michele Bader resigned, citing "Rick Tadder" as her only reason for leaving city employment. She told Sandra directly not to trust Tadder before she left.

28.     In early 2019, Finance Director, Brandi Suda, came to Sandra in tears, seeking emotional support after Tadder had demeaned her.

29.     By September 2019, Tadder's harassing emails and in-person bullying against Sandra had become routine, at least once a week.

30.     In late September 2019, Sandra attended a meeting where a draft project on Sales Tax Information to Council was presented by Economic Vitality Director, Heidi Hansen, and Community Investment Director, David McIntire.

HOUK LAW FIRM, PLLC
1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282
Telephone: 480.569.2377 - Fax: 480.569.2379

31.    When Sandra made a suggestion on changing the formatting of a chart, Tadder shrugged his shoulders and rolled his eyes, blowing her off.

32.    Tadder then presented the same exact idea that he had just ignored from Sandra as his own. Sandra then confronted him and told him that she had just said the same thing, but Tadder told her that she did not.

33.    Hansen chimed in, stating, "In all fairness to Sandy, she did say just that," confirming that Sandra was the first to present the idea.

34.    It was not until McIntire also supported Sandra that Tadder finally backed down from claiming the idea as his own.

35.    This happened a second time during the same meeting just minutes later, where Tadder denied Sandra had the idea first and David felt compelled to bring it to Tadder's attention once more.

36.    At least one other co-worker, Financial Systems Analyst Martin Collins noted Tadder's disparate treatment of Sandra. His behavior became so incessant that Sandra's colleagues came to expect the treatment and were normalized to his treatment of Sandra, and therefore no longer reacted.

37.    Tadder did not treat men in the same way.

**Tadder's Harassment of Sandra Reached a Boiling Point During a Work Trip with Colleagues**

38.    In October 2019, Tadder and Sandra attended a work conference in Colorado with several other City of Flagstaff employees. Tadder, Sandra, and several other employees attended a networking event sponsored by a client. After the event, the City of Flagstaff team all went to dinner together outside of the conference, on their personal time.

HOUK LAW FIRM, PLLC
1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282
Telephone: 480.569.2377 - Fax:  480.569.2379

39.    At the networking event and at dinner, each employee had at least one drink. Tadder was aware that Sandra had some drinks, as he had.

40.    At dinner, Tadder continued his history of singling Sandra out, criticizing Sandra's work, being negative toward her, and saying demeaning comments towards her:

   a.  In a sign of his control and lack of respect toward her, at one point, when Sandra said she needed to go to the restroom, Tadder told her, she didn't need to go and sit down.

   b.  This time, Tadder was acting in a particularly humiliating way because he berated Sandra in front of Jessica Huleatt, a Customer Service Manager, who reported to Sandra.

   c.  Tadder also got angry with Sandra for making a joke about who was covering the tab for dinner and made an insensitive racial comment about a black waiter, to which Sandra objected.

41.    Sandra left the table and went to the bathroom, despite Tadder telling her to sit down. When she returned, Sandra attempted to lighten the mood and told a joke about who was paying the dinner bill. Tadder responded by increasing his disparaging remarks. The combination of these events at dinner, plus the years of distress caused by Tadder, led Sandra to become upset, resulting in Sandra accidently knocking over glasses on the table. Tadder's condescending behavior followed years of his harassing behavior triggered Sandra's emotional response.

42.    There, her emotions culminated in a series of texts to Tadder. In her texts, she called out his insensitive behavior, telling him she will "not be demeaned" anymore, that she

HOUK LAW FIRM, PLLC
1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282
Telephone: 480.569.2377 - Fax: 480.569.2379

had witnesses to his poor treatment of women, and that he bullied another woman (Brandi Suda) to the point of tears.

### Tadder Terminated Sandra's Employment in Retaliation Minutes After Her Opposition to His Treatment of Women

43.     Sandra texted Tadder that she "no longer report[s] to you [meaning Tadder] as I have submitted my resignation" by which she meant, she wanted to work for someone else at the City. She also texted, "I'll be contacting HR in the morning".

44.     The next morning, Sandra left a voice mail for Shauna Fischer, HR Manager, reporting Tadder's harassment and stating her intent was not to resign. Tadder immediately forced Sandra to resign. He contacted Allison Eckert, the Interim HR Director, who issued a resignation letter. Tadder did this without confirming Sandra's intent in the text message, knowing she was at a dinner and had been drinking—as he had—and knowing she was objecting to his harassing behavior.

### The City of Flagstaff Ultimately Terminated Sandra's Employment.

45.     At first, the City Manager, Greg Clifton, promptly reinstated Sandra's employment, placing her, rather than Tadder, on administrative leave until the City had time to assess the situation.

46.     Instead of investigating Tadder's behavior, in mid-October 2019, Interim Human Resources Director, Allison Eckert, initiated an investigation into Sandra's conduct in Colorado, insinuating possible blame.

47.     Sandra fully cooperated in the investigation.

48.     Sandra also provided a detailed account of the incident and the harassment she suffered.

HOUK LAW FIRM, PLLC
1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282
Telephone: 480.569.2377 - Fax:  480.569.2379

49.     While Sandra made allegations of discrimination about Tadder's discrimination prior to what occurred in Colorado, the City refused to investigate those allegations, claiming to reserve them for later, stating "Other claims of harassment by Ms. Corder [Matlock] that fall outside of this event and timeframe will be investigated separately."

50.     To date, the City has not involved Sandra in any investigation, nor disclosed the results of the allegations that Tadder engaged in longstanding discrimination against her and other women. Nor upon information and belief has it investigated.

51.     In mid-November 2019, the City stated they completed the investigation into the event in Colorado:

    a.  While concluding that all of Sandra's harassment claims against Tadder during the Colorado trip were not substantiated—without explanation—the City turned the tables and found that Sandra—not Tadder—was at fault.

    b.  The City found Sandra was abusive and insubordinate to Tadder, again, without explanation.

    c.  The City recommended that the City Manager immediately terminate her employment, without any progressive discipline.

    d.  In November 2019, Sandra met with the City Manager Greg Clifton and offered alternatives to termination, in line with City policy, but the City refused to accept them and Clifton forced Sandra to resign or be terminated, effective December 2, 2019.

52.     At age 57 at the time of her termination, Sandra was one of the oldest City employees.

53.     During her employment, ageist comments were made to Sandra.

HOUK LAW FIRM, PLLC
1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282
Telephone: 480.569.2377 - Fax:  480.569.2379

54.    The City transferred Sandra's job duties to an employee who is around 30 years of age.

## Count I
## Tortious Interference with Employment
## (Against Rick Tadder)

55.    Sandra re-alleges and incorporates each allegation of this complaint as if fully set forth in this claim.

56.    Tadder tortiously interfered with Sandra's employment with the City of Flagstaff when he contacted HR, resulting in HR accepting Sandra's resignation that she did not intend, thus improperly causing her termination.

57. Tadder terminated Sandra's employment knowing Sandra was objecting to his harassing behavior.

58. Tadder's interference was improper. There was a business expectancy between Sandra and the City of Flagstaff. Tadder knew about Sandra's and the City of Flagstaff's shared business expectancy. He intentionally interfered with her employment, causing her termination.

59. Tadder's interference caused damage to Sandra.

60. As a direct and proximate result of the conduct by the City of Flagstaff, Sandra suffered compensatory damages including for pain, suffering (including pain and suffering due to developing PTSD), inconvenience, diminished enjoyment of life, humiliation, outrage, discomfort, anxiety, sorrow, fear, depression, loss of sleep, nightmares, loss of the love, care, affection, companionship, and close relationships, change in demeanor, and harmed reputation at work. Sandra is reasonably likely to incur more compensatory damages in the future.

61.    Sandra seeks a judgment for the following:

HOUK LAW FIRM, PLLC
1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282
Telephone: 480.569.2377 - Fax: 480.569.2379

HOUK LAW FIRM, PLLC
1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282
Telephone: 480.569.2377 - Fax: 480.569.2379

a.    Compensatory and general damages in an amount to be determined by the trier-of-fact;

b.    Monetary damages, including lost wages, salary, employment benefits, lost value of pension, and other compensation, in an amount to be proven at trial;

c.    Interest at highest legal rate;

d.    Reinstatement, or front pay in lieu of reinstatement;

e.    Injunctive relief to prevent future similar violations and to remedy harm done to Sandra;

f.    Punitive damages because Tadder's interference was the result of malice, spite, ill-will, or reckless indifference to her rights; and

g.    Costs.

### Future Claim, Count II:
### Termination Based Upon Sex
### Title VII, 42 U.S.C. § 2000e-2(a)(1)

62.    Sandra re-alleges and incorporates each allegation of this complaint as if fully set forth in this claim.

63.    City of Flagstaff terminated Sandra's employment in violation of 42 U.S.C. § 2000e-2(1) based on sex and discrimination.

64.    As a direct and proximate result of the conduct by City of Flagstaff, Sandra is entitled to compensatory damages including for pain, suffering (including pain and suffering due to developing PTSD), inconvenience, diminished enjoyment of life, humiliation, outrage, discomfort, anxiety, sorrow, fear, depression, loss of sleep, nightmares, loss of the love, care, affection, companionship, and other close relationships, change in demeanor, and harmed

reputation at work. Sandra is reasonably likely to incur more compensatory damages in the future.

65.    Injunctive relief should be granted for Sandra against Defendant to prevent further acts of discrimination, particularly since the Defendant appears to be oblivious to their duties and liabilities under 42 U.S.C. § 2000(e)-2(1).

66.    The unlawful employment practices complained of were intentional.

67.    Sandra seeks a judgment for the following:

a.    Compensatory and general damages in an amount to be determined by the trier-of-fact;

b.    Monetary damages, including lost wages, salary, employment benefits, lost value of pension, and other compensation, in an amount to be proven at trial;

c.    Reinstatement, or front pay in lieu of reinstatement;

d.    Injunctive relief to prevent future similar violations of federal statutes and to remedy harm done to Sandra;

e.    Her reasonable attorney's fees and expert fees incurred herein, pursuant to 42 U.S.C. § 1988 (b), (c), Federal Rule of Civil Procedure 54(d)(2), and Local Rule of Civil Procedure 54.2; and

f.    Her taxable costs incurred herein, pursuant to Federal Rule of Civil Procedure 54(d)(1), Local Rule of Civil Procedure 54.1, and 28 U.S.C. § 1920.

**Future Claim, Count III**
**Retaliation For Reporting Sex-Based Discrimination**
**Title VII, 42 USC § 2000e-3(a)**

68.    Sandra re-alleges and incorporates each allegation of this complaint as if fully set forth in this claim.

HOUK LAW FIRM, PLLC
1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282
Telephone: 480.569.2377 - Fax: 480.569.2379

69.     The City of Flagstaff retaliated against Sandra in violation of U.S.C. § 2000e-3(a) including by terminating her employment because she complained about discrimination on the basis of sex and sexual harassment.

70.     As a direct and proximate result of the conduct of the City of Flagstaff, Sandra is entitled to compensatory damages including for lost earnings and benefits, decrease in earnings power or capacity, pain, suffering, inconvenience, diminished enjoyment of life, humiliation, outrage, discomfort, and harmed reputation at work and her industry. Sandra is also reasonably likely to incur more compensatory damages in the future.

71.     The unlawful employment practices complained of were intentional.

72.     Sandra seeks a judgment for the following:

a.      Injunctive relief, including enjoining harassment and implementing policy changes, training, and changing her status to eligible for rehire;

b.      Back pay, reinstatement in lieu of front pay, or front pay with interest;

c.      Compensatory and general damages in an amount to be determined by the trier-of-fact;

d.      Her reasonable attorney's fees and expert fees incurred herein, pursuant to 42 U.S.C. § 1988 (b), (c), Federal Rule of Civil Procedure 54(d)(2), and Local Rule of Civil Procedure 54.2; and

e.      Her taxable costs incurred herein, pursuant to Federal Rule of Civil Procedure 54(d)(1), Local Rule of Civil Procedure 54.1, and 28 U.S.C. § 1920.

HOUK LAW FIRM, PLLC
1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282
Telephone: 480.569.2377 - Fax: 480.569.2379

**Future Claim, Count IV**
**Unlawful Termination**
**Age Discrimination in Employment Act, 29 U.S.C. § 623**
**(City of Flagstaff)**

76.     The Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623(a)(1), prohibits employers from terminating their employees because of age.

77.     Defendant violated the ADEA when it terminated Sandy's employment because of her age.

78.     As a direct and proximate result of the conduct of Defendant, Plaintiff lost wages, in an amount to be proven at trial.

79.     Defendant's unlawful employment practices were willful within the meaning of the ADEA, 29 U.S.C. § 626(b).

73.     Sandra seeks a judgment for the following:

   f.     Injunctive relief, including enjoining discrimination and implementing policy changes, training, and changing her status to eligible for rehire;

   g.     Back pay, reinstatement in lieu of front pay, or front pay with interest;

   h.     Liquidated damages;

   i.     Her reasonable attorney's fees and expert fees incurred herein, pursuant to 42 U.S.C. § 1988 (b), (c), Federal Rule of Civil Procedure 54(d)(2), and Local Rule of Civil Procedure 54.2; and

   j.     Her taxable costs incurred herein, pursuant to Federal Rule of Civil Procedure 54(d)(1), Local Rule of Civil Procedure 54.1, and 28 U.S.C. § 1920.

HOUK LAW FIRM, PLLC
1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282
Telephone: 480.569.2377 - Fax: 480.569.2379

WHEREFORE, Sandra prays for the following relief:

1.      For a declaration that City of Flagstaff violated Sandra's rights under Title VII;

2.      For a declaration that Tadder and the City of Flagstaff improperly interfered with Sandra's rights;

3.      All relief available under the statutes and common laws asserted in this case;

4.      For injunctive relief, including a permanent injunction prohibiting City of Flagstaff from engaging in discrimination under Title VII;

5.      For equitable relief such as employment, promotion, reinstatement or, in lieu of reinstatement, front pay;

6.      For compensation for past and future non-pecuniary losses resulting from the unlawful practices under Title VII and the interference claim;

7.      For punitive damages resulting from the improper interference claim;

8.      For liquidated damages under the ADEA;

9.      For interest on the above amounts at the highest legal rate from the date of Judgment until paid in full;

10.     For reasonable attorneys' fees;

11.     Taxable costs; and

12.     All other relief the court shall deem is just.

**DATED** this 6th day of October 2020.

HOUK LAW FIRM, PLLC

By:    /s/ Christopher R. Houk
        Christopher R. Houk
        *Attorneys for Sandra Matlock*

HOUK LAW FIRM, PLLC
1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282
Telephone: 480.569.2377 - Fax:  480.569.2379

1
2     Cheri L. McCracken, State Bar No. 006111
      Attorney at Law
3     2402 North 24th Street
      Phoenix, AZ 85008-1804
4     Phone: 602.231.0595
      FAX: 602.231.0841
5     cherimccracken@gmail.com

6     Christopher R. Houk, State Bar No. 020843
      **HOUK LAW FIRM, PLLC**
7     1050 East Southern Avenue, Suite A-3
      Tempe, AZ 85282
8     Telephone: 480.569.2377
      Facsimile:  480.569.2379
9     chouk@houklawfirm.com

10    *Attorneys for Sandra (Corder) Matlock*

11
      Please send all documents to:
12    jmontanez@houklawfirm.com

13

14              **IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

15                **IN AND FOR THE COUNTY OF COCONINO**

16
      Sandra (Corder) Matlock,                    Case No.  CV202000504
17
               Plaintiff,                          **FIRST     AMENDED**     CIVIL
18                                                 **COMPLAINT AND
      vs.                                          DEMAND FOR JURY TRIAL**
19
      City of Flagstaff, a municipal corporation,
20    Richard Tadder and Amanda Tadder, wife and
      husband,
21
22             Defendants.

23
24         Plaintiff Sandra (Corder) Matlock submits this Complaint for relief and Jury Trial

25    Demand pursuant to Arizona Rules of Civil Procedure against Defendants because Defendants

26    improperly interfered with Plaintiff's employment.

27
28                              **Plaintiff's Claims**

                                  Page 1 of 22

1. Tortious Interference with Employment.

2. A.R.S. § 41-1463, Termination Based on Sex under the Arizona Civil Rights Act (ACRA);

3. A.R.S. § 41-1463, Termination Based on Age under the ACRD; and

4. A.R.S. § 41-1464, Retaliation for Reporting Sex and Age Discrimination under the ACRA.

1.

**The Parties and Jurisdiction**

2.5. The Plaintiff, Sandra Matlock, has been at all times material to this Complaint:

    a. An adult resident of Coconino County, and currently resides in Florida;

    b. Employed by Defendant City of Flagstaff, a municipal corporation; and

    c. A person whose sex is female and whose age is 58 years old.

3.6. Defendant City of Flagstaff is, and has been at all times material to this Complaint:

    a. A municipal corporation and a body politic, established and operating pursuant to the Arizona Constitution, Art. XIII, § 1, and Title 9 of the Arizona Revised Statutes;

    b. The employer of Plaintiff, as that term is defined in 2000e(b) in 29 U.S.C. § 630 and A.R.S. § 41-1461;

    c. An employer of more than fifteen persons; and

    d. Located within Arizona, including Coconino County, Arizona.

4.7. Defendant Richard Tadder (Tadder) is, and had been at all times relevant to this Complaint,

**Formatted:** Indent: Left: 0.5", No bullets or numbering

HOUK LAW FIRM, PLLC
1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282
Telephone: 480.569.2377 - Fax: 480.569.2379

a.  An adult resident of Coconino County, Arizona;

b.  Employed by the City of Flagstaff;

c.  Acting in the course of scope of business on behalf of the City of Flagstaff as its employee; and

d.  Upon information and belief, is married to Amanda Tadder, acting on behalf of the marital community of his spouse and himself.

5.8.    Many of the events alleged occurred in Coconino County, Arizona, and Coconino County is the domicile of all parties at all relevant times.

6.9.    Coconino County is the appropriate venue pursuant to A.R.S. § 12-401 because Defendant resides in the County.

7.10.    Sandra has satisfied all conditions precedent to filing suit, including service of the Notice of Claim against both Tadder and the City of Flagstaff on May 27, 2020.

8.11.    Plaintiff gives notice that she has the additional, following claims against the City of Flagstaff based in part on Defendant's actions under Title VII on sex and retaliation against her that are not yet ripe because the EEOC has not issued a right to sue letter:

a.  Title VII, 42 U.S.C. § 2000(e)-2(1) – Termination Based on Sex;

b.  Title VII, 42 U.S.C. § 2000(e)-3(a) – Retaliation for Reporting Sex Discrimination;

c.  29 U.S.C. § 623, Age Discrimination in Employment Act.

Plaintiff will seek to amend her complaint when the right to sue letter is issued.

12.    On December 1, 2020, the Arizona Attorney General's Office issued a right to sue letter regarding state discrimination claims.

13.    The pre-suit requirements of A.R.S. § 41-1481(D) have been met.

Page 3 of 22

HOUK LAW FIRM, PLLC
1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282
Telephone: 480.569.2377 · Fax: 480.569.2379

9.14.    Amanda Tadder is named solely because of Arizona's community property laws and is properly joined pursuant to Ariz. R. of Civ. P. 19.

**Demand for Jury Trial**

10.15.    While a written Jury demand is not necessary, pursuant to Rule 38 of the Arizona Rules of Civil Procedure, Plaintiff Sandra demands a trial by jury.

<u>**Fact Allegations in Support of All Counts**</u>

**For Four years, the City of Flagstaff Recognized Sandra's Excellent Job Performance.**

11.16.    Sandra re-alleges and incorporates each allegation of this complaint as if fully set forth in this claim.

12.17.    In February 2015, Sandra started at the City of Flagstaff as a Customer Service Manager.

13.18.    In eight months, she moved from Customer Service Manager to Sales Tax Manager, one month later to Interim Revenue Director in November 2015 and by July 2017 to Revenue Director where she remained until her termination in December 2019.

14.19.    In her role as Revenue Director, she oversaw the city's sizeable investment portfolio and budget, built and maintained relationships with vendors and community partners, and oversaw an award-winning team in her department, among other, important duties.

15.20.    During her time at the City of Flagstaff, Sandra received several performance-based awards—sometimes multiple awards per year—and often given directly by the City Manager himself. For example,

HOUK LAW FIRM, PLLC.
1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282
Telephone: 480.569.2377 · Fax: 480.569.2379

- From 2015 to 2019, Sandra was recognized with 25 different "On the Spot" awards from co-workers, colleagues, team members and other Flagstaff employees;

- In 2015, Sandra was honored with the City Manager Agassiz Award for Teamwork; 7K Award for Service at a Higher Elevation—bestowed directly by the City Manager; and

- In 2016, Sandra received her second 7K Award for Service at a Higher Elevation; Wonderful Outstanding Worker for Outstanding Performance.

16.21. In 2017, Sandra received her second City Manager Agassiz Award for Leadership; and

17.22. In 2018, Sandra earned her second Wonderful Outstanding Worker award for Outstanding Performance and a Blue Ribbon from Flagstaff Toastmasters, which demonstrates her presentation skills critical to her job duties.

18.23. Before Sandra joined the City of Flagstaff, she enjoyed a 28-year career in the public service sector in Orange County, California. There, too, the County of Orange promoted her through seven levels of supervision and four levels of management to the position of Program Manager of the Alcohol and Drug Abuse Program. During her time with Orange County, Sandra's work was recognized various time, including with the following awards:

    a.    Outstanding Leadership and Achievement Award by the County of Orange United Way;

    b.    Woman of Achievement; and

    c.    Rising Gold Star.

HOUK LAW FIRM, PLLC
1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282
Telephone: 480.569.2377 - Fax: 480.569.2379

**City of Flagstaff Management Services Director Rick Tadder Exhibited a Pattern of Sexual Harassment Towards Women, Especially Sandra.**

19.24. Starting around December 2015—a few months after beginning work with the City of Flagstaff and directly following her reporting to Management Services Director Rick Tadder—Rick regularly engaged in offensive actions toward Sandra and other women.

20.25. Rick repeatedly refused to train Sandra on his expectations but regularly gave her negative feedback on her projects.

21.26. Rick demeaned Sandra in front of colleagues by unreasonably and unjustifiably criticizing her work.

22.27. Sandra coined the term "Tadderizing," a euphemism for Tadder tearing apart and "terrorizing" specifically her.

23.28. The term "Tadderizing" was adopted by other colleagues who witnessed the treatment.

24.29. Tadder himself began using the term in yet another effort to demean Sandra.

25.30. Tadder repeatedly rolled his eyes, shrugged his shoulders, laughed, and shook his head in disdain toward Sandra and other women during meetings.

26.31. In December 2018, Tadder's temper escalated during a meeting. Those in attendance included: Sandra, a new Customer Service Supervisor Danielle Tiedeman, a potential cash-handling vendor, and former customer Service Manager, Michele Bader, as well as other team members were present. In front of others, Tadder yelled at Sandra, questioning her abilities. Tiedeman became visibly shaken. Sandra was afraid that she would lose her job if she defended herself.

HOUK LAW FIRM, PLLC
1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282
Telephone: 480.569.2377 - Fax: 480.569.2379

HOUK LAW FIRM, PLLC

1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282
Telephone: 480.569.2377 · Fax: 480.569.2379

27.32. Shortly after this meeting in 2018, Customer Service Manager, Michele Bader resigned, citing "Rick Tadder" as her only reason for leaving city employment. She told Sandra directly not to trust Tadder before she left.

28.33. In early 2019, Finance Director, Brandi Suda, came to Sandra in tears, seeking emotional support after Tadder had demeaned her.

29.34. By September 2019, Tadder's harassing emails and in-person bullying against Sandra had become routine, at least once a week.

30.35. In late September 2019, Sandra attended a meeting where a draft project on Sales Tax Information to Council was presented by Economic Vitality Director, Heidi Hansen, and Community Investment Director, David McIntire.

31.36. When Sandra made a suggestion on changing the formatting of a chart, Tadder shrugged his shoulders and rolled his eyes, blowing her off.

32.37. Tadder then presented the same exact idea that he had just ignored from Sandra as his own. Sandra then confronted him and told him that she had just said the same thing, but Tadder told her that she did not.

33.38. Hansen chimed in, stating, "In all fairness to Sandy, she did say just that," confirming that Sandra was the first to present the idea.

34.39. It was not until McIntire also supported Sandra that Tadder finally backed down from claiming the idea as his own.

35.40. This happened a second time during the same meeting just minutes later, where Tadder denied Sandra had the idea first and David felt compelled to bring it to Tadder's attention once more.

Page 7 of 22

36. 41.  At least one other co-worker, Financial Systems Analyst Martin Collins noted Tadder's disparate treatment of Sandra. His behavior became so incessant that Sandra's colleagues came to expect the treatment and were normalized to his treatment of Sandra, and therefore no longer reacted.

37. 42.  Tadder did not treat men in the same way.

**Tadder's Harassment of Sandra Reached a Boiling Point During a Work Trip With Colleagues**

38. 43.  In October 2019, Tadder and Sandra attended a work conference in Colorado with several other City of Flagstaff employees. Tadder, Sandra, and several other employees attended a networking event sponsored by a client. After the event, the City of Flagstaff team all went to dinner together outside of the conference, on their personal time.

39. 44.  At the networking event and at dinner, each employee had at least one drink. Tadder was aware that Sandra had some drinks, as he had.

40. 45.  At dinner, Tadder continued his history of singling Sandra out, criticizing Sandra's work, being negative toward her, and saying demeaning comments towards her:

   a.  In a sign of his control and lack of respect toward her, at one point, when Sandra said she needed to go to the restroom, Tadder told her, she didn't need to go and sit down.

   b.  This time, Tadder was acting in a particularly humiliating way because he berated Sandra in front of Jessica Huleatt, a Customer Service Manager, who reported to Sandra.

HOUK LAW FIRM, PLLC
1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282
Telephone: 480.569.2377 - Fax: 480.569.2379

c.  Tadder also got angry with Sandra for making a joke about who was covering the tab for dinner and made an insensitive racial comment about a black waiter, to which Sandra objected.

41.46.  Sandra left the table and went to the bathroom, despite Tadder telling her to sit down. When she returned, Sandra attempted to lighten the mood and told a joke about who was paying the dinner bill. Tadder responded by increasing his disparaging remarks. The combination of these events at dinner, plus the years of distress caused by Tadder, led Sandra to become upset, resulting in Sandra accidently knocking over glasses on the table. Tadder's condescending behavior triggered Sandra's reaction to his years of his harassing behavior.

42.47.  There, her emotions culminated in a series of texts to Tadder. In her texts, she called out his insensitive behavior, telling him she will "not be demeaned" anymore, that she had witnesses to his poor treatment of women, and that he bullied another woman (Brandi Suda) to the point of tears.

**Tadder Terminated Sandra's Employment In Retaliation Minutes After Her Opposition to His Treatment of Women**

43.48.  Sandra texted Tadder that she "no longer report[s] to you [meaning Tadder] as I have submitted my resignation" by which she meant, she wanted to work for someone else at the City. She also texted, "I'll be contacting HR in the morning".

44.49.  The next morning, Sandra left a voice mail for Shauna Fischer, HR Manager, reporting Tadder's harassment and stating her intent was not to resign. Tadder immediately forced Sandra to resign.  He contacted Allison Eckert, the Interim HR Director, who issued a resignation letter. Tadder did this without confirming Sandra's intent in the text message,

Houk Law Firm, PLLC
1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282
Telephone: 480.569.2377  ·  Fax:  480.569.2379

Page 9 of 22

knowing she was at a dinner and had been drinking—as he had—and knowing she was

objecting to his harassing behavior.

**The City of Flagstaff Ultimately Terminated Sandra's Employment.**

45.50. At first, the City Manager, Greg Clifton, promptly reinstated Sandra's employment, placing her, rather than Tadder, on administrative leave until the City had time to assess the situation.

46.51. Instead of investigating Tadder's behavior, in mid-October 2019, Interim Human Resources Director, Allison Eckert, initiated an investigation into Sandra's conduct in Colorado, insinuating possible blame.

47.52. Sandra fully cooperated in the investigation.

48.53. Sandra also provided a detailed account of the incident and the harassment she suffered.

49.54. While Sandra made allegations of discrimination about Tadder's discrimination prior to what occurred in Colorado, the City refused to investigate those allegations, claiming to reserve them for later, stating "Other claims of harassment by Ms. Corder [Matlock] that fall outside of this event and timeframe will be investigated separately."

50.55. To date, the City has not involved Sandra in any investigation, nor disclosed the results of the allegations that Tadder engaged in longstanding discrimination against her and other women.

51.56. In mid-November 2019, the City stated they completed the investigation into the event in Colorado:

HOUK LAW FIRM, PLLC
1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282
Telephone: 480.569.2377 - Fax: 480.569.2379

HOUK LAW FIRM, PLLC
1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282
Telephone: 480.569.2377 · Fax: 480.569.2379

a.  While concluding that all of Sandra's harassment claims against Tadder during the Colorado trip were not substantiated—without explanation—the City turned the tables and found that Sandra—not Tadder—was at fault.

b.  The City found Sandra was abusive and insubordinate to Tadder, again, without explanation.

c.  The City recommended that the City Manager immediately terminate her employment, without any progressive discipline.

d.  In November 2019, Sandra met with the City Manager Greg Clifton and offered alternatives to termination, in line with City policy, but the City refused to accept them and Clifton forced Sandra to resign or be terminated, effective December 2, 2019.

~~52.~~57.  At age 57 at the time of her termination, Sandra was one of the oldest City employees.

~~53.~~58.  During her employment, ageist comments were made to Sandra.

~~54.~~59.  The City transferred Sandra's job duties to an employee who is around 30 years of age.

**Count I**
**Tortious Interference with Employment**
**(Against Rick Tadder)**

~~55.~~60.  Sandra re-alleges and incorporates each allegation of this complaint as if fully set forth in this claim.

Page 11 of 22

56.61.    Tadder tortiously interfered with Sandra's employment with the City of Flagstaff when he contacted HR, resulting in HR accepting Sandra's resignation that she did not intend, thus improperly causing her termination.

57.62.    Tadder terminated Sandra's employment knowing Sandra was objecting to his harassing behavior.

58.63.    Tadder's interference was improper. There was a business expectancy between Sandra and the City of Flagstaff. Tadder knew about Sandra's and the City of Flagstaff's shared business expectancy. He intentionally interfered with her employment, causing her termination.

59.64.    Tadder's interference caused damage to Sandra.

60.65.    As a direct and proximate result of the conduct by the City of Flagstaff, Sandra suffered compensatory damages including for pain, suffering (including pain and suffering due to developing PTSD), inconvenience, diminished enjoyment of life, humiliation, outrage, discomfort, anxiety, sorrow, fear, depression, loss of sleep, nightmares, loss of the love, care, affection, companionship, and close relationships, change in demeanor, and harmed reputation at work. Sandra is reasonably likely to incur more compensatory damages in the future.

61.66.  Sandra seeks a judgment for the following:

    a.    Compensatory and general damages in an amount to be determined by the trier-of-fact;

    b.    Monetary damages, including lost wages, salary, employment benefits, lost value of pension, and other compensation, in an amount to be proven at trial;

Page 12 of 22

HOUK LAW FIRM, PLLC
1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282
Telephone: 480.569.2377 - Fax: 480.569.2379

c.    Interest at highest legal rate;

d.    Reinstatement, or front pay in lieu of reinstatement;

e.    Injunctive relief to prevent future similar violations and to remedy harm done to Sandra;

f.    Punitive damages because Tadder's interference was the result of malice, spite, ill-will, or reckless indifference to her rights; and

g.    Costs.

**Count II**
**Tortious Interference with Employment**
**(Against the City of Flagstaff)**

62.67.  Sandra re-alleges and incorporates each allegation of this complaint as if fully set forth in this claim.

63.68.    The City of Flagstaff tortiously interfered with Sandra's employment when he contacted HR, resulting in HR accepting Sandra's resignation that she did not intend, thus improperly causing her termination.

64.69.        The City terminated Sandra's employment knowing she was objecting to Tadder's harassing behavior.

65.70.        The City's interference was improper:

a.    There was a business expectancy between Sandra and the City of Flagstaff.

b.    The City intentionally interfered with her employment, causing her termination.

c.    The City's interference caused damage to Sandra.

Page 13 of 22

66.71.     At all relevant times, Tadder was acting in the course of scope of his job duties and thus the City is liable for Tadder's intentional tort pursuant to the doctrine of respondeat superior.

67.72.  As a direct and proximate result of the conduct by the City of Flagstaff, Sandra suffered compensatory damages including for pain, suffering (including pain and suffering due to developing PTSD), inconvenience, diminished enjoyment of life, humiliation, outrage, discomfort, anxiety, sorrow, fear, depression, loss of sleep, nightmares, loss of the love, care, affection, companionship, and other close relationships, change in demeanor, and harmed reputation at work. Sandra is reasonably likely to incur more compensatory damages in the future.

68.73.  Sandra seeks a judgment for the following:

  a.     Compensatory and general damages in an amount to be determined by the trier-of-fact;

  b.     Monetary damages, including lost wages, salary, employment benefits, lost value of pension, and other compensation, in an amount to be proven at trial;

  c.     Reinstatement, or front pay in lieu of reinstatement;

  d.     Injunctive relief to prevent future similar violations and to remedy harm done to Sandra;

  e.     Interest at the highest legal rate;

  f.     Costs.

**Count III:**
**Termination Based Upon Sex**
**Arizona Civil Rights Act, A.R.S. § 41-1463**

Page 14 of 22

**Formatted:** Font: Garamond, 13 pt

*(left margin, rotated)* HODE LAW FIRM, PLLC
1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282
Telephone: 480.569.2377 - Fax: 480.569.2379

**(Against the City of Flagstaff)**

74.    Sandra re-alleges and incorporates each allegation of this complaint as if fully set forth in this claim.

75.    The City of Flagstaff discriminated against Sandra in violation of A.R.S. §41-1463(b)(1), including by terminating her on the basis of her sex.

76.    As a direct and proximate result of the conduct by the City of Flagstaff, Sandra lost wages.

77.    Sandra seeks a judgment for the following:

   a.    Monetary damages, including lost wages, salary, employment benefits, lost value of pension, and other compensation, in an amount to be proven at trial;

   b.    Reinstatement, or front pay in lieu of reinstatement;

   c.    Injunctive relief to prevent future similar violations of the state statutes and to remedy harm done to Sandra;

   d.    Her reasonable attorney's fees and expert fees incurred herein, pursuant to A.R.S. § 41-1481(G) and Local Rule of Civil Procedure 54.2; and

   e.    Her taxable costs incurred herein, pursuant to A.R.S. § 41-1481(G).

**Count IV:**
**Unlawful Termination**
**Age Discrimination, Arizona Civil Rights Act, A.R.S. § 41-1463**
**(Against the City of Flagstaff)**

78.    Sandra re-alleges and incorporates each allegation of this complaint as if fully set forth in this claim.

76.    Defendant discriminated against Sandra in violation of A.R.S. §41-1463, including by terminating Sandra's employment because of her age.

HOUK LAW FIRM, PLLC

1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282
Telephone: 480.569.2377  -  Fax:  480.569.2379

Formatted: Numbered + Level: 1 + Numbering Style: a, b, c, ... + Start at: 1 + Alignment: Left + Aligned at:  1" + Indent at:  1.25"

HOUK LAW FIRM, PLLC.
1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282
Telephone: 480.569.2377  -  Fax:  480.569.2379

79.    As a direct and proximate result of the conduct by the City of Flagstaff, Sandra lost wages.

80.    Sandra seeks a judgment for the following:

a.    Monetary damages, including lost wages, salary, employment benefits, lost value of pension, and other compensation, in an amount to be proven at trial;

b.    Reinstatement, or front pay in lieu of reinstatement;

c.    Injunctive relief to prevent future similar violations of the state statutes and to remedy harm done to Sandra;

d.    Her reasonable attorney's fees and expert fees incurred herein, pursuant to A.R.S. § 41-1481(G) and Local Rule of Civil Procedure 54.2; and

e.    Her taxable costs incurred herein, pursuant to A.R.S. § 41-1481(G).

**Count V**
**Retaliation for Reporting Sex-Based and Age-Based Discrimination**
**Arizona Civil Rights Act, A.R.S. § 41-1464**
**(Against the City of Flagstaff)**

81.    Sandra re-alleges and incorporates each allegation of this complaint as if fully set forth in this claim.

82.    The City of Flagstaff retaliated against Sandra in violation of A.R.S. § 41-1464, including by terminating her employment because she complained about discrimination made unlawful under the ACRA.

83.    As a direct and proximate result of the conduct by the City of Flagstaff, Sandra lost wages.

84.    Sandra seeks a judgment for the following:

**Formatted:** Numbered + Level: 1 + Numbering Style: a, b, c, ... + Start at: 1 + Alignment: Left + Aligned at:  1" + Indent at:  1.25"

a.  Monetary damages, including lost wages, salary, employment benefits, lost
value of pension, and other compensation, in an amount to be proven at trial;

b.  Reinstatement, or front pay in lieu of reinstatement;

c.  Injunctive relief to prevent future similar violations of the state statutes and
to remedy harm done to Sandra;

d.  Her reasonable attorney's fees and expert fees incurred herein, pursuant to
A.R.S. § 41-1481(G) and Local Rule of Civil Procedure 54.2; and

e.  Her taxable costs incurred herein, pursuant to A.R.S. § 41-1481(G).

**Future Claim, Count III:**
**Termination Based Upon Sex**
**Title VII, 42 U.S.C. § 2000e-2(a)(1)**

69.85.  Sandra re-alleges and incorporates each allegation of this complaint as if fully set
forth in this claim.

70.86.  City of Flagstaff terminated Sandra's employment in violation of 42 U.S.C. §
2000e-2(1) based on sex.

71.87.  As a direct and proximate result of the conduct by City of Flagstaff, Sandra is
entitled to compensatory damages including for pain, suffering (including pain and suffering
due to developing PTSD), inconvenience, diminished enjoyment of life, humiliation, outrage,
discomfort, anxiety, sorrow, fear, depression, loss of sleep, nightmares, loss of the love, care,
affection, companionship, and other close relationships, change in demeanor, and harmed
reputation at work. Sandra is reasonably likely to incur more compensatory damages in the
future.

Page 17 of 22

Formatted: Numbered + Level: 1 + Numbering Style: a, b, c, ... + Start at: 1 + Alignment: Left + Aligned at: 1" + Indent at: 1.25"

HOUK LAW FIRM, PLLC
1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282
Telephone: 480.569.2377  -  Fax:  480.569.2379

72.88.  Injunctive relief should be granted for Sandra against Defendant to prevent further acts of discrimination, particularly since the Defendant appears to be oblivious to their duties and liabilities under 42 U.S.C. § 2000(e)-2(1).

73.89.  The unlawful employment practices complained of were intentional.

74.90.  Sandra seeks a judgment for the following:

g.f.    Compensatory and general damages in an amount to be determined by the trier-of-fact;

h.g.    Monetary damages, including lost wages, salary, employment benefits, lost value of pension, and other compensation, in an amount to be proven at trial;

i.h.    Reinstatement, or front pay in lieu of reinstatement;

j.i.    Injunctive relief to prevent future similar violations of federal statutes and to remedy harm done to Sandra;

k.j.    Her reasonable attorney's fees and expert fees incurred herein, pursuant to 42 U.S.C. § 1988 (b), (c), Federal Rule of Civil Procedure 54(d)(2), and Local Rule of Civil Procedure 54.2; and

l.k.    Her taxable costs incurred herein, pursuant to Federal Rule of Civil Procedure 54(d)(1), Local Rule of Civil Procedure 54.1, and 28 U.S.C. § 1920.

**Future Claim, Count IV**
**Retaliation For Reporting Sex-Based Discrimination**
**Title VII, 42 USC § 2000e-3(a)**

75.91.  Sandra re-alleges and incorporates each allegation of this complaint as if fully set forth in this claim.

Page 18 of 22

HOUK LAW FIRM, PLLC

1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282

Telephone: 480.569.2377  -  Fax:  480.569.2379

Formatted: Indent: Left: 0", First line: 0.5", Numbered + Level: 1 + Numbering Style: a, b, c, … + Start at: 1 + Alignment: Left + Aligned at: 1" + Indent at: 1.25"

76. 92.  The City of Flagstaff retaliated against Sandra in violation of U.S.C. § 2000e-3(a) including by terminating her employment because she complained about discrimination on the basis of sex.

77. 93.  As a direct and proximate result of the conduct of the City of Flagstaff, Sandra is entitled to compensatory damages including for lost earnings and benefits, decrease in earnings power or capacity, pain, suffering, inconvenience, diminished enjoyment of life, humiliation, outrage, discomfort, and harmed reputation at work and her industry. Sandra is also reasonably likely to incur more compensatory damages in the future.

78. 94.  The unlawful employment practices complained of were intentional.

79. 95.  Sandra seeks a judgment for the following:

    a.    Injunctive relief, including enjoining harassment and implementing policy changes, training, and changing her status to eligible for rehire;

    b.    Back pay, reinstatement in lieu of front pay, or front pay with interest;

    c.    Compensatory and general damages in an amount to be determined by the trier-of-fact;

    d.    Her reasonable attorney's fees and expert fees incurred herein, pursuant to 42 U.S.C. § 1988 (b), (c), Federal Rule of Civil Procedure 54(d)(2), and Local Rule of Civil Procedure 54.2; and

    e.    Her taxable costs incurred herein, pursuant to Federal Rule of Civil Procedure 54(d)(1), Local Rule of Civil Procedure 54.1, and 28 U.S.C. § 1920.

**Future Claim, Count IV:**
**Unlawful Termination**
**Age Discrimination in Employment Act, 29 U.S.C. § 623**

Page 19 of 22

HOUK LAW FIRM, PLLC
1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282
Telephone: 480.569.2377  ·  Fax:  480.569.2379

**(City of Flagstaff)**

76.77.  The Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623(a)(1), prohibits employers from terminating their employees because of age.

77.78.  Defendant violated the ADEA when it terminated Sandy's employment because of her age.

78.79.  As a direct and proximate result of the conduct of Defendant, Plaintiff lost wages, in an amount to be proven at trial.

79.80.  Defendant's unlawful employment practices were willful within the meaning of the ADEA, 29 U.S.C. § 626(b).

80.96.  Sandra seeks a judgment for the following:

    f.    Injunctive relief, including enjoining discrimination and implementing policy changes, training, and changing her status to eligible for rehire;

    g.    Back pay, reinstatement in lieu of front pay, or front pay with interest;

    h.    Liquidated damages;

    i.    Her reasonable attorney's fees and expert fees incurred herein, pursuant to 42 U.S.C. § 1988 (b), (c), Federal Rule of Civil Procedure 54(d)(2), and Local Rule of Civil Procedure 54.2; and

    j.    Her taxable costs incurred herein, pursuant to Federal Rule of Civil Procedure 54(d)(1), Local Rule of Civil Procedure 54.1, and 28 U.S.C. § 1920.

WHEREFORE, Sandra prays for the following relief:

HOOK LAW FIRM, PLLC
1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282
Telephone: 480.569.2377 - Fax:  480.569.2379

1.     For a declaration that City of Flagstaff violated Sandra's rights under Title VII and the Arizona Civil Rights Act (ACRA);

2.     For a declaration that Tadder and the City of Flagstaff improperly interfered with Sandra's rights;

3.     All relief available under the statutes and common laws asserted in this case;

4.     For injunctive relief, including a permanent injunction prohibiting City of Flagstaff from engaging in discrimination under Title VII and the ACRA;

5.     For equitable relief such as employment, promotion, reinstatement or, in lieu of reinstatement, front pay;

6.     For compensation for past and future non-pecuniary losses resulting from the unlawful practices under Title VII, the ACRA, and the interference claim;

6.7.     Monetary damages, including lost wages, salary, employment benefits, lost value of pension, and other compensation, in an amount to be proven at trial;

7.8.     For punitive damages resulting from the improper interference claim;

8.9.     For liquidated damages under the ADEA;

9.10.     For interest on the above amounts at the highest legal rate from the date of Judgment until paid in full;

10.11.     For reasonable attorneys' fees;

11.12.     Taxable costs; and

12.13.     All other relief the court shall deem is just.

**DATED** this _____ day of _____ 20210.

Page 21 of 22

HOUK LAW FIRM, PLLC
1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282
Telephone: 480.569.2377 · Fax: 480.569.2379

Formatted: Font color: Black

HOUK LAW FIRM, PLLC

By: ___/s/ Christopher R. Houk_____

Christopher R. Houk
*Attorneys for Sandra Matlock*

Person/Attorney Filing: Cheri L McCracken
Mailing Address: 705 E. Coronado Road
City, State, Zip Code: Phoenix, AZ 85006
Phone Number: (602)231-0595
[  ] Representing Self, Without an Attorney
(If Attorney) State Bar Number: 006111, Issuing State: AZ
Attorney E-Mail Address: cherimccracken@gmail.com

# IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

# IN AND FOR THE COUNTY OF COCONINO

## Discovery Tier Level 3

3/13/2017 ver. 1

Person/Attorney Filing: Cheri L McCracken
Mailing Address: 705 E. Coronado Road
City, State, Zip Code: Phoenix, AZ 85006
Phone Number: (602)231-0595
E-Mail Address: cherimccracken@gmail.com
[ ] Representing Self, Without an Attorney
(If Attorney) State Bar Number: 006111, Issuing State: AZ

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
IN AND FOR THE COUNTY OF COCONINO

Sandra Matlock, FKA Sandra Corder
Plaintiff(s),
v.                                           Case No.   S0300CV202000504
City of Flagstaff, a municipal
Corporation, et al.                          **SUMMONS**
Defendant(s).

To: City of Flagstaff, a municipal Corporation

**WARNING: THIS AN OFFICIAL DOCUMENT FROM THE COURT THAT
AFFECTS YOUR RIGHTS.  READ THIS SUMMONS CAREFULLY. IF YOU DO
NOT UNDERSTAND IT, CONTACT AN ATTORNEY FOR LEGAL ADVICE.**

1. A lawsuit has been filed against you. A copy of the lawsuit and other court papers were
   served on you with this Summons.

2. If you do not want a judgment taken against you without your input, you must file an
   Answer in writing with the Court, and you must pay the required filing fee. To file your
   Answer, take or send the papers to Clerk of the Superior Court, 200 N. San Francisco
   St., Flagstaff, Arizona 86001 or electronically file your Answer through one of Arizona's
   approved electronic filing systems at http://www.azcourts.gov/efilinginformation.
   Mail a copy of the Answer to the other party, the Plaintiff, at the address listed on the top
   of this Summons.
   Note: If you do not file electronically you will not have electronic access to the documents
   in this case.

3. If this Summons and the other court papers were served on you within the State of
   Arizona, your Answer must be filed within TWENTY (20) CALENDAR DAYS from the
   date of service, not counting the day of service. If this Summons and the other court papers
   were served on you outside the State of Arizona, your Answer must be filed within
   THIRTY (30) CALENDAR DAYS from the date of service, not counting the day of
   service.

Requests for reasonable accommodation for persons with disabilities must be made to the court by parties at least 3 working days in advance of a scheduled court proceeding.

GIVEN under my hand and the Seal of the Superior Court of the State of Arizona in and for the County of  COCONINO

SIGNED AND SEALED this date:*October 6, 2020*

*Valerie Wyant*
Clerk of Superior Court

By:*JDUTTON*
Deputy Clerk



AZturboCourt.gov Form Set #5930165

2

FILED
Valerie Wyant
CLERK, SUPERIOR COURT
10/06/2020  1:00PM
BY: JDUTTON
DEPUTY

Case No.: S0300CV202000504
HON.  CATHLEEN BROWN NICHOLS

Person/Attorney Filing: Cheri L McCracken
Mailing Address: 705 E. Coronado Road
City, State, Zip Code: Phoenix, AZ 85006
Phone Number: (602)231-0595
E-Mail Address: cherimccracken@gmail.com
[ ☐ ] Representing Self, Without an Attorney
(If Attorney) State Bar Number: 006111, Issuing State: AZ

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

IN AND FOR THE COUNTY OF COCONINO

| | |
|---|---|
| Sandra Matlock, FKA Sandra Corder<br>Plaintiff(s),<br>v.<br>City of Flagstaff, a municipal<br>Corporation, et al.<br>Defendant(s). | Case No.<br><br>**CERTIFICATE OF<br>COMPULSORY ARBITRATION** |

I certify that I am aware of the dollar limits and any other limitations set forth by the
Local Rules of Practice for the Coconino County Superior Court, and I further certify that
this case IS NOT subject to compulsory arbitration, as provided by Rules 72 through 77 of
the Arizona Rules of Civil Procedure.


RESPECTFULLY SUBMITTED this


By:  Cheri L McCracken /s/
      Plaintiff/Attorney for Plaintiff

FILED
Valerie Wyant
CLERK, SUPERIOR COURT
04/30/2021 11:41AM
BY: JDUTTON
DEPUTY

1  Cheri L. McCracken, State Bar No. 006111
   Attorney at Law
2  2402 North 24th Street
   Phoenix, AZ 85008-1804
3  Phone: 602.231.0595
   FAX: 602.231.0841
4  cherimccracken@gmail.com
5
   Christopher R. Houk, State Bar No. 020843
6  **HOUK LAW FIRM, PLLC**
   1050 East Southern Avenue, Suite A-3
7  Tempe, AZ 85282
   Telephone: 480.569.2377
8  Facsimile: 480.569.2379
   chouk@houklawfirm.com
9
10 *Attorneys for Sandra (Corder) Matlock*

11
   Please send all documents to:
12 jmontanez@houklawfirm.com

13

14        **IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

15          **IN AND FOR THE COUNTY OF COCONINO**

16
   Sandra (Corder) Matlock,
17                                              Case No.  CV202000504
           Plaintiff,
18                                              **FIRST AMENDED COMPLAINT**
   vs.
19
   City of Flagstaff, a municipal corporation,
20 Richard Tadder and Amanda Tadder, wife and
   husband,
21
22         Defendants.

23

24        Plaintiff Sandra (Corder) Matlock submits this First Amended Complaint for relief and

25 Jury Trial Demand pursuant to Arizona Rules of Civil Procedure against Defendants because

26 Defendants subjected Sandra to discrimination, retaliation, or improperly interfered with

27 Plaintiff's employment.

28

**HOUK LAW FIRM, PLLC**
1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282
Telephone: 480.569.2377 - Fax:  480.569.2379

**Plaintiff's Claims**

1.      Tortious Interference with Employment;

2.      Title VII, 42 U.S.C. § 2000(e)-2(1) – Termination Based on Sex;

3.      Title VII, 42 U.S.C. § 2000(e)-3(a) – Retaliation for Reporting Sex Discrimination; and

4.      29 U.S.C. § 623, Age Discrimination in Employment Act.

**The Parties and Jurisdiction**

5.      The Plaintiff, Sandra Matlock, has been at all times material to this Complaint:

    a.  An adult resident of Coconino County, and currently resides in Florida;

    b.  Employed by Defendant City of Flagstaff, a municipal corporation; and

    c.  A person whose sex is female and whose age is 58 years old.

6.      Defendant City of Flagstaff is, and has been at all times material to this Complaint:

    a.  A municipal corporation and a body politic, established and operating pursuant to the Arizona Constitution, Art. XIII, § 1, and Title 9 of the Arizona Revised Statutes;

    b.  The employer of Plaintiff, as that term is defined in 2000e(b) in 29 U.S.C. § 630;

    c.  An employer of more than fifteen persons; and

    d.  Located within Arizona, including Coconino County, Arizona.

7.      Defendant Richard Tadder (Tadder) is, and had been at all times relevant to this Complaint,

    a.  An adult resident of Coconino County, Arizona;

Page 2 of 16

HOUK LAW FIRM, PLLC
1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282
Telephone: 480.569.2377 - Fax: 480.569.2379

HOUK LAW FIRM, PLLC
1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282
Telephone: 480.569.2377 - Fax: 480.569.2379

b.  Employed by the City of Flagstaff; and

c.  Upon information and belief, is married to Amanda Tadder, acting on behalf of the marital community of his spouse and himself.

8.      Many of the events alleged occurred in Coconino County, Arizona, and Coconino County is the domicile of all parties at all relevant times.

9.      Coconino County is the appropriate venue pursuant to A.R.S. § 12-401 because Defendant resides in the County.

10.     Sandra has satisfied all conditions precedent to filing suit, including service of the Notice of Claim against both Tadder and the City of Flagstaff on May 27, 2020.

. The EEOC issued a Right to Sue letter on March 30, 2021. *See* Exhibit A.

11.     Amanda Tadder is named solely because of Arizona's community property laws and is properly joined pursuant to Ariz. R. of Civ. P. 19.

## Demand for Jury Trial

12.     While a written Jury demand is not necessary, pursuant to Rule 38 of the Arizona Rules of Civil Procedure, Plaintiff Sandra demands a trial by jury.

## <u>Fact Allegations in Support of All Counts</u>

**For Four years, the City of Flagstaff Recognized Sandra's Excellent Job Performance.**

13.     Sandra re-alleges and incorporates each allegation of this complaint as if fully set forth in this claim.

14.     In February 2015, Sandra started at the City of Flagstaff as a Customer Service Manager.

15.    In eight months, she moved from Customer Service Manager to Sales Tax Manager, one month later to Interim Revenue Director in November 2015 and by July 2017 to Revenue Director where she remained until her termination in December 2019.

16.    In her role as Revenue Director, she oversaw the city's sizeable investment portfolio and budget, built and maintained relationships with vendors and community partners, and oversaw an award-winning team in her department, among other, important duties.

17.    During her time at the City of Flagstaff, Sandra received several performance-based awards—sometimes multiple awards per year—and often given directly by the City Manager himself. For example,

- From 2015 to 2019, Sandra was recognized with 25 different "On the Spot" awards from co-workers, colleagues, team members and other Flagstaff employees;

- In 2015, Sandra was honored with the City Manager Agassiz Award for Teamwork; 7K Award for Service at a Higher Elevation—bestowed directly by the City Manager; and

- In 2016, Sandra received her second 7K Award for Service at a Higher Elevation; Wonderful Outstanding Worker for Outstanding Performance.

18.    In 2017, Sandra received her second City Manager Agassiz Award for Leadership; and

19.    In 2018, Sandra earned her second Wonderful Outstanding Worker award for Outstanding Performance and a Blue Ribbon from Flagstaff Toastmasters, which demonstrates her presentation skills critical to her job duties.

20.    Before Sandra joined the City of Flagstaff, she enjoyed a 28-year career in the public service sector in Orange County, California. There, too, the County of Orange

Page 4 of 16

HOUK LAW FIRM, PLLC
1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282
Telephone: 480.569.2377 - Fax: 480.569.2379

promoted her through seven levels of supervision and four levels of management to the position of Program Manager of the Alcohol and Drug Abuse Program. During her time with Orange County, Sandra's work was recognized various time, including with the following awards:

> a.   Outstanding Leadership and Achievement Award by the County of Orange United Way;
>
> b.   Woman of Achievement; and
>
> c.   Rising Gold Star.

**City of Flagstaff Management Services Director Rick Tadder Exhibited a Pattern of Sexual Harassment Towards Women, Especially Sandra.**

21.   Starting around December 2015—a few months after beginning work with the City of Flagstaff and directly following her reporting to Management Services Director Rick Tadder—Rick regularly engaged in offensive actions toward Sandra and other women.

22.   Rick repeatedly refused to train Sandra on his expectations but regularly gave her negative feedback on her projects.

23.   Rick demeaned Sandra in front of colleagues by unreasonably and unjustifiably criticizing her work.

24.   Sandra coined the term "Tadderizing," a euphemism for Tadder tearing apart and "terrorizing" specifically her.

25.   The term "Tadderizing" was adopted by other colleagues who witnessed the treatment.

26.   Tadder himself began using the term in yet another effort to demean Sandra.

HOUK LAW FIRM, PLLC
1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282
Telephone: 480.569.2377 - Fax: 480.569.2379

27.     Tadder repeatedly rolled his eyes, shrugged his shoulders, laughed, and shook his head in disdain toward Sandra and other women during meetings.

28.     In December 2018, Tadder's temper escalated during a meeting. Those in attendance included: Sandra, a new Customer Service Supervisor Danielle Tiedeman, a potential cash-handling vendor, and former customer Service Manager, Michele Bader, as well as other team members were present.   In front of others, Tadder yelled at Sandra, questioning her abilities. Tiedeman became visibly shaken. Sandra was afraid that she would lose her job if she defended herself.

29.     Shortly after this meeting in 2018, Customer Service Manager, Michele Bader resigned, citing "Rick Tadder" as her only reason for leaving city employment. She told Sandra directly not to trust Tadder before she left.

30.     In early 2019, Finance Director, Brandi Suda, came to Sandra in tears, seeking emotional support after Tadder had demeaned her.

31.     By September 2019, Tadder's harassing emails and in-person bullying against Sandra had become routine, at least once a week.

32.     In late September 2019, Sandra attended a meeting where a draft project on Sales Tax Information to Council was presented by Economic Vitality Director, Heidi Hansen, and Community Investment Director, David McIntire.

33.     When Sandra made a suggestion on changing the formatting of a chart, Tadder shrugged his shoulders and rolled his eyes, blowing her off.

34.     Tadder then presented the same exact idea that he had just ignored from Sandra as his own. Sandra then confronted him and told him that she had just said the same thing, but Tadder told her that she did not.

HOUK LAW FIRM, PLLC
1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282
Telephone: 480.569.2377 - Fax:  480.569.2379

35.    Hansen chimed in, stating, "In all fairness to Sandy, she did say just that," confirming that Sandra was the first to present the idea.

36.    It was not until McIntire also supported Sandra that Tadder finally backed down from claiming the idea as his own.

37.    This happened a second time during the same meeting just minutes later, where Tadder denied Sandra had the idea first and David felt compelled to bring it to Tadder's attention once more.

38.    At least one other co-worker, Financial Systems Analyst Martin Collins noted Tadder's disparate treatment of Sandra. His behavior became so incessant that Sandra's colleagues came to expect the treatment and were normalized to his treatment of Sandra, and therefore no longer reacted.

39.    Tadder did not treat men in the same way.

**Tadder's Harassment of Sandra Reached a Boiling Point During a Work Trip with Colleagues**

40.    In October 2019, Tadder and Sandra attended a work conference in Colorado with several other City of Flagstaff employees. Tadder, Sandra, and several other employees attended a networking event sponsored by a client. After the event, the City of Flagstaff team all went to dinner together outside of the conference, on their personal time.

41.    At the networking event and at dinner, each employee had at least one drink. Tadder was aware that Sandra had some drinks, as he had.

42.    At dinner, Tadder continued his history of singling Sandra out, criticizing Sandra's work, being negative toward her, and saying demeaning comments towards her:

HOUK LAW FIRM, PLLC
1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282
Telephone: 480.569.2377 - Fax: 480.569.2379

HOUK LAW FIRM, PLLC
1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282
Telephone: 480.569.2377 - Fax: 480.569.2379

a.  In a sign of his control and lack of respect toward her, at one point, when Sandra said she needed to go to the restroom, Tadder told her, she didn't need to go and sit down.

b.  This time, Tadder was acting in a particularly humiliating way because he berated Sandra in front of Jessica Huleatt, a Customer Service Manager, who reported to Sandra.

c.  Tadder also got angry with Sandra for making a joke about who was covering the tab for dinner and made an insensitive racial comment about a black waiter, to which Sandra objected.

43.   Sandra left the table and went to the bathroom, despite Tadder telling her to sit down. When she returned, Sandra attempted to lighten the mood and told a joke about who was paying the dinner bill. Tadder responded by increasing his disparaging remarks. The combination of these events at dinner, plus the years of distress caused by Tadder, led Sandra to become upset, resulting in Sandra accidently knocking over glasses on the table. Tadder's condescending behavior followed years of his harassing behavior triggered Sandra's emotional response.

44.   There, her emotions culminated in a series of texts to Tadder. In her texts, she called out his insensitive behavior, telling him she will "not be demeaned" anymore, that she had witnesses to his poor treatment of women, and that he bullied another woman (Brandi Suda) to the point of tears.

**Tadder Terminated Sandra's Employment in Retaliation Minutes After Her Opposition to His Treatment of Women**

HOUK LAW FIRM, PLLC
1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282
Telephone: 480.569.2377 - Fax: 480.569.2379

45.    Sandra texted Tadder that she "no longer report[s] to you [meaning Tadder] as I have submitted my resignation" by which she meant, she wanted to work for someone else at the City. She also texted, "I'll be contacting HR in the morning".

46.    The next morning, Sandra left a voice mail for Shauna Fischer, HR Manager, reporting Tadder's harassment and stating her intent was not to resign. Tadder immediately forced Sandra to resign.  He contacted Allison Eckert, the Interim HR Director, who issued a resignation letter. Tadder did this without confirming Sandra's intent in the text message, knowing she was at a dinner and had been drinking—as he had—and knowing she was objecting to his harassing behavior.

**The City of Flagstaff Ultimately Terminated Sandra's Employment.**

47.    At first, the City Manager, Greg Clifton, promptly reinstated Sandra's employment, placing her, rather than Tadder, on administrative leave until the City had time to assess the situation.

48.    Instead of investigating Tadder's behavior, in mid-October 2019, Interim Human Resources Director, Allison Eckert, initiated an investigation into Sandra's conduct in Colorado, insinuating possible blame.

49.    Sandra fully cooperated in the investigation.

50.    Sandra also provided a detailed account of the incident and the harassment she suffered.

51.    While Sandra made allegations of discrimination about Tadder's discrimination prior to what occurred in Colorado, the City refused to investigate those allegations, claiming to reserve them for later, stating "Other claims of harassment by Ms. Corder [Matlock] that fall outside of this event and timeframe will be investigated separately."

52.    To date, the City has not involved Sandra in any investigation, nor disclosed the results of the allegations that Tadder engaged in longstanding discrimination against her and other women. Nor upon information and belief has it investigated.

53.    In mid-November 2019, the City stated they completed the investigation into the event in Colorado:

    a.  While concluding that all of Sandra's harassment claims against Tadder during the Colorado trip were not substantiated—without explanation—the City turned the tables and found that Sandra—not Tadder—was at fault.

    b.  The City found Sandra was abusive and insubordinate to Tadder, again, without explanation.

    c.  The City recommended that the City Manager immediately terminate her employment, without any progressive discipline.

    d.  In November 2019, Sandra met with the City Manager Greg Clifton and offered alternatives to termination, in line with City policy, but the City refused to accept them and Clifton forced Sandra to resign or be terminated, effective December 2, 2019.

54.    At age 57 at the time of her termination, Sandra was one of the oldest City employees.

55.    During her employment, ageist comments were made to Sandra.

56.    The City transferred Sandra's job duties to an employee who is around 30 years of age.

**Count I**
**Tortious Interference with Employment**

Page 10 of 16

HOUK LAW FIRM, PLLC
1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282
Telephone: 480.569.2377 - Fax: 480.569.2379

**(Against Rick Tadder)**

57.     Sandra re-alleges and incorporates each allegation of this complaint as if fully set forth in this claim.

58.     Tadder tortiously interfered with Sandra's employment with the City of Flagstaff when he contacted HR, resulting in HR accepting Sandra's resignation that she did not intend, thus improperly causing her termination.

59. Tadder terminated Sandra's employment knowing Sandra was objecting to his harassing behavior.

60. Tadder's interference was improper. There was a business expectancy between Sandra and the City of Flagstaff. Tadder knew about Sandra's and the City of Flagstaff's shared business expectancy. He intentionally interfered with her employment, causing her termination.

61. Tadder's interference caused damage to Sandra.

62. As a direct and proximate result of the conduct by the City of Flagstaff, Sandra suffered compensatory damages including for pain, suffering (including pain and suffering due to developing PTSD), inconvenience, diminished enjoyment of life, humiliation, outrage, discomfort, anxiety, sorrow, fear, depression, loss of sleep, nightmares, loss of the love, care, affection, companionship, and close relationships, change in demeanor, and harmed reputation at work. Sandra is reasonably likely to incur more compensatory damages in the future.

63.     Sandra seeks a judgment for the following:

a.     Compensatory and general damages in an amount to be determined by the trier-of-fact;

HOUK LAW FIRM, PLLC
1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282
Telephone: 480.569.2377 - Fax: 480.569.2379

HOUK LAW FIRM, PLLC
1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282
Telephone: 480.569.2377 - Fax: 480.569.2379

b.    Monetary damages, including lost wages, salary, employment benefits, lost value of pension, and other compensation, in an amount to be proven at trial;

c.    Interest at highest legal rate;

d.    Reinstatement, or front pay in lieu of reinstatement;

e.    Injunctive relief to prevent future similar violations and to remedy harm done to Sandra;

f.    Punitive damages because Tadder's interference was the result of malice, spite, ill-will, or reckless indifference to her rights; and

g.    Costs.

<div style="text-align:center">

**Count II:**
**Termination Based Upon Sex**
**Title VII, 42 U.S.C. § 2000e-2(a)(1)**

</div>

64.    Sandra re-alleges and incorporates each allegation of this complaint as if fully set forth in this claim.

65.    City of Flagstaff terminated Sandra's employment in violation of 42 U.S.C. § 2000e-2(1) based on sex and discrimination.

66.    As a direct and proximate result of the conduct by City of Flagstaff, Sandra is entitled to compensatory damages including for pain, suffering (including pain and suffering due to developing PTSD), inconvenience, diminished enjoyment of life, humiliation, outrage, discomfort, anxiety, sorrow, fear, depression, loss of sleep, nightmares, loss of the love, care, affection, companionship, and other close relationships, change in demeanor, and harmed reputation at work. Sandra is reasonably likely to incur more compensatory damages in the future.

67.     Injunctive relief should be granted for Sandra against Defendant to prevent further acts of discrimination, particularly since the Defendant appears to be oblivious to their duties and liabilities under 42 U.S.C. § 2000(e)-2(1).

68.     The unlawful employment practices complained of were intentional.

69.     Sandra seeks a judgment for the following:

a.      Compensatory and general damages in an amount to be determined by the trier-of-fact;

b.      Monetary damages, including lost wages, salary, employment benefits, lost value of pension, and other compensation, in an amount to be proven at trial;

c.      Reinstatement, or front pay in lieu of reinstatement;

d.      Injunctive relief to prevent future similar violations of federal statutes and to remedy harm done to Sandra;

e.      Her reasonable attorney's fees and expert fees incurred herein, pursuant to 42 U.S.C. § 1988 (b), (c), Federal Rule of Civil Procedure 54(d)(2), and Local Rule of Civil Procedure 54.2; and

f.      Her taxable costs incurred herein, pursuant to Federal Rule of Civil Procedure 54(d)(1), Local Rule of Civil Procedure 54.1, and 28 U.S.C. § 1920.

**Count III**
**Retaliation For Reporting Sex-Based Discrimination**
**Title VII, 42 USC § 2000e-3(a)**

70.     Sandra re-alleges and incorporates each allegation of this complaint as if fully set forth in this claim.

HOUK LAW FIRM, PLLC
1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282
Telephone: 480.569.2377 - Fax: 480.569.2379

71.    The City of Flagstaff retaliated against Sandra in violation of U.S.C. § 2000e-3(a) including by terminating her employment because she complained about discrimination on the basis of sex and sexual harassment.

72.    As a direct and proximate result of the conduct of the City of Flagstaff, Sandra is entitled to compensatory damages including for lost earnings and benefits, decrease in earnings power or capacity, pain, suffering, inconvenience, diminished enjoyment of life, humiliation, outrage, discomfort, and harmed reputation at work and her industry. Sandra is also reasonably likely to incur more compensatory damages in the future.

73.    The unlawful employment practices complained of were intentional.

74.    Sandra seeks a judgment for the following:

a.    Injunctive relief, including enjoining harassment and implementing policy changes, training, and changing her status to eligible for rehire;

b.    Back pay, reinstatement in lieu of front pay, or front pay with interest;

c.    Compensatory and general damages in an amount to be determined by the trier-of-fact;

d.    Her reasonable attorney's fees and expert fees incurred herein, pursuant to 42 U.S.C. § 1988 (b), (c), Federal Rule of Civil Procedure 54(d)(2), and Local Rule of Civil Procedure 54.2; and

e.    Her taxable costs incurred herein, pursuant to Federal Rule of Civil Procedure 54(d)(1), Local Rule of Civil Procedure 54.1, and 28 U.S.C. § 1920.

HOUK LAW FIRM, PLLC
1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282
Telephone: 480.569.2377 - Fax: 480.569.2379

**Count IV**
**Unlawful Termination**
**Age Discrimination in Employment Act, 29 U.S.C. § 623**
**(City of Flagstaff)**

76.     The Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623(a)(1), prohibits employers from terminating their employees because of age.

77.     Defendant violated the ADEA when it terminated Sandy's employment because of her age.

78.     As a direct and proximate result of the conduct of Defendant, Plaintiff lost wages, in an amount to be proven at trial.

79.     Defendant's unlawful employment practices were willful within the meaning of the ADEA, 29 U.S.C. § 626(b).

75.      Sandra seeks a judgment for the following:

    f.     Injunctive relief, including enjoining discrimination and implementing policy changes, training, and changing her status to eligible for rehire;

    g.     Back pay, reinstatement in lieu of front pay, or front pay with interest;

    h.     Liquidated damages;

    i.     Her reasonable attorney's fees and expert fees incurred herein, pursuant to 42 U.S.C. § 1988 (b), (c), Federal Rule of Civil Procedure 54(d)(2), and Local Rule of Civil Procedure 54.2; and

    j.     Her taxable costs incurred herein, pursuant to Federal Rule of Civil Procedure 54(d)(1), Local Rule of Civil Procedure 54.1, and 28 U.S.C. § 1920.

HOUK LAW FIRM, PLLC
1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282
Telephone: 480.569.2377 - Fax: 480.569.2379

WHEREFORE, Sandra prays for the following relief:

1.      For a declaration that City of Flagstaff violated Sandra's rights under Title VII;

2.      For a declaration that Tadder improperly interfered with Sandra's rights;

3.      All relief available under the statutes and common laws asserted in this case;

4.      For injunctive relief, including a permanent injunction prohibiting City of Flagstaff from engaging in discrimination under Title VII;

5.      For equitable relief such as employment, promotion, reinstatement or, in lieu of reinstatement, front pay;

6.      For compensation for past and future non-pecuniary losses resulting from the unlawful practices under Title VII and the interference claim;

7.      For punitive damages resulting from the improper interference claim;

8.      For liquidated damages under the ADEA;

9.      For interest on the above amounts at the highest legal rate from the date of Judgment until paid in full;

10.     For reasonable attorneys' fees;

11.     Taxable costs; and

12.     All other relief the court shall deem is just.

**DATED** this 30th day of April 2021.

HOUK LAW FIRM, PLLC

By:    /s/ Christopher R. Houk
       Christopher R. Houk
       *Attorneys for Sandra Matlock*

**HOUK LAW FIRM, PLLC**
1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282
Telephone: 480.569.2377 - Fax: 480.569.2379

Exhibit A

EEOC Form 161 (11/2020)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Sandra Marie Corder<br>4025 S Lake Mary Rd Apt 33<br>Flagstaff, AZ 86005 | From: | Phoenix District Office<br>3300 North Central Ave<br>Suite 690<br>Phoenix, AZ 85012 |
|---|---|---|---|

|  | On behalf of person(s) aggrieved whose identity is<br>*CONFIDENTIAL (29 CFR §1601.7(a))* | | |
|---|---|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **35A-2020-00277** | **Robin Campbell,**<br>**State, Local & Tribal Program Manager** | **(602) 661-0041** |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

| | The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC. |
|---|---|
| | Your allegations did not involve a disability as defined by the Americans With Disabilities Act. |
| | The Respondent employs less than the required number of employees or is not otherwise covered by the statutes. |
| | Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge |
| | The EEOC issues the following determination: The EEOC will not proceed further with its investigation, and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge. |
| **X** | The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge. |
| | Other *(briefly state)* |

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

*Elizabeth Cadle* (signature)

March 30, 2021

Enclosures(s)

**Elizabeth Cadle,**
**District Director**

*(Date Issued)*

cc:

| Human Resources<br>City of Flagstaff<br>211 W Aspen Ave<br>Flagstaff, AZ 86001 | Cheri L. McCracken, Esq.<br>Law Office<br>705 E Coronado Rd<br>Phoenix, AZ 85006 |
|---|---|

rec'd
4/1/2021

Enclosure with EEOC
Form 161 (11/2020)

# INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court <u>under Federal law</u>.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS    --    Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope and record of receipt, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was** *issued* to you (as indicated where the Notice is signed) or the date of the postmark or record of receipt, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS    --    Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice <u>and</u> within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION    --    Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do <u>not</u> relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE    --    All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request <u>within 6 months</u> of this Notice**. (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*



**OFFICE OF THE ARIZONA ATTORNEY GENERAL**

CIVIL LITIGATION DIVISION
DIVISION OF CIVIL RIGHTS SECTION

MARK BRNOVICH
ATTORNEY GENERAL

**NOTICE OF RIGHT TO SUE**

REBEKAH BROWDER
CHIEF COUNSEL

_Sandra Marie Corder_     v.     _City of Flagstaff_

CRD No.:    CRD-2020-0189          EEOC No.: 35A-2020-00277

On 02/25/2020, you filed a charge with the Division of Civil Rights Section alleging employment discrimination. Arizona law provides that you may bring a civil action in Superior Court of the county where the alleged discriminatory action took place. Should you decide to file a civil action, you must do so **within 90 days** of the date you receive this Notice or **within one year** of the date you filed the charge, **whichever comes first**. A.R.S. 41-1481(D.)

This Notice of Right to Sue letter is being issued because:

the Division of the Civil Rights Section has not completed the processing of your charge(s), but there are approximately 90 days left before the expiration of the one year deadline for filing a civil action in Superior Court.

If you have any questions concerning this notice, please contact us at 602-542-5263 or toll free at 1-877-491-5742. If you need legal assistance, you should seek the advice of an attorney.

BY:

_Stephen Scott, Compliance Manager_

Sent by regular mail this 1st day of December 2020

Cc: Sandra Marie Corder c/o Cheri L. McCracken, Esq. and City of Flagstaff c/o Gordon Lewis, Esq.



Office of the Attorney General
Civil Rights
2005 N Central Ave
Phoenix, AZ  85004



FFAB60042

Gordon Lewis, Esq.
Jones, Skelton & Hochul, PLC
40 N. Central Avenue, Suite 2700
Phoenix, AZ 85004



1   Gordon Lewis, Bar #015162
    JONES, SKELTON & HOCHULI, P.L.C.
2   40 North Central Avenue, Suite 2700
    Phoenix, Arizona  85004
3   Telephone:  (602) 263-7341
    Fax:  (602) 200-7897
4   glewis@jshfirm.com
    minuteentries@jshfirm.com
5
    Attorneys for Defendants City of Flagstaff,
6   Richard Tadder and Amanda Tadder

7
                    **SUPERIOR COURT OF THE STATE OF ARIZONA**
8
                              **COUNTY OF COCONINO**
9

10  SANDRA (CORDER) MATLOCK,              |  NO. S0300CV202000504

11                         Plaintiff,     |  **NOTICE OF LODGING PROPOSED**
                                          |  **FORM OF ORDER**
12           v.
                                          |  (Assigned to the Honorable Catherine Brown
13  CITY OF FLAGSTAFF, a municipal        |  Nichols)
    corporation, RICHARD TADDER and
14  AMANDA TADDER, wife and husband,

15                         Defendants.

16
              NOTICE IS HEREBY GIVEN that the attached Proposed Form of Order is lodged
17
    this 9th day of December, 2020.
18
              DATED this 9th day of December 2020.
19
                                          JONES, SKELTON & HOCHULI, P.L.C.
20

21
                                          By /s/ Gordon Lewis
22                                          _____
                                             Gordon Lewis
23                                           40 North Central Avenue, Suite 2700
                                             Phoenix, Arizona  85004
24                                           Attorneys for Defendants City of Flagstaff,
                                             Richard Tadder and Amanda Tadder
25

8979366.1

1    ORIGINAL of the foregoing electronically filed
     this 9th day of December 2020.

2

3    COPY of the foregoing mailed/e-mailed
     this 9th day of December 2020, to:

4    Cheri L. McCracken
     2402 North 24th Street
5    Phoenix, AZ 85008-1804

6    Christopher R. Houk
     HOUK LAW FIRM, PLLC
7    1050 East Southern Avenue, Suite A-3
     Tempe, AZ 85282
8

9    Attorneys for Plaintiff

     /s/ Jennifer Bernardo
10   _____

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

1    Gordon Lewis, Bar #015162
     JONES, SKELTON & HOCHULI, P.L.C.
2    40 North Central Avenue, Suite 2700
     Phoenix, Arizona 85004
3    Telephone: (602) 263-7341
     Fax: (602) 200-7897
4    glewis@jshfirm.com
     minuteentries@jshfirm.com
5

6    Attorneys for Defendants City of Flagstaff,
     Richard Tadder and Amanda Tadder

7

8             **SUPERIOR COURT OF THE STATE OF ARIZONA**

                     **COUNTY OF COCONINO**
9

10    SANDRA (CORDER) MATLOCK,       NO. S0300CV202000504

11                  Plaintiff,    **[PROPOSED] ORDER DISMISSING**
                                   **DEFENDANTS RICHARD AND**
12       v.                              **AMANDA TADDER**

13    CITY OF FLAGSTAFF, a municipal     (Assigned to the Honorable Catherine Brown
     corporation, RICHARD TADDER and    Nichols)
14    AMANDA TADDER, wife and husband,

15                  Defendants.

16

17          The Court, having considered Defendant Richard and Amanda Tadder's Motion to

18    Dismiss, and good cause appearing,

19          IS HEREBY ORDERED granting Defendant's Motion to Dismiss and dismissing

20    this cause of action in its entirety, with prejudice.

21          IT IS FURTHER ORDERED, that Defendants Richard and Amanda Tadder may

22    apply for an award of attorneys' fees pursuant to ARS § 12–341.01.

23

24

25

DATED this _____ day of _____, _____.

By _____
The Honorable Catherine Brown Nichols

ORIGINAL of the foregoing electronically filed
this _____ day of _____ 2020.

COPY of the foregoing mailed/e-mailed
this _____ day of _____ 2020, to:

Cheri L. McCracken
2402 North 24th Street
Phoenix, AZ 85008-1804

Christopher R. Houk
HOUK LAW FIRM, PLLC
1050 East Southern Avenue, Suite A-3
Tempe, AZ 85282

Attorneys for Plaintiff

_____

**From:**         GORDON LEWIS
**To:**             Jennifer Bernardo
**Subject:**     FW: E-Filing Status: Form Set # 5222962 Delivered
**Date:**         Wednesday, December 9, 2020 1:56:53 PM

---

**From:** TurboCourt Customer Service
**Sent:** Wednesday, December 9, 2020 1:56:48 PM (UTC-07:00) Arizona
**To:** GORDON LEWIS
**Subject:** E-Filing Status: Form Set # 5222962 Delivered

PLEASE DO NOT REPLY TO THIS EMAIL.

AZTurboCourt Form Set # 5222962 has been DELIVERED to Coconino County - Superior Court.

You will be notified when your documents have been processed by the court.

You MUST log in and check your filing status online at http://turbocourt.com/.

Here are your filing details:
Case Number: S0300CV202000504 (Note: If this filing is for case initiation, you will receive a separate notification when the case # is assigned.)

Case Title: SANDRA MATLOCK PLAINTIFF vs CITY OF FLAGSTAFF, A MUNICIPAL CORPORATION et al. DEFENDANT

Filed By: Gordon Lewis

AZTurboCourt Form Set: #5222962
AOC Submission ID #1329649

Keyword/Matter #: 16799-00044
Delivery Date and Time: Dec 09, 2020 1:56 PM MST

Forms:
Summary Sheet (This summary sheet will not be filed with the court. This sheet is for your personal records only.)


Attached Documents:
Notice: Lodging: Notice of Lodging Proposed Form of Order
Proposed Order: Proposed Order re MTD

Fees Paid:

Total Filing Fees: $0.00
Provider Fee: $6.50
E-Payment Fee: $0.20
Total Amount Paid: $6.70

You MUST log in and check your filing status and the e-service status of this form set online at http://turbocourt.com/.

If you have questions about your filing, please contact AOC Support Services, phone number 602-452-3519 or 1-800-720-7743, or e-mail pasupport@courts.az.gov.

Please have your AZTurboCourt Form Set # and AOC Submission ID available.

1   Gordon Lewis, Bar #015162
    JONES, SKELTON & HOCHULI, P.L.C.
2   40 North Central Avenue, Suite 2700
    Phoenix, Arizona  85004
3   Telephone:  (602) 263-7341
    Fax:  (602) 200-7897
4   glewis@jshfirm.com
    minuteentries@jshfirm.com
5
    Attorneys for Defendants City of Flagstaff,
6   Richard Tadder and Amanda Tadder

7               **SUPERIOR COURT OF THE STATE OF ARIZONA**
8                          **COUNTY OF COCONINO**
9
10  SANDRA (CORDER) MATLOCK,                 NO. S0300CV202000504

11                          Plaintiff,       **Notice Of Filing Exhibit A To Richard
                                             and Amanda Tadder's Reply In Support
                                             Of Motion to Dismiss**
12          v.
                                             (Assigned to the Honorable Catherine Brown
13  CITY OF FLAGSTAFF, a municipal           Nichols)
    corporation, RICHARD TADDER and
14  AMANDA TADDER, wife and husband,

15                          Defendants.
16
17          Defendants inadvertently did not attach their Exhibit A to Defendants' Reply In

18  Support of Motion to Dismiss.  Attached is Exhibit A to their Reply.

19          DATED this 4th day of January 2020.

20                          JONES, SKELTON & HOCHULI, P.L.C.

21
22                          By /s/ Gordon Lewis
                               Gordon Lewis
23                             40 North Central Avenue, Suite 2700
                               Phoenix, Arizona  85004
24                             Attorneys for Defendants City of Flagstaff,
                               Richard Tadder and Amanda Tadder
25

9031404.1
9031404.1

1  ORIGINAL of the foregoing electronically filed
   this 4th day of January 2020.
2
   COPY of the foregoing mailed/e-mailed
3  this 4th day of January 2020, to:

4  Cheri L. McCracken
   705 E. Coronado Road
5  Phoenix, AZ 85006-04733

6  Christopher R. Houk
   HOUK LAW FIRM, PLLC
7  1050 East Southern Avenue, Suite A-3
   Tempe, AZ 85282
8
   Attorneys for Plaintiff
9
   /s/ Jennifer Bernardo
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**EXHIBIT A**

2015 WL 2383820
Only the Westlaw citation is currently available.
NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME
COURT 111(c), THIS DECISION IS NOT
PRECEDENTIAL AND MAY BE CITED
ONLY AS AUTHORIZED BY RULE.
Court of Appeals of Arizona,
Division 1.

Lisa M. AUBUCHON and Peter R. Pestalozzi,
wife and husband; David Hendershott and Anna
Hendershott, husband and wife, Plaintiffs/
Appellants; Edward Moriarity; Moriarity,
Badaruddin & Booke, LLC, Appellants,

v.

Supervisor Fulton BROCK; Supervisor Andrew
Kunasek; Supervisor Donald Stapley; Supervisor
Mary Rose Wilcox; Supervisor Max Wilson;
County Manager David Smith; Assistant County
Manager Sandi Wilson; former Maricopa County
Attorney Richard Romley; County Attorney
William Montgomery; Paul Ahler; Mark Faull;
Maricopa County; Edward Novak; Thomas Irvine;
Polsinelli Shughart PC, Defendants/Appellees.

No. 1 CA–CV 13–0451.
|
May 14, 2015.

Appeal from the Superior Court in Maricopa County;
No. CV2011–014754; The Honorable Sally Schneider
Duncan, Judge. AFFIRMED IN PART, REVERSED AND
REMANDED IN PART, VACATED IN PART, VACATED
AND REMANDED IN PART.

**Attorneys and Law Firms**

Lisa M. Aubuchon, Tempe, for Plaintiff/Appellant.

Edward P. Moriarity, Missoula, MT, for Appellant.

Swenson Storer Andrews & Frazelle, P.C., by Michael J.
Frazelle, Phoenix, Counsel for Defendants/Appellees Brock,
Kunasek, Stapley, Wilcox, M. Wilson, Smith, S. Wilson,
Romley, Ahler.

Dickinson Wright PLLC, by Victoria Orze, Anne L. Tiffen,
Phoenix, Counsel for Defendants/Appellees Montgomery,
Faull.

Sacks Tierney P.A., Scottsdale by James W. Armstrong,
Jeffrey S. Leonard, for Counsel for Defendant/Appellee
Maricopa County.

Polsinelli PC, By Thomas K. Irvine, Andrew S. Jacob,
Phoenix, Counsel for Defendants/Appellees Novak, Irvine,
Polsinelli Shughart PC.

Presiding Judge PETER B. SWANN delivered the decision
of the court, in which Judge KENTON D. JONES and Judge
MICHAEL J. BROWN joined.

**MEMORANDUM DECISION**

SWANN, Judge.

**\*1** ¶ 1 This lawsuit was filed in the aftermath of a
series of disputes between the Maricopa County Board of
Supervisors and the Maricopa County Attorney's Office.
After plaintiff Lisa Aubuchon, a high-ranking Maricopa
County prosecutor,[1] was terminated from her employment,
she and former Maricopa County Sheriff's deputy David
Hendershott brought a number of claims seeking damages
against the county, various public officials and a law firm
that the county had retained. The superior court dismissed the
action, and awarded sanctions against the plaintiffs.

¶ 2 This appeal requires us to decide whether the superior
court erred by determining that claims set forth in the
plaintiffs' proposed second amended complaint were futile,
and by imposing attorney's-fees awards against the plaintiffs
as sanctions. We affirm the court's determination of futility
with respect to the majority of the claims but conclude
that the claims for breach of contract and breach of the
covenant of good faith and fair dealing were sufficiently pled.
We further hold that while the plaintiffs clearly engaged in
sanctionable conduct, the final calculation of the amount of
sanctions in favor of the county must await the conclusion
of the case on remand. Finally, we hold that while the court
properly awarded sanctions in favor of a self-represented
law firm, the measure of those sanctions that the trial court
employed conflicts with recent case law, and the sanctions
must therefore be recomputed.

### FACTS AND PROCEDURAL HISTORY

¶ 3 In August 2011, Aubuchon, Hendershott, and their spouses (collectively, "Plaintiffs") commenced an action against multiple defendants: Maricopa County ("the County"); the Maricopa County Board of Supervisors ("the MCBOS"); the Maricopa County Attorney's Office ("the MCAO"); County officials, employees, or contractors Fulton Brock, Andrew Kunasek, Donald Stapley, Mary Rose Wilcox, Max Wilson ("M.Wilson"), Richard Romley, William Montgomery, David Smith, Sandi Wilson ("S.Wilson"), Paul Ahler, Mark Faull, and Katherine Baker (collectively, "the County officials and employees"); the State of Arizona ("the State"); State officials Terry Goddard and Thomas Horne (collectively, "the State officials"); and the law firm of Polsinelli Shughart, P.C., and its members Edward Novak and Thomas Irvine (collectively, "the Polsinelli defendants"). Plaintiffs were represented in the action by the law firm of Moriarity, Badaruddin & Booke, LLC ("the Moriarity Firm"), and all of their pleadings and proposed pleadings were signed by Moriarty Firm attorney Edward P. Moriarity.

¶ 4 All of the defendants moved to dismiss Plaintiffs' first amended complaint, arguing that it violated the basic pleading standards of Rule 8 and was subject to dismissal under Rule 12(b)(6) for failure to state claims. Some of the defendants argued that the complaint also violated the pleading standard prescribed by Rule 10(b). The MCBOS and the MCAO further argued that they were immune from suit as non-jural entities, and the Polsinelli defendants argued that dismissal was warranted under A.R.S. § 12–752. The Polsinelli defendants also stated that they intended to seek sanctions under Rule 11 and A.R.S. §§ 12–349 and –752.

*2 ¶ 5 Plaintiffs disputed that the first amended complaint was deficient, but posited that they would be able to cure any defects if granted leave to amend. At oral argument on the motions to dismiss, Plaintiffs' counsel did not argue the merits of the motions. Instead, he simply stated:

> I'm wondering if I could make a suggestion that could cut this thing way short. I've gone through in detail and looked at all of the arguments and matters as set forth by the Defendants, and if the Court were to deem these say ten or 15 days to file an amended

complaint, I think that we can resolve probably almost everything that they are complaining about.

¶ 6 In response to this statement, the court explained that it agreed with the defendants that the first amended complaint violated Rules 8 and 10, and that it was concerned that dismissal might be warranted under Rule 12(b)(6). Specifically, the court indicated that it was skeptical about claims of legal malpractice in the absence of allegations of an attorney-client relationship, as well as about claims of defamation arising out of privileged complaints filed with the State Bar of Arizona. The court allowed Plaintiffs to file a motion seeking leave to amend, but warned that the motion and proposed second amended complaint would need to comply with the rules of civil procedure. The court further stated that it was "not ready to make th[e] decision" regarding whether sanctions were warranted, explaining that "depending on what happens there may or may not be sanctions that are appropriate" and that "[i]f there is a violation of Rule 11, and I have given due process warning as far as I'm concerned, sanctions can attach to any further action." The court granted the MCBOS and the MCAO's request for dismissal based on their non-jural status but otherwise denied the defendants' motions to dismiss, without prejudice.

¶ 7 In February 2012, Plaintiffs filed their motion for leave to file a second amended complaint. The proposed second amended complaint attached to the motion eliminated several of the remaining defendants from the caption, namely: Faull, Baker, the State, the State officials, and the Polsinelli defendants. The defendants who remained in the proposed second amended complaint objected to the motion for leave to amend, arguing that the motion did not comply with Rule 7.1, that the proposed amendments did not comply with the applicable pleading standards, and that the proposed amendments were futile. The Polsinelli defendants filed a renewed motion to dismiss the first amended complaint (alternatively styled a motion for judgment on the pleadings) and requested sanctions under Rule 11 and A.R.S. § 12–349.

¶ 8 In May 2012, after holding oral argument, the court denied Plaintiffs' motion for leave to amend. The court found that Plaintiffs' motion did not comply with Rule 7.1 and that "even if filed in compliance with the Arizona Rules of Civil Procedure, [a]mendment would be futile because the claims are not legally viable." The court specifically

found that "Montgomery was not in office at the time the claims arose and/or the claims are futile," and that there was "no legal basis" for the defamation and intentional infliction of emotional distress ("IIED") claims related to Kunasek even assuming the truth of the allegations. The court also granted the Polsinelli defendants' motion for dismissal and sanctions, ordering dismissal with prejudice and directing the defendants to file an application for attorney's fees. The court found that such sanctions were appropriate because "[n]o legal or factual basis ever existed to file a Complaint against these defendants" and "the Complaint was filed for vexatious purposes."

**\*3** ¶ 9 The County and the County officials and employees (with the exception of Faull and Baker) subsequently requested attorney's fees as sanctions. The court granted these requests, ordered the dismissal with prejudice of "ALL named Defendants," and awarded the Polsinelli defendants the full amount of fees and costs they requested.

¶ 10 Before the court entered any appealable orders, Plaintiffs filed a motion for reconsideration regarding the court's award of fees and costs to the Polsinelli defendants, arguing that these defendants were not entitled to recover fees because they had represented themselves in the action. The court promptly set oral argument on the motion, but before the date set for argument, Plaintiffs filed a notice of appeal. This court dismissed the appeal as premature. Plaintiffs then filed an unsuccessful motion in the superior court for a change of judge for cause.

¶ 11 In May 2013, the court ultimately entered final, appealable Rule 54(b) judgments awarding approximately $185,000 in attorney's fees and costs to the Polsinelli defendants; approximately $35,000 in fees to the County; approximately $18,000 in fees to Montgomery; and approximately $17,000 in fees to Brock, Kunasek, Stapley, Wilcox, M. Wilson, Romley, Smith, S. Wilson, and Ahler.[2] Each of the judgments specified that the fees were awarded jointly and severally against Plaintiffs, the Moriarity Firm, and Moriarity. Plaintiffs, the Moriarity Firm, and Moriarity timely appeal.

**DISCUSSION**

I. PROPOSED SECOND AMENDED COMPLAINT

¶ 12 Plaintiffs do not challenge the dismissal of the first amended complaint except as it relates to the award of

sanctions. They argue only that they should have been allowed to file the proposed *second* amended complaint because not all of its claims were futile.

¶ 13 We review the denial of a motion to amend for abuse of discretion. *Hall v. Romero,* 141 Ariz. 120, 124, 685 P.2d 757, 761 (App.1984). It is within the court's discretion to deny a motion to amend based on futility in the proposed amendment. *Bishop v. State, Dep't of Corrs.,* 172 Ariz. 472, 474–75, 837 P.2d 1207, 1209–10 (App.1992). The determination of futility, however, is a question of law that we review de novo. *Carvalho v. Equifax Info. Servs., LLC,* 629 F.3d 876, 893 (9th Cir.2010). An amendment is futile if the proposed amended pleading would be subject to dismissal under Rule 12(b)(6) for failure to state a claim. *Miller v. Rykoff–Sexton, Inc.,* 845 F.2d 209, 214 (9th Cir .1988). Accordingly, in considering futility, all well-pled factual allegations and reasonable inferences in the proposed pleading must be taken as true. See *Cullen v. Auto–Owners Ins. Co.,* 218 Ariz. 417, 419, ¶ 7, 189 P.3d 344, 346 (2008).

¶ 14 We consider in turn each of the claims set forth in Plaintiffs' proposed second amended complaint and not otherwise waived.[3] We conclude that the superior court's determination of futility was correct with respect to Plaintiffs' claims for defamation, IIED, constructive fraud, and constitutional violations. But we hold that certain of Plaintiffs' contract-related claims were not futile, and we therefore reverse and remand with respect to these claims.

A. The Proposed Second Amended Complaint's Defamation Claims Were Futile.

**\*4** ¶ 15 Plaintiffs' proposed second amended complaint purported to set forth claims for defamation based on statements attributed to Kunasek, Smith, and S. Wilson.[4] The claim regarding Kunasek was futile because his alleged statements were not actionable as a matter of law. The claim regarding Smith and S. Wilson was futile because the statements attributed to them were not sufficiently pled.

1. The Statements Attributed to Kunasek Were Not Actionable.

¶ 16 Plaintiffs alleged that in a widely published letter, Kunasek made false statements regarding their involvement in an investigation of him. Specifically, Plaintiffs alleged that Kunasek wrote:

a. "Early this year, Sheriff Arpaio's top henchman, Chief Hendershott, and his cohorts in former County Attorney Andrew Thomas' office [where Aubuchon was employed as a deputy county attorney] brought a fabricated case to the Grand Jury accusing me of theft and participating in a widespread government conspiracy. They knew these charges were false and created them to achieve their political ends."

b. ... [A]n opinion by Sheila Polk "should have ended the ridiculous 'Bug Sweep' chapter in the ongoing saga being created by some of the most demented minds in law enforcement."

c. "Unable to obtain an indictment, he opted to smear my name."

d. "The County Attorney's actions were a vile and criminal abuse of his sworn duty to uphold the Constitution and laws of our state and nation."

e. "After seeing what they had done to Judge Donahoe, I knew these two would not hesitate to bring charges even without any evidence of a crime." ....

f. "After hours of hearing how bad my life was going to get, the free talk [held during the course of the investigation] took a bizarre turn. The prosecutor (Aubuchon) made it clear that I could avoid all the pain and shame if I chose another option-assuring the Sheriff and county Attorney that Thomas' successor or the process to select a successor would be acceptable to them![']"

g. "It would be as simple as assuring the Sheriff and County Attorney that Thomas' successor would be their choice."

h. "The personal 'incentive' to align myself with the Sheriff's and County Attorney's wishes was an effort to extort the Board's acquiescence to their plan to choose a replacement for Andrew Thomas ."

i. ... [T]he "grand jury demanded facts to support the charges, and finding none, not only refused to indict but unequivocally terminated the investigation."

j. "I believe that justice will be done and that these individuals will face indictment, trial,—and if an impartial jury of their peers sees fit, convicted and punished for their crimes."

Plaintiffs further alleged that during a television broadcast, Kunasek supplemented the letter with the following oral statement:

"As far as I'm concerned, it was pure extortion. It was, 'Give us what we want or we're going to ruin your life[.]' "

**\*5** ¶ 17 A defendant is subject to liability for defamation if he, with requisite scienter, [5] publishes a false and defamatory communication concerning the plaintiff to a third party. *Peagler v. Phoenix Newspapers, Inc.,* 114 Ariz. 309, 315, 560 P.2d 1216, 1222 (1977); *Dube v. Likins,* 216 Ariz. 406, 417, ¶ 36, 167 P.3d 93, 104 (App.2007). "To be defamatory, a publication must be false and must bring the defamed person into disrepute, contempt, or ridicule, or must impeach plaintiff's honesty, integrity, virtue, or reputation." *Turner v. Devlin,* 174 Ariz. 201, 203–04, 848 P.2d 286, 288–89 (1993) (citation omitted). The defamed person need not be specifically named, but his identity must be reasonably clear. *Hansen v. Stoll,* 130 Ariz. 454, 458–59, 636 P.2d 1236, 1240–41 (App.1981).

¶ 18 Whether the publication is capable of bearing a defamatory meaning is a question of law for the court to decide. *Yetman v. English,* 168 Ariz. 71, 79, 811 P.2d 323, 331 (1991). In assessing the publication, the court must consider the totality of the circumstances and take the viewpoint of the average reader or listener. *Phoenix Newspapers, Inc. v. Church,* 103 Ariz. 582, 587, 447 P.2d 840, 845 (App.1968). If the court determines that the publication is capable of defamatory meaning, it may either find as a matter of law that such meaning was actually conveyed or, if the question is one which reasonable people might differ, submit the matter to the finder of fact. *Yetman,* 168 Ariz. at 79, 811 P.2d at 331. But if the court determines that the publication is incapable of defamatory meaning, the claim is subject to dismissal. *Id.; see Reynolds v. Reynolds,* 231 Ariz. 313, 317–18, ¶¶ 9–12, 294 P.3d 151, 155–56 (App.2013).

¶ 19 A publication is not actionable if it is comprised of "loose, figurative, or hyperbolic language" that cannot reasonably be interpreted as stating or implying facts "susceptible of being proved true or false." *Milkovich v. Lorain Journal Co.,* 497 U.S. 1, 21 (1990). The crucial inquiry is whether the finder of fact could employ an

objective criteria to determine the statement's truth or falsity. *Id.* at 22; *Turner,* 174 Ariz. at 207, 848 P.2d at 292. This limitation "provides assurance that public debate will not suffer for lack of 'imaginative expression' or the 'rhetorical hyperbole' which has traditionally added much to the discourse of our Nation." *Milkovich,* 497 U.S. at 19. "[V]igorous epithet[s]," *Greenbelt Cooperative Pub. Ass'n v. Bresler,* 398 U.S. 6, 14 (1970), personal characterizations of manner, *Turner,* 174 Ariz. at 207–08, 848 P.2d at 292–93, and "rhetorical political invective [or] opinion," *Burns v. Davis,* 196 Ariz. 155, 165, ¶ 39, 993 P.2d 1119, 1129 (App.1999), therefore are not actionable. The proposed second amended complaint did not allege that any specific objectively verifiable statement was false.

¶ 20 Here, Kunasek's statements identified and generally disparaged Plaintiffs in connection with their legal and political disputes—indeed, the entire body of statements was aimed at convincing the public that Aubuchon had misused her power as a prosecutor to political ends.[6] The disparaging portions of the statements did not, however, assert or imply statements of fact capable of being proved true or false. Kunasek's description of Plaintiffs as "demented minds," and his characterization of conduct in which they participated as abusive, criminal, and unsupported name-smearing, could not reasonably be construed as anything more than hyperbolic invective reflecting his view of a disputed issue—issues that raised passions but were incapable of objective verification. The statement on which much of the invective was based—that the grand jury had refused to indict Kunasek and had terminated the investigation—was capable of being proved true or false. But nothing about that statement was either false or defamatory as a matter of law.

**\*6** ¶ 21 Likewise, Kunasek's statements that he believed Aubuchon had tried to extort him by threatening to ruin his life, and that she would be indicted and possibly found guilty, were incapable of being proved true or false. Kunasek's characterization of Aubuchon's behavior as extortive was a personal assessment of her manner and a characterization of his own reaction to the prospect of criminal charges that he maintained would have been unwarranted. His reference to the outcome of hypothetical criminal proceedings was nothing more than his prediction about what he believed might happen in the future-he did not state that Aubuchon had actually been charged with any crime.[7] To be sure, his description of some of the events on which his prediction

was based were capable of being proved true or false. But these factual representations were offered as background for Kunasek's political rhetoric, and were not themselves defamatory.

¶ 22 We conclude that Kunasek's statements were not actionable as a matter of law, and that the superior court correctly determined that the defamation claims related to him were futile.[8]

### 2. The Statements Attributed to Smith and S. Wilson Were Not Sufficiently Alleged.

¶ 23 Plaintiffs alleged that Smith provided "information ... [that] was defamatory" to the Arizona Peace Officer Standards and Training Board, that Smith "threatened Hendershott during a budget meeting," and that Smith and his subordinates (a group that included S. Wilson) made disparaging public comments.

¶ 24 Plaintiffs made no attempt to identify or even describe the content of the statements made to the Board or the threat made at the budget meeting. Nor did they identify the language used in the public comments. They instead generally characterized the comments as statements that: "berat[ed] Chief Hendershott and his performance to put him in a false light and disparage him and his family and accuse him of a crime"; accused Hendershott of having "committed crimes"; accused Hendershott of being "unethical and dangerous a criminal and lost his mental stability [sic]"; "falsely stated Hendershott had ordered the seizure of court computers, records and emails and that he had ordered deputies to take the items at gunpoint"; and described efforts to prepare testimony against Hendershott "for 'abuse of power.' "

¶ 25 Under Rule 8, a pleading must give the opposing party fair notice of the nature and basis of the claim by setting forth a short and plain statement that demonstrates entitlement to relief. *Cullen,* 218 Ariz. at 419, ¶ 6, 189 P.3d at 346. And though the court must take as true all well-pled factual allegations and reasonable inferences, *id.* at ¶ 7, it may not speculate about hypothetical facts, *id.* at 420, ¶ 14, 189 P.3d at 347. The context and language of an allegedly defamatory statement is crucial to the court's analysis of a defamation claim. *See Church,* 103 Ariz. at 587, 447 P.2d at 845. Plaintiffs' vague summations of the allegedly defamatory statements were insufficient to allow either the defendants or the court to conduct a meaningful assessment. Further, based on the summaries, the majority of the statements appear to

have been nothing more than hyperbolic invective. The court's determination of futility therefore was appropriate.

### B. The Proposed Second Amended Complaint's IIED Claims Were Futile.

**\*7**  ¶ 26 Plaintiffs' proposed second amended complaint purported to set forth IIED claims based on a variety of conduct. First, the complaint purported to set forth IIED claims based on Kunasek, Smith, and S. Wilson's allegedly defamatory statements. Next, the complaint purported to set forth IIED claims based on conduct of "defendants" that "include[d but wa]s not limited to": the appointment of Richard Romley as interim County Attorney of the MCAO; Romley's statement at a press conference and other defendants' "tout[ing]" of that statement; "[f]eeding false information to the media relating to investigations into Plaintiffs"; and Aubuchon's "demotion" and "termination" from her position as an employee of the MCAO.

¶ 27 A defendant is subject to liability for IIED if he engages in "extreme and outrageous" conduct, he intends the conduct to cause emotional distress or recklessly disregards the near certainty that the conduct will cause emotional distress, and the conduct does in fact cause the plaintiff to suffer severe emotional distress. *Watts v. Golden Age Nursing Home,* 127 Ariz. 255, 257, 619 P.2d 1032, 1035 (1980). Whether conduct is capable of being found "extreme and outrageous" is a question for the court to decide in the first instance.

*Cluff v. Farmers Ins. Exch.,* 10 Ariz.App. 560, 562, 460 P.2d 666, 668 (1969), *overruled on other grounds by* *Godbehere v. Phoenix Newspapers, Inc.,* 162 Ariz. 335, 783 P.2d 781 (1989). This inquiry requires a case-by-case analysis. *Midas Muffler Shop v. Ellison,* 133 Ariz. 194, 197, 650 P.2d 496, 499 (App.1982). If the court determines that the conduct is not, as a matter of law, "extreme and outrageous," judgment must be entered for the defendant. *See, e.g.,* *Watts,* 127 Ariz. at 258, 619 P.2d at 1035.

¶ 28 "Extreme and outrageous" conduct is conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Cluff,* 10 Ariz.App. at 562, 460 P.2d at 668 (quoting Restatement (Second) of Torts (hereinafter "Restatement") § 46 cmt. d (1965)). Conduct qualifies as "extreme and outrageous" only if it "completely violate[s] human dignity ...

[and] strike[s] to the very core of one's being, threatening to shatter the frame upon which one's emotional fabric is hung." *Pankratz v. Willis,* 155 Ariz. 8, 15, 744 P.2d 1182, 1189 (App.1987) (citation omitted). This category of conduct is that which "falls at the very extreme edge of the spectrum of possible conduct." *Watts,* 127 Ariz. at 258, 619 P.2d at 1035. It does not include "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Duhammel v. Star,* 133 Ariz. 558, 561, 653 P.2d 15, 18 (App.1982) (quoting Restatement § 46 cmt. d), *overruled on other grounds by* *Godbehere,* 162 Ariz. 335, 783 P.2d 781. Further, harsh or unfair conduct that falls within the realm of acceptable business practices is not "extreme and outrageous." *Patton v. First Fed. Savs. & Loan Ass'n of Phoenix,* 118 Ariz. 473, 476, 578 P.2d 152, 155 (1978); *see also* *Nelson v. Phoenix Resort Cory.,* 181 Ariz. 188, 199, 888 P.2d 1375, 1386 (App.1994).

**\*8**  ¶ 29 Accordingly, it is "extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery." *Mintz v. Bell Atlantic Sys. Leasing Int'l,* 183 Ariz. 550, 554, 905 P.2d 559, 563 (App.1995) (citation omitted). In *Mintz,* for example, we held that an employer's failure to promote an employee did not provide grounds for an IIED claim even though the conduct was motivated by sexual discrimination or retaliation. *Id. See also* *Wallace v. Casa Grande Union High School District No. 82 Board of Governors,* 184 Ariz. 419, 423–24, 428, 909 P.2d 486, 490–91, 495 (App.1995) (affirming summary judgment for employer on IIED claim based on employee's reassignment and demotion by supervisor with whom she had conflicts); *but see* *Ford v. Revlon,* 153 Ariz. 38, 43, 734 P.2d 580, 585 (1987) (affirming jury verdict for employee on IIED claim based on employer's prolonged failure to address employee's claims of sexual harassment by supervisor).

¶ 30 Plaintiffs' allegations could not support a finding of "extreme and outrageous" conduct. At most, the comments attributed to Kunasek, Smith, and S. Wilson (as described above) constituted hyperbolic rhetoric. Similarly, the statement attributed to Romley—that "he falsely told the public ... that the grand jury [convened to consider charges levied against those whom Plaintiffs had investigated] had found no evidence"—was, at most, an indirect expression

of criticism. And even a generous construction of Plaintiffs' allegations that "defendants" made "false public comments" designed to "make it appear Hendershott was crazy and that Aubuchon and Hendershott were incompetent and evil" merely reveals pejorative commentary. As a matter of law, such criticisms do not meet the standard of "extreme and outrageous" conduct required for recovery under an IIED claim. Further, Plaintiffs' allegations that Romley was appointed for the purpose of firing Aubuchon, and that he unfairly conducted her termination proceedings, do not describe "extreme and outrageous" conduct. Even unjustified termination of employment cannot, without more, support an IIED claim. *See Mintz,* 183 Ariz. at 554, 905 P .2d at 563. The superior court properly deemed the IIED claims futile.

C. The Proposed Second Amended Complaint's Constructive Fraud Claim Was Futile.

¶ 31 Plaintiffs' proposed second amended complaint purported to set forth a constructive fraud claim. Plaintiffs alleged that they were owed a legal or equitable duty by virtue of their employment as county employees, and that the duty was breached by "all of the facts" alleged.

¶ 32 Constructive fraud requires the "breach of a legal or equitable duty which, without regard to moral guilt or intent of the person charged, the law declares fraudulent because the breach tends to deceive others, violates public or private confidences, or injures public interests." *Lasley v. Helms,* 179 Ariz. 589, 591, 880 P.2d 1135, 1137 (App.1994). Though the defendant need not have acted with intent to deceive, the duty breached must be based on a fiduciary or confidential relationship that induced justifiable and detrimental reliance by the claimant. *Dawson v. Withycombe,* 216 Ariz. 84, 107, ¶ 72, 163 P.3d 1034, 1057 (App.2007).

*9 ¶ 33 Under Rule 8, all claims must be supported with well-pled facts; conclusory statements are insufficient. *Cullen,* 218 Ariz. at 419, ¶¶ 6–7, 189 P.3d at 346. Moreover, under Rule 9(b), all claims of fraud, including constructive fraud, must be pled with particularity. *Green v. Lisa Frank, Inc.,* 221 Ariz. 138, 155–56, ¶¶ 53–54, 211 P.3d 16, 33–34 (App.2009). "Magic language" is not required, but bare allegations of fraud are insufficient. *Hall v. Romero,* 141 Ariz. 120, 124, 685 P.2d 757, 761 (App.1984). Here, Plaintiffs' claim fell far short of those pleading standards. Plaintiffs failed to allege any facts that would support a

finding of a fiduciary or confidential relationship that induced their detrimental reliance. Their conclusory allegation that a duty was owed based on their employment was insufficient. Further, their general allegation that "all of the facts" demonstrated a breach of duty was precisely the opposite of what Rule 9(b) required. Accordingly, the superior court properly determined that the constructive fraud claim was futile.

D. The Proposed Second Amended Complaint's Constitutional Claims Were Futile.

¶ 34 Plaintiffs' proposed second amended complaint purported to set forth a claim for violation of constitutional rights, presumably under 42 U.S.C. § 1983. Plaintiffs alleged that they were entitled to due process and equal protection, and that "all of the Defendants," acting under color of law, deprived them of these rights through their "acts and omissions." These vague and conclusory allegations were insufficient under Rule 8, and the superior court correctly deemed the claim futile.

E. Certain of the Proposed Second Amended Complaint's ContractRelated Claims Were Sufficiently Alleged.

¶ 35 Plaintiffs' proposed second amended complaint purported to set forth several claims related to Aubuchon's employment contract: breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, and intentional interference with contractual relations. We hold that the breach claims were not, at least in theory, futile.

1. The Proposed Second Amended Complaint Sufficiently Alleged Claims Against the County for Breach of Contract and Breach of the Covenant of Good Faith and Fair Dealing.

¶ 36 Plaintiffs' proposed second amended complaint set forth claims for breach of Aubuchon's employment contract and the covenant of good faith and fair dealing implied in the contract. Plaintiffs alleged that Aubuchon worked as a County employee for the MCAO and that her employment contract provided for "payment of attorneys' fees to defend against any bar complaints made against her for her actions while she was employed as a deputy county attorney." Plaintiffs further alleged that this contractual duty was breached when MCAO officials and employees Romley, Montgomery, and Ahler failed to provide or pay for an attorney to represent her in disciplinary proceedings before the State Bar of Arizona,

and that she was damaged in the amount of the costs and fees incurred for these proceedings. [9]

**\*10** ¶ 37 A breach of contract claim requires the existence of a contract, breach of the contract, and resulting damages. *Chartone, Inc. v. Bernini,* 207 Ariz. 162, 170, ¶ 30, 83 P.3d 1103, 1111 (App.2004). An employment relationship is contractual in nature. A.R.S. § 23–1501(A)(1). The law implies a covenant of good faith and fair dealing in all contracts. *Rawlings v. Apodaca,* 151 Ariz. 149, 153, 726 P.2d 565, 569 (1986). The covenant is breached when a party "exercise[s] express discretion in a way inconsistent with a party's reasonable expectations ... [or] act[s] in ways not expressly excluded by the contract's terms but which nevertheless bear adversely on the party's reasonably expected benefits of the bargain." *Bike Fashion Corp. v. Kramer,* 202 Ariz. 420, 424, ¶ 14, 46 P.3d 431, 435 (App.2002).

¶ 38 The proposed second amended complaint alleged sufficient facts to support all of the elements of a claim for breach of contract, and of a claim for breach of the covenant of good faith and fair dealing. We reject the County's contention that it was not included in the breach claims. Though the allegations referred to actions taken by individual County officials and employees and though the claims were titled with a parenthetical identifying these individuals, the proposed second amended complaint made clear that liability was sought only against the County. At the outset of the proposed pleading, Plaintiffs alleged that the acts and omissions of individual defendants "were taken under the guise of their elected office, or employment as public employees ... in their official capacity," except when they acted "outside the scope of their employment or elected office ... or in excess of their official capacity." Plaintiffs further alleged that "[a]ll of these actions by the Defendants described in this Complaint constitute actions of Maricopa County; therefore, Maricopa County is vicariously and directly liable for their wrongful conduct, as alleged herein." None of the allegations underlying the breach claims stated that the individual County employees and officials acted outside of the scope of their County employment. The proposed second amended complaint therefore gave the County fair notice that those claims were directed at it, and not at the actors personally.

¶ 39 We hold that the allegations were sufficient to state claims against the County for breach of contract and the

implied covenant of good faith and fair dealing. We express no opinion concerning the defenses available to these claims, nor do we imply that the claims are viable as a matter of fact. The record does not reveal the terms of Aubuchon's contract of employment, but the proposed second amended complaint alleges the existence of a term which, if breached, could give rise to an action for damages.

¶ 40 We reverse the superior court's determination that the proposed second amended complaint's breach of contract claims against the County were futile, and remand for proceedings consistent with this decision. We hold, however, that Plaintiffs' request for punitive damages is barred by A.R.S. § 12–820.04.

### 2. The Court Properly Determined That the Unjust Enrichment Claims Were Futile.

**\*11** ¶ 41 An unjust enrichment claim requires "(1) an enrichment; (2) an impoverishment; (3) a connection between the enrichment and the impoverishment; (4) the absence of justification for the enrichment and the impoverishment; and (5) the absence of a legal remedy." *Trustmark Ins. Co. v. Bank One, Ariz.,* 202 Ariz. 535, 541, ¶ 31, 48 P.3d 485, 491 (App.2002). Plaintiffs alleged that the County was enriched and that Aubuchon was damaged as a result of the County's failure to pay for her attorney's fees in the disciplinary proceedings, and that this result was unjustified based on her reasonable expectations regarding promises made to her. At bottom, this claim depends on the same facts as the breach of contract claim. Assuming that Plaintiffs are able to establish those facts, there would by definition be an adequate legal remedy—the remedy for breach of contract. The only reasons for which the breach of contract claim could fail would also cause the unjust enrichment claim to fail. Because there are no circumstances in which the unjust enrichment claim could exist independent of the contract claim, we conclude that the unjust enrichment claim was futile.

### 3. The Proposed Second Amended Complaint's Claim for Intentional Interference with Contractual Relations Was Futile.

¶ 42 Plaintiffs' proposed second amended complaint claimed "tortious interference of contract," "inducing breach of contract," and "interference with contractual relations" related to Aubuchon's employment contract. Construing the complaint liberally, as we must, we treat these allegations as an assertion of a claim for intentional interference with

contractual relations. This tort requires "the existence of a valid contractual relationship or business expectancy; the interferer's knowledge of the relationship or expectancy; intentional interference inducing or causing a breach or termination of the relationship or expectancy; ... resultant damage to the party whose relationship or expectancy has been disrupted ... [and] 'improper ... motive or means.' " *Wallace,* 184 Ariz. at 427, 909 P.2d at 494. The interferer must be a third party to the contractual relationship or business expectancy. *Ulan v. Vend–a–Coin, Inc.,* 27 Ariz.App. 713, 717, 558 P.2d 741, 745 (1976). A claim for intentional interference with a plaintiff's employment contract therefore cannot be based on the actions of a fellow employee or supervisor acting within the scope of his or her employment. *See Barrow v. Ariz. Bd. of Regents,* 158 Ariz. 71, 78, 761 P.2d 145, 152 (App.1988); *Mintz,* 183 Ariz. at 555–56, 905 P.2d at 564–65.

¶ 43 As we explained above, Plaintiffs' second amended complaint alleged that the County was vicariously liable for conduct taken by individual defendants within the scope of their employment, and Plaintiffs did not allege that the breach of Aubuchon's employment contract was caused by actions taken outside of the scope of employment. On this ground alone, Plaintiffs failed to state a claim for intentional interference with contractual relations. The superior court correctly concluded that the claim was futile. [10]

## II. SANCTIONS

**\*12** ¶ 44 Plaintiffs and their trial counsel, the Moriarity Firm and Moriarity, [11] challenge the superior court's assessment of attorney's fees against them as sanctions under Rule 11 and A.R.S. § 12–349. All of the defendants to whom fees were awarded moved for sanctions under both Rule 11 and A.R.S. § 12–349, and some of the County employees and officials also moved under former A.R.S. § 12–341.01(C). With respect to the County and the County officials and employees, the court specifically found that fees were warranted under both Rule 11 and § 12–349. With respect to the Polsinelli defendants, the superior court granted the motion for sanctions based on findings that could support an award under either Rule 11 or § 12–349, directed the defendants to prepare an application for fees "pursuant to A.R.S. § 12–349," and approved the application under "[t]he Rules and statutes." Importantly, the Polsinelli defendants maintained at oral argument that the award in their favor was issued under A.R.S. § 12–349 only.

¶ 45 Both Rule 11 and § 12–349 are designed to discourage wasteful litigation. *Phoenix Newspapers, Inc. v. Dep't of Corrs.,* 188 Ariz. 237, 244, 934 P.2d 801, 808 (App.1997). We review all aspects of an order imposing sanctions under Rule 11 for abuse of discretion. *James, Cooke & Hobson, Inc. v. Lake Havasu Plumbing & Fire Protection,* 177 Ariz. 316, 319, 868 P.2d 329, 332 (App.1993). We review the applicability of § 12–349 de novo but review the superior court's findings (required by § 12–350) for clear error, viewing the facts in the light most favorable to sustaining the award under a preponderance-of-the-evidence standard of proof. *Dep't of Corrs.,* 188 Ariz. at 243–44, 934 P.2d at 807–08.

¶ 46 Rule 11(a) provides:

> The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass or cause unnecessary delay or needless increase in the cost of litigation .... If a pleading, motion or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, including a reasonable attorney's fee.

Under Rule 11(a), the test to determine whether a document is reasonably grounded is one of objective reasonableness— subjective good faith provides no safe harbor. *Wright v.*

*Hills,* 161 Ariz. 583, 589, 780 P.2d 416, 422 (App.1989), *overruled in part on other grounds by* *James,* 177 Ariz. 316, 868 P.2d 329. The objective standard is violated where: "(1) there was no reasonable inquiry into the basis for a pleading or motion; (2) there was no chance of success under existing precedent; and (3) there was no reasonable argument to extend, modify, or reverse the controlling law."

*Smith v. Lucia,* 173 Ariz. 290, 297, 842 P.2d 1303, 1310 (App.1992). The reasonableness of a factual inquiry depends on the totality of the circumstances, which may change as the case progresses. *Boone v. Superior Court (Croddy),* 145 Ariz. 235, 241, 700 P.2d 1335, 1341 (1985); *Wright,* 161 Ariz. at 590, 780 P .2d at 423. With respect to the reasonableness of a legal position, the court's mere rejection of an argument regarding the applicability of precedent does not, in itself, provide grounds for sanctions. *See* *Fritz v. City of Kingman,* 191 Ariz. 432, 435–36, ¶ 22, 957 P.2d 337, 340–41 (1998). But sanctions may be imposed when an argument is plainly contrary to well-established case law or clear statutory language. *Villa de Jardines Ass'n v. Flagstar Bank,* 227 Ariz. 91, 97, ¶¶ 16–19, 253 P.3d 288, 294 (App.2011); *Linder v. Brown & Herrick,* 189 Ariz. 398, 408, 943 P .2d 758, 768 (App.1997).

**\*13** ¶ 47 Section 12–349(A) provides that the court shall assess attorney's fees and expenses, and may assess certain limited damages, against parties and attorneys who "[b]ring[ ] or defend [ ] a claim without substantial justification[,] ... [b]ring[ ] or defend[ ] a claim solely or primarily for delay or harassment[,] ... [or u]nreasonably expand[ ] or delay[ ] the proceeding." At the time relevant to this appeal, § 12–349(F) defined "without substantial justification" as "mean[ing] that the claim or defense is groundless and is not made in good faith." An objective standard is used to determine groundlessness, and a subjective standard is used to determine good faith and whether there was an intent to harass. *Dep't of Corrs.,* 188 Ariz. at 244, 934 P.2d at 808. A claim or defense is groundless when it is contrary to facts that were known or that should have been known, and when it is based on arguments contrary to settled law. *See* *Harris v. Reserve Life Ins. Co.,* 158 Ariz. 380, 383, 762 P.2d 1334, 1337 (App.1998). Sanctions under § 12–349 are not appropriate, however, when a party or attorney's position was unsuccessful but nonetheless fairly debatable. *See City of Casa Grande v. Ariz. Water Co.,* 199 Ariz. 547, 556, ¶ 30, 20 P.3d 590, 599 (App.2001).

¶ 48 Here, the superior court acted well within its discretion when it determined that the appellants had engaged in sanctionable conduct. But because we have concluded that not all of the claims proposed against the County were futile, we defer consideration of the amount of sanctions in favor of the County until the case is resolved on remand. Further, the computation of the sanctions on the basis of attorney's fees was error with respect to the Polsinelli defendants because these defendants, as self-represented parties, were legally ineligible to recover fees. We therefore vacate the award of sanctions to the County without prejudice to their recalculation, and we vacate the award of sanctions to the Polsinelli defendants for recalculation under the "expenses" prong of § 12–349.

### A. The Award of Attorney's Fees to the County Officials and Employees Was Proper, but the Award to the County Was Premature in View of Our Decision on Appeal.

¶ 49 The court awarded attorney's fees to the County, and to the County officials and employees who requested sanctions, under Rule 11 and A.R.S. § 12–349 based on findings that the first amended complaint was "unintelligible"; that "notwithstanding the Court's warnings, Plaintiffs again failed to comply with the Arizona Rules of Civil Procedure when they filed their Motion for Leave to File Second Amended Complaint"; and that the proposed second amended complaint set forth "groundless claims" with "no factual or legal basis." The appellants contend that the imposition of sanctions was error because the first amended complaint was based on a good-faith investigation of the facts and merely "lacked quality in draftsmanship," and because the claims asserted in the proposed second amended complaint were viable. [12]

**\*14** ¶ 50 The court's findings described grounds for the imposition of sanctions under both Rule 11 and § 12–349, and were well-founded. The first amended complaint completely failed to comply with Rule 8, Rule 10, and *Cullen,* 218 Ariz. at 419, ¶¶ 6–7, 189 P.3d at 346. The pleading was not merely an example of substandard draftsmanship-it objectively failed to state any claims upon which relief could be granted. And as we have explained above, all of the proposed claims against the County officials and employees were futile, and most of the proposed claims against the County were futile.

¶ 51 The record therefore supports the court's findings and award of sanctions to the County officials and employees. [13]

But because the award of sanctions to the County was based in part on an erroneous determination of futility, we vacate the award to the County without prejudice to its reimposition at the conclusion of the case. We note that nothing in our decision prevents the superior court from awarding sanctions in the same or different amount. *See Corbett v. Manorcare of Am., Inc.,* 213 Ariz. 618, 630, ¶ 43, 146 P.3d 1027, 1039 (App.2006) ("In view of our reversal of summary judgment ... insufficient evidence supports the award of fees as a Rule 11 sanction. The trial court may, however, revisit the issue of attorney fees when the trial court proceedings have concluded.").

### B. The Award of Sanctions to the Polsinelli Defendants Was Proper, But the Form of the Award Was Not.

#### 1. The Polsinelli Defendants Were Entitled to Receive Sanctions.

¶ 52 The court awarded sanctions to the Polsinelli defendants under § 12–349 based on findings that "[n]o legal or factual basis ever existed to file a Complaint against these defendants" and "the Complaint was filed for vexatious purposes." Again, the appellants contend that the first amended complaint was based on a good-faith investigation of the facts. We conclude that the record amply supported the court's determination that sanctions were warranted.

¶ 53 The first amended complaint's failure to comply even with Arizona's generous pleading standards makes it difficult to discern the nature of the claims intended to be asserted against the Polsinelli defendants. In general, however, the first amended complaint alleged that the Polsinelli defendants had a conflict of interest, unlawfully interfered with Plaintiffs' attempts to examine and disclose that conflict, and retaliated by instituting or encouraging groundless investigations against Plaintiffs. In response to the Polsinelli defendants' initial motion to dismiss, Plaintiffs asserted that their allegations supported two claims: (1) breach of fiduciary duty by the Polsinelli defendants as evidenced by legal malpractice, and (2) defamation by the Polsinelli defendants based on information that they provided to the State Bar of Arizona in connection with its investigation of Aubuchon. Both purported claims are devoid of factual or legal support.

**\*15** ¶ 54 Legal malpractice based on breach of fiduciary duty requires, *inter alia,* an attorney-client relationship and a breach of the attorney's fiduciary duty to the

client. *Cecala v. Newman,* 532 F.Supp.2d 1118, 1135 (D.Ariz.2007). Plaintiffs did not allege any facts suggesting that they shared an attorney-client relationship (or any other kind of fiduciary relationship) with the Polsinelli defendants. In asserting the defamation claim, Plaintiffs ignored the plain language of Ariz. R. Sup.Ct. 48(1), which provides that "[c]ommunications to the ... state bar ... relating to lawyer misconduct, lack of professionalism or disability ... shall be *absolutely privileged* conduct, and *no civil action predicated thereon may be instituted against any complainant or witness.*" (Emphases added.) The appellants' contention that the defamation claim was based on a reasonable argument for the extension of Rule 48(1) is unpersuasive. Though the appellants argue that "whether the rule is constitutional is something that Appellants could claim," they make no attempt to identify grounds on which a constitutional challenge plausibly could be based, and no such grounds appear to us. And their assertion that attorneys who provide false information to the State Bar may face professional discipline is immaterial to a claim for damages.

¶ 55 The superior court did not err by finding that the claims asserted against the Polsinelli defendants were unreasonable. Sanctions were warranted under A.R.S. § 12–349.[14]

#### 2. The Polsinelli Defendants Were Ineligible to Receive Attorney's Fees as Sanctions.

¶ 56 The appellants next contend that the nature of the sanctions imposed-an award of attorney's fees—was inappropriate because the Polsinelli defendants, as self-represented parties, were ineligible to recover fees. This argument was first raised in a motion for reconsideration. We generally do not consider arguments raised for the first time in a motion for reconsideration, in part because in such circumstances the prevailing party is often deprived of the opportunity to respond. *Evans Withycombe, Inc. v. W. Innovations, Inc.,* 215 Ariz. 237, 240, ¶ 15, 159 P.3d 547, 550 (App.2006). Here, however, the court expressly authorized the Polsinelli defendants to file a response to the motion for reconsideration, and they did so. On this record, we find no waiver. We hold that the court erred by awarding sanctions to the Polsinelli defendants in the form of attorney's fees.

¶ 57 Prerequisite to the recovery of attorney's fees is the existence of an attorney-client relationship. *Connor v. Cal–AZ Props., Inc.,* 137 Ariz. 53, 56, 668 P.2d 896, 899 (App.1983). Because "[o]ne who acts only for himself

in legal matters is not considered to be engaged in the practice of law," a self-represented party has no attorney-client relationship and therefore no right to recover fees —even if he or she is an attorney. *Id.* This rule serves to discourage selfrepresented attorneys from strategically protracting litigation to gain unfair advantage. *Id.* It also prevents self-represented attorneys from receiving unjustified windfalls. 🚩 *Lisa v. Strom,* 183 Ariz. 415, 419, 904 P .2d 1239, 1243 (App.1995). To be sure, self-represented attorneys may suffer lost opportunity costs in the form of time that they could have spent representing paying clients. *Id.* But self-represented non-attorneys incur similar lost opportunity costs, and it would be "palpably unjust" to allow one category of self-represented litigants to recover for such costs based solely on the nature of their profession. *Id.* Fees may be recovered only if there is an attorney-client relationship and a genuine financial obligation to pay for the legal services. 🚩 *Id.* at 419–20, 904 P.2d at 1243–44; *see also Moedt v. Gen. Motors Corp.,* 204 Ariz. 100, 103, ¶ 11, 60 P.3d 240, 243 (App.2003).

**\*16** **¶ 58** The Polsinelli defendants—a law firm and two of its attorneys—contend that they were nonetheless eligible to recover attorney's fees because they had "intertwined defenses," "the sanctions awarded will go to Polsinelli, not the individual attorneys," [15] and there is "no authority ... that precludes a court from awarding sanctions measured by attorney's fees to a law firm ... that used its employee-attorneys as in-house counsel to defend itself and its employees in litigation." They argue that they were entitled to recover fees because they were "incurring fees by virtue of paying in-house counsel salaries."

**¶ 59** The Polsinelli defendants rely primarily on *Hunt Investment Co. v. Eliot,* 154 Ariz. 357, 742 P.2d 858 (App.1987). In *Hunt,* a general partnership was represented in litigation by an attorney who was one of the partnership's general partners. 154 Ariz. at 359, 742 P.2d at 860. The partnership's other general partner was a trust for which the attorney was trustee as well as one of several beneficiaries. *Id.* We affirmed an award of attorney's fees to the partnership, holding that the partnership could not represent itself and that the attorney did not represent *only* himself in the litigation because he acted for the benefit of the trust's other beneficiaries as well as for his own benefit. *Id.* at 362–63, 742 P.2d at 863–64. The Polsinelli defendants contend that "[l]ike the partnership in *Hunt,* the Polsinelli law firm

has interests beyond those of its individual shareholders and it cannot appear *pro per.*" But unlike the partnership in *Hunt,* the Polsinelli firm *could* represent itself. *Munger Chadwick, P.L.C. v. Farwest Dev. & Constr. of the Sw., LLC,* 235 Ariz. 125, 127, ¶ 7, 329 P.3d 229, 231 (App.2014). And there is "no logical reason to draw any distinction between a law firm that represents itself and a sole practitioner that does so." *Id.* at 128, ¶ 10, 329 P.3d at 232. The mere fact that a law firm's self-representation requires its members or employees to devote time to the representation does not justify an award of fees.

*See id.* at ¶ 11; 🚩 *Lisa,* 183 Ariz. at 420, 904 P.2d at 1244. The policies underlying the rule disallowing fees for self-represented attorneys who incur no financial obligation are equally applicable when a law firm "hires" its own attorneys. *Munger,* 235 Ariz. at 128, ¶ 12, 329 P.3d at 232.

**¶ 60** The Polsinelli defendants also rely on *Farmers Ins. Exchange v. Law Offices of Conrado Joe Sayas, Jr.,* 250 F.3d 1234 (9th Cir.2001). In concluding that fees were recoverable by two law firms that represented each other in a collection action against a former client, *Farmers* cited California cases holding that when an attorney was represented by other members of his law firm, and when a corporation was represented by its in-house counsel, attorney's fees were warranted because expenses were incurred in the form of salaries paid. *Id.* at 1238–39. We are not bound by *Farmers* or the cases it cites. Moreover, we do not find those cases persuasive. In *Lisa,* we explained that an attorney-litigant was not entitled to recover attorney's fees for work performed by his firm's employees because he paid the employees a salary regardless of what matters they worked on, and therefore did not incur a specific obligation to pay fees for the work done on his behalf. 🚩 183 Ariz. at 420, 904 P.2d at 1244. *See also Munger,* 235 Ariz. at 128, ¶ 11, 329 P.3d at 232 (holding that law firm members' work in representing law firm "in their spare time" did not provide grounds for attorney's fees award).

**\*17** **¶ 61** Under Arizona law, the Polsinelli defendants were not eligible for an award of attorney's fees. The imposition of sanctions in the form of attorney's fees therefore was error, and we must vacate the fee-based portion of the award. [16] But because sanctions were warranted, *see supra* Section II.B.1, and because A.R.S. § 12–349 does not limit sanctions to attorney's fees awards, we remand so that the court may impose a proper sanction. Under § 12–349(A) the court may award "double damages of not to exceed five thousand dollars," in addition to "reasonable ... expenses."

The calculation of such an award may naturally bear some relation to the amount of legal work that the Polsinelli defendants were reasonably required to undertake as a result of the sanctionable conduct. *See Taliaferro v. Taliaferro,* 188 Ariz. 333, 341, 935 P .2d 911, 919 (App.1996) ("As a general rule, the sanction for a Rule 11 violation should bear some relationship to the expenses directly caused by the sanctionable conduct."). In this sense, the application for attorney's fees may be relevant to the inquiry. We caution, however, that an analysis related to fees should focus on the *expenses* actually incurred, and that such detriment will naturally be less than the market rates reflected in the fee application. The Polsinelli defendants are entitled to a compensatory sanction that does not include the profit that its billing rates include.

### CONCLUSION

¶ 62 For the reasons set forth above, we reverse the superior court's determination that Plaintiffs' proposed second amended complaint failed to sufficiently plead claims for breach of contract and breach of the covenant of good faith and fair dealing, and we remand for further proceedings. We vacate the court's award of sanctions to the County and vacate and remand its award of sanctions to the Polsinelli defendants. We otherwise affirm.

¶ 63 All of the appellees request awards of attorney's fees on appeal. The County, Montgomery, and the Polsinelli defendants request fees under Rule 11 and A.R.S. § 12–349, and the remaining County officials and employees request fees under Rule 11, § 12–349, and ARCAP 25. Rule 11 does not provide grounds for an award of fees on appeal. *Villa de Jardines,* 227 Ariz. at 99 n. 10, ¶ 26, 253 P.3d at 296 n. 10. In our discretion, we decline to award fees under § 12–349 and ARCAP 25.

### All Citations

Not Reported in P.3d, 2015 WL 2383820

### Footnotes

1    In 2013, the Supreme Court ordered Aubuchon disbarred, holding that she had "failed to fulfill her responsibilities as a prosecutor, abused the public trust, and misused the justice system." *In re Aubuchon,* 233 Ariz. 62, 63, 309 P.3d 886, 887 (2013).

2    The court later entered Rule 54(b) judgments awarding costs to Baker and approximately $10,000 in attorney's fees to the State and the State officials. No appeal was taken from these judgments. Further, no appeal was taken from the earlier-signed order dismissing Faull from the case, which order became appealable upon the entry of the judgment for the State and the State officials. *See Hill v. City of Phoenix,* 193 Ariz. 570, 573, ¶ 15, 975 P.2d 700, 703 (1999) ("[A]ll judgments become effective upon entry of the one last in time which disposes of the last claim."). Faull nonetheless asks us to affirm the judgment in his favor.

    We have no jurisdiction to do so. *See Lee v. Lee,* 133 Ariz. 118, 124, 649 P .2d 997, 1003 (App.1982) ("The court of appeals acquires no jurisdiction to review matters not contained in the notice of appeal ."). We note, however, that Plaintiffs' opportunity to appeal that judgment has long since expired under ARCAP 9.

3    Plaintiffs do not challenge the determination of futility with respect to the proposed second amended complaint's claims for abuse of process and tortious aiding and abetting. Accordingly, Plaintiffs have waived any argument regarding the denial of amendment with respect to these claims. *Schabel v. Deer Valley Unified Sch. Dist. No. 97,* 186 Ariz. 161, 167, 920 P.2d 41, 47 (App.1996).

4    Though Plaintiffs styled the count regarding Smith and S. Wilson as a claim for IIED, the allegations set forth in the count were directed not toward the elements of IIED but toward the elements of defamation. The allegations were later incorporated by reference into a count charging "all defendants" with IIED. Plaintiffs' IIED claims are discussed in Section I.B, *infra.*

5    If the communication concerns a public official or public figure, the plaintiff must prove that the defendant acted with "actual malice"—knowledge of the statement's falsity or conscious disregard for the truth. *Dombey v. Phoenix Newspapers, Inc.,* 150 Ariz. 476, 486, 724 P.2d 562, 572 (1986). If the plaintiff is a private person, the defendant must have acted at least negligently in failing to ascertain the truth of his statements for liability to attach. *Peagler v. Phoenix Newspapers, Inc.,* 114 Ariz. 309, 315, 560 P.2d 1216, 1222 (1977).

6    Though Plaintiffs alleged that they are not public figures, there can be no doubt that they were public officials.

7    By way of analogy, a speaker who expresses his view that a President of the United States should be, and will be, impeached, removed from office and criminally tried does not commit actionable defamation.

8    Though it did not plead false light invasion of privacy as a separate cause of action, the proposed second amended complaint alleged that Kunasek had attempted to portray Plaintiffs in a false light. Public officials may not bring such a cause of action. *Godbehere v. Phoenix Newspapers, Inc.,* 162 Ariz. 335, 783 P.2d 781 (1989).

9    The proposed second amended complaint also alleged breach based on the termination of Aubuchon's employment. But Plaintiffs have expressly abandoned that theory on appeal, stating: "This case is not about the employment merit proceedings. It is about the failure to provide counsel [Aubuchon] had already been given, that every deputy county [attorney] is told is a part of their position as a public official, and how the Appellees refused to provide her counsel while providing all other prosecutors representation."

10    In denying Plaintiffs' motion to file the proposed second amended complaint, the court found not only that the claims were futile but also that the motion accompanying the proposed pleading failed to comply with Rule 7.1. Rule 7.1 gives the court discretion to summarily dispose of motions that, like Plaintiffs', are unsupported by a memorandum of law. Ariz. R. Civ. P. 7.1(a)-(b); *see Ursel v. Pizzo,* 126 Ariz. 316, 318, 614 P.2d 858, 860 (App.1980) (applying predecessor rule to Rule 7.1). But reading the superior court's order as a whole, we do not believe that the court held that the denial of the motion to amend would be warranted based on Rule 7.1 alone. Though Plaintiffs' motion did not include the memorandum required by Rule 7.1(a), the motion was filed at the court's invitation after the parties had fully briefed the deficiencies in the first amended complaint. Accordingly, the parties and the court were well aware of the circumstances of the motion despite Plaintiffs' failure to provide the required memorandum regarding its legal grounds.

11    Though not parties to the proceedings in the superior court, the Moriarity Firm and Moriarity have standing to appeal the imposition of sanctions against them. *Wieman v. Roysden,* 166 Ariz. 281, 284, 802 P.2d 432, 435 (App.1990).

12    The appellants also contend that the superior court erred by denying their request for an evidentiary hearing. Nothing in Rule 11 or § 12–349 provides for a hearing.

13    The appellants do not challenge the amount of these sanctions.

14    We reject the appellants' suggestion that the court was estopped from imposing sanctions based on its remarks at the oral argument on the motions to dismiss the first amended complaint. The appellants cite the court's statement that "sanctions can attach to any *further* action" (emphasis added) and point out that the proposed second amended complaint did not assert any claims against the Polsinelli defendants. The appellants' reliance on these facts is misplaced. The court said nothing that limited its ability to impose sanctions based on the first amended complaint, and the proposed second amended complaint's exclusion of the Polsinelli defendants did not end their interest in the litigation.

15    The judgment actually awarded fees to the law firm *and* to the individual attorneys.

16    A small portion of the sanctions award was based on costs. Recovery of costs is authorized under A.R.S. § 12–349. The appellants do not argue that the Polsinelli defendants were ineligible to recover costs, and we see no reason to deem the award of costs inappropriate.

---

**End of Document**          © 2020 Thomson Reuters. No claim to original U.S. Government Works.

**From:**        GORDON LEWIS
**To:**          Jennifer Bernardo
**Subject:**     FW: E-Filing Status: Form Set # 5295288 Delivered
**Date:**        Monday, January 4, 2021 4:36:55 PM

---

**From:** TurboCourt Customer Service
**Sent:** Monday, January 4, 2021 4:36:50 PM (UTC-07:00) Arizona
**To:** GORDON LEWIS
**Subject:** E-Filing Status: Form Set # 5295288 Delivered

PLEASE DO NOT REPLY TO THIS EMAIL.

AZTurboCourt Form Set # 5295288 has been DELIVERED to Coconino County - Superior Court.

You will be notified when your documents have been processed by the court.

You MUST log in and check your filing status online at http://turbocourt.com/.

Here are your filing details:
Case Number: S0300CV202000504 (Note: If this filing is for case initiation, you will receive a separate notification when the case # is assigned.)

Case Title: SANDRA MATLOCK PLAINTIFF vs CITY OF FLAGSTAFF, A MUNICIPAL CORPORATION et al. DEFENDANT

Filed By: Gordon Lewis

AZTurboCourt Form Set: #5295288
AOC Submission ID #1355193

Keyword/Matter #: 16799-00044
Delivery Date and Time: Jan 04, 2021 4:36 PM MST

Forms:
Summary Sheet (This summary sheet will not be filed with the court. This sheet is for your personal records only.)


Attached Documents:
Notice: Of Filing: Notice of Filing Exhibit A to Richard and Amanda Tadder's Reply In Support of Motion to Dismiss
Exhibit/Attachment (Supporting): Exhibit A to Richard and Amanda Tadder's Reply In Support of Motion to Dismiss

Fees Paid:

Total Filing Fees: $0.00
Provider Fee: $6.50

E-Payment Fee: $0.20
Total Amount Paid: $6.70

You MUST log in and check your filing status and the e-service status of this form set online at http://turbocourt.com/.
If you have questions about your filing, please contact AOC Support Services, phone number 602-452-3519 or 1-800-720-7743, or e-mail pasupport@courts.az.gov.
Please have your AZTurboCourt Form Set # and AOC Submission ID available.

FILED
Valerie Wyant
CLERK, SUPERIOR COURT
02/16/2021 10:33AM
BY: JDUTTON
DEPUTY

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Cheri L. McCracken, State Bar No. 006111
Attorney at Law
2402 North 24th Street
Phoenix, AZ 85008-1804
Phone: 602.231.0595
FAX: 602.231.0841
cherimccracken@gmail.com

Christopher R. Houk, State Bar No. 020843
**HOUK LAW FIRM, PLLC**
1050 East Southern Avenue, Suite A-3
Tempe, AZ 85282
Telephone: 480.569.2377
Facsimile: 480.569.2379
chouk@houklawfirm.com

*Attorneys for Sandra (Corder) Matlock*

Please send all documents to:
jmontanez@houklawfirm.com

**HOUK LAW FIRM, PLLC**
1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282
Telephone: 480.569.2377 - Fax: 480.569.2379

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

## IN AND FOR THE COUNTY OF COCONINO

| | |
|---|---|
| Sandra (Corder) Matlock, | Case No.  CV202000504 |
| Plaintiff, | **NOTICE OF ERRATA** |
| vs. | |
| City of Flagstaff, a municipal corporation, Richard Tadder and Amanda Tadder, wife and husband, | |
| Defendants. | |

Plaintiff Sandra (Corder) Matlock files this Notice of Errata replacing the Exhibit B (Proposed First Amended Complaint) to her Motion for Leave to File the First Amended Complaint with the attached Exhibit B. Undersigned counsel inadvertently submitted an incorrect version of the Proposed First Amended Complaint attached to her Motion.

Page 1 of 2

1

2      **DATED** this 16th day of February 2021.

3

4                                              HOUK LAW FIRM, PLLC

5                                         By:    /s/ Christopher R. Houk
6                                                Christopher R. Houk
                                                 *Attorneys for Sandra Matlock*
7

8    The foregoing was e-filed
9    with the Court this 16th day
     of February 2021
10   and a copy emailed to:

11   Gordon Lewis
12   **JONES, SKELTON & HOCHULI, P.L.C.**
     40 North Central Avenue, Suite 2700
13   Phoenix, Arizona 85004
     *Attorneys for Defendants*
14

15   /s/Christopher R. Houk
     Christopher R. Houk
16

17

18

19

20

21

22

23

24

25

26

27

28

FILED
Valerie Wyant
CLERK, SUPERIOR COURT
04/30/2021 11:27AM
BY: JDUTTON
DEPUTY

1  Cheri L. McCracken, State Bar No. 006111
2  Attorney at Law
   2402 North 24th Street
3  Phoenix, AZ 85008-1804
   Phone: 602.231.0595
4  FAX: 602.231.0841
   cherimccracken@gmail.com
5
   Christopher R. Houk, State Bar No. 020843
6  **HOUK LAW FIRM, PLLC**
   1050 East Southern Avenue, Suite A-3
7  Tempe, AZ 85282
   Telephone: 480.569.2377
8  Facsimile:  480.569.2379
   chouk@houklawfirm.com
9
10 *Attorneys for Sandra (Corder) Matlock*

11 Please send all documents to:
   jmontanez@houklawfirm.com
12
13
14    **IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**
15         **IN AND FOR THE COUNTY OF COCONINO**

16 Sandra (Corder) Matlock,
17         Plaintiff,                    Case No.  CV202000504
18 vs.                                    **NOTICE OF FILING FIRST
                                          AMENDED COMPLAINT WITH
19 City of Flagstaff, a municipal corporation,   THE WRITTEN CONSENT OF
   Richard Tadder and Amanda Tadder, wife and   ALL OPPOSING PARTIES**
20 husband,
21         Defendants.
22
23     Plaintiff Sandra (Corder) Matlock gives notice of filing First Amended Civil Complaint
24 "with the written consent of all opposing parties" pursuant to Arizona Rule of Civil Procedure
25 15(a)(2).  *See* Exhibit A. On March 30, 2021, the Equal Employment Opportunity Commission
26 issued its Notice of Right to Sue allowing her to add Title VII claims, within 90 days of receipt
27
28

HOUK LAW FIRM, PLLC
1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282
Telephone: 480.569.2377 - Fax:  480.569.2379

1   of the Notice.  The First Amended Complaint with strike-through text is attached as Exhibit B,

2   to which the Notice of the Right to Sue is attached.

3           Respectfully Submitted this 39th day of April, 2021.

4

5                           */s/ Christopher R. Houk*
                            Christopher R. Houk
6                           HOUK LAW FIRM, PLLC
                            1050 E. Southern Avenue, Ste. A-3
7                           Tempe, Arizona 85282
                            *Attorney for Plaintiff*
8

9

10  I hereby certify that the original of the
    foregoing was electronically filed using
11  AZ Turbo Court to the Clerk of the Court
    and a copy sent via email
12  this 30th day of April, 2021 to:

13  Gordon Lewis
14  JONES, SKELTON & HOCHULI, P.L.C.
    40 N. Central Avenue, Ste. 2700
15  Phoenix, Arizona 85004
    GLewis@jshfirm.com
16  *Attorneys for Defendants*

17  Cheri L. McCracken
18  2402 North 24th Street
    Phoenix, AZ 85008-1804
19  cherimccracken@gmail.com
    *Attorney for Plaintiffs*
20

21  */s/ James Montanez*
    James Montanez
22

23

24

25

26

27

28

HOUK LAW FIRM, PLLC
1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282
Telephone: 480.569.2377 - Fax:  480.569.2379

Exhibit A

| | |
|---|---|
| **From:** | GORDON LEWIS |
| **To:** | Chris Houk |
| **Cc:** | Ian Beck; Cheri L L. McCracken (cherimccracken@gmail.com); Marina Kovačević; James Montanez |
| **Subject:** | RE: Corder |
| **Date:** | Thursday, April 29, 2021 10:25:09 AM |
| **Attachments:** | image001.png |
| | Notice of Filing First Amended Complaint v2.docx |
| | Complaint from Cheri as filed + Title VII Claim v2.docx |

Chris,

You may indicate that Defendants do not oppose this amendment to the Complaint.

Very truly yours,

Gordon Lewis



**GORDON LEWIS** | Partner

Jones, Skelton & Hochuli, P.L.C.

40 North Central Avenue, Suite 2700 | Phoenix, AZ 85004

**P** (602) 263-7341 | **F** (602) 200-7897

**website** | **bio** | **vCard** | **map** | **email** | **linkedin** | **facebook** | **twitter**

**From:** Chris Houk <chouk@houklawfirm.com>
**Sent:** Wednesday, April 28, 2021 10:42 AM
**To:** GORDON LEWIS <GLewis@jshfirm.com>
**Cc:** Ian Beck <IBeck@JSHFIRM.COM>; Cheri L L. McCracken (cherimccracken@gmail.com) <cherimccracken@gmail.com>; Marina Kovačević <mkovacevic@houklawfirm.com>; James Montanez <jmontanez@houklawfirm.com>
**Subject:** Corder

Gordon: Please see the attached notice of filing and . As you know, Rule 15(a)(2) requires the written consent of "all opposing parties" to the filing of this amended complaint. Do all your clients consent? Is this ok to file? Thanks. Chris

**Houk Law Firm, PLLC**
1050 East Southern Avenue
Suite A-3
Tempe, Arizona 85282
480.569.2377 – Phone
480.569.2379 – Fax
chouk@houklawfirm.com
**www.houklawfirm.com**

**Serving Employees, Executives, and Employers with Advice and Litigation Support.**

**Confidential Communication:** This email may contain confidential, attorney-client privileged information. If you are not the intended recipient, please immediately destroy this email. Thank you for your cooperation.

This electronic mail transmission contains information from the law firm Jones, Skelton & Hochuli, P.L.C. that may be confidential or privileged. Such information is solely for the intended recipient, and use by any other party is not authorized. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of this message, its contents or any attachments is prohibited. Any wrongful interception of this message is punishable as a Federal Crime. Although this e-mail and any attachments are believed to be free of any virus or other defect that might affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by the sender for any loss or damage arising in any way from its use. If you have received this message in error, please notify the sender immediately by telephone (602) 263-1700. Thank you.

Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS under Circular 230, we inform you that any U.S. federal tax advice contained in this communication (including any attachments), unless otherwise specifically stated, was not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any matters addressed herein.

Exhibit B

1  Cheri L. McCracken, State Bar No. 006111
2  Attorney at Law
   2402 North 24th Street
3  Phoenix, AZ 85008-1804
   Phone: 602.231.0595
4  FAX: 602.231.0841
   cherimccracken@gmail.com
5
6  Christopher R. Houk, State Bar No. 020843
   **HOUK LAW FIRM, PLLC**
7  1050 East Southern Avenue, Suite A-3
   Tempe, AZ 85282
8  Telephone: 480.569.2377
   Facsimile:  480.569.2379
9  chouk@houklawfirm.com
10
   *Attorneys for Sandra (Corder) Matlock*
11
12  Please send all documents to:
    jmontanez@houklawfirm.com
13
14          **IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**
15             **IN AND FOR THE COUNTY OF COCONINO**
16
17  Sandra (Corder) Matlock,                    Case No.  CV202000504
18          Plaintiff,
                                                ~~CIVIL COMPLAINT AND~~
19  vs.                                         ~~DEMAND FOR JURY TRIAL~~FIRST
                                                AMENDED COMPLAINT
20  City of Flagstaff, a municipal corporation,
    Richard Tadder and Amanda Tadder, wife and
21  husband,
22          Defendants.
23
24          Plaintiff Sandra (Corder) Matlock submits this First Amended Complaint for relief and
25  Jury Trial Demand pursuant to Arizona Rules of Civil Procedure against Defendants because
26  Defendants subjected Sandra to discrimination, retaliation, or improperly interfered with
27  Plaintiff's employment.
28
                            Page 1 of 17

Houk Law Firm, PLLC
1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282
Telephone: 480.569.2377 · Fax: 480.569.2379

**Plaintiff's Claims**

1.    Tortious Interference with Employment;

2.    Title VII, 42 U.S.C. § 2000(e)-2(1) – Termination Based on Sex;

3.    Title VII, 42 U.S.C. § 2000(e)-3(a) – Retaliation for Reporting Sex Discrimination; and

4.    29 U.S.C. § 623, Age Discrimination in Employment Act.

1.

**The Parties and Jurisdiction**

5.    The Plaintiff, Sandra Matlock, has been at all times material to this Complaint:

    a.  An adult resident of Coconino County, and currently resides in Florida;

    b.  Employed by Defendant City of Flagstaff, a municipal corporation; and

    c.  A person whose sex is female and whose age is 58 years old.

6.    Defendant City of Flagstaff is, and has been at all times material to this Complaint:

    a.  A municipal corporation and a body politic, established and operating pursuant to the Arizona Constitution, Art. XIII, § 1, and Title 9 of the Arizona Revised Statutes;

    b.  The employer of Plaintiff, as that term is defined in 2000e(b) in 29 U.S.C. § 630;

    c.  An employer of more than fifteen persons; and

    d.  Located within Arizona, including Coconino County, Arizona.

7.    Defendant Richard Tadder (Tadder) is, and had been at all times relevant to this Complaint,

    a.  An adult resident of Coconino County, Arizona;

HOUK LAW FIRM, PLLC
1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282
Telephone: 480.569.2377 ~ Fax: 480.569.2379

b.  Employed by the City of Flagstaff; and

c.  Upon information and belief, is married to Amanda Tadder, acting on behalf of the marital community of his spouse and himself.

~~5.~~8.    Many of the events alleged occurred in Coconino County, Arizona, and Coconino County is the domicile of all parties at all relevant times.

~~6.~~9.    Coconino County is the appropriate venue pursuant to A.R.S. § 12-401 because Defendant resides in the County.

~~7.~~10.    Sandra has satisfied all conditions precedent to filing suit, including service of the Notice of Claim against both Tadder and the City of Flagstaff on May 27, 2020.

~~8.    Plaintiff gives notice that she has the additional,~~ has the following claims against the City of Flagstaff based in part on Defendant's actions under Title VII on sex and retaliation against her that are not yet ripe because the EEOC has not issued a right to sue letter:

~~a.  Title VII, 42 U.S.C. § 2000(e)-2(1) – Termination Based on Sex;~~

~~b.  Title VII, 42 U.S.C. § 2000(e)-3(a) – Retaliation for Reporting Sex Discrimination;~~

~~c.  29 U.S.C. § 623, Age Discrimination in Employment Act.~~

~~Plaintiff will seek to amend her complaint when the right to sue letter is issued.~~ The EEOC issued a Right to Sue letter on March 30, 2021. *See* Exhibit A.

~~9.~~11.    Amanda Tadder is named solely because of Arizona's community property laws and is properly joined pursuant to Ariz. R. of Civ. P. 19.

**Demand for Jury Trial**

Page 3 of 17

~~10.~~12.    While a written Jury demand is not necessary, pursuant to Rule 38 of the Arizona Rules of Civil Procedure, Plaintiff Sandra demands a trial by jury.

### **Fact Allegations in Support of All Counts**

**For Four years, the City of Flagstaff Recognized Sandra's Excellent Job Performance.**

~~11.~~13. Sandra re-alleges and incorporates each allegation of this complaint as if fully set forth in this claim.

~~12.~~14. In February 2015, Sandra started at the City of Flagstaff as a Customer Service Manager.

~~13.~~15. In eight months, she moved from Customer Service Manager to Sales Tax Manager, one month later to Interim Revenue Director in November 2015 and by July 2017 to Revenue Director where she remained until her termination in December 2019.

~~14.~~16. In her role as Revenue Director, she oversaw the city's sizeable investment portfolio and budget, built and maintained relationships with vendors and community partners, and oversaw an award-winning team in her department, among other, important duties.

~~15.~~17. During her time at the City of Flagstaff, Sandra received several performance-based awards—sometimes multiple awards per year—and often given directly by the City Manager himself. For example,

- From 2015 to 2019, Sandra was recognized with 25 different "On the Spot" awards from co-workers, colleagues, team members and other Flagstaff employees;

- In 2015, Sandra was honored with the City Manager Agassiz Award for Teamwork; 7K Award for Service at a Higher Elevation—bestowed directly by the City Manager; and

**HOUK LAW FIRM, PLLC**
1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282
Telephone: 480.569.2377 – Fax: 480.569.2379

Houk Law Firm, PLLC
1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282
Telephone: 480.569.2377  ~  Fax: 480.569.2379

- In 2016, Sandra received her second 7K Award for Service at a Higher Elevation; Wonderful Outstanding Worker for Outstanding Performance.

16.18.  In 2017, Sandra received her second City Manager Agassiz Award for Leadership; and

17.19.  In 2018, Sandra earned her second Wonderful Outstanding Worker award for Outstanding Performance and a Blue Ribbon from Flagstaff Toastmasters, which demonstrates her presentation skills critical to her job duties.

18.20.  Before Sandra joined the City of Flagstaff, she enjoyed a 28-year career in the public service sector in Orange County, California. There, too, the County of Orange promoted her through seven levels of supervision and four levels of management to the position of Program Manager of the Alcohol and Drug Abuse Program. During her time with Orange County, Sandra's work was recognized various time, including with the following awards:

    a.    Outstanding Leadership and Achievement Award by the County of Orange United Way;

    b.    Woman of Achievement; and

    c.    Rising Gold Star.

**City of Flagstaff Management Services Director Rick Tadder Exhibited a Pattern of Sexual Harassment Towards Women, Especially Sandra.**

19.21.  Starting around December 2015—a few months after beginning work with the City of Flagstaff and directly following her reporting to Management Services Director Rick Tadder—Rick regularly engaged in offensive actions toward Sandra and other women.

Page 5 of 17

HOUK LAW FIRM, PLLC
1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282
Telephone: 480.569.2377 ~ Fax: 480.569.2379

20.22. Rick repeatedly refused to train Sandra on his expectations but regularly gave her negative feedback on her projects.

21.23. Rick demeaned Sandra in front of colleagues by unreasonably and unjustifiably criticizing her work.

22.24. Sandra coined the term "Tadderizing," a euphemism for Tadder tearing apart and "terrorizing" specifically her.

23.25. The term "Tadderizing" was adopted by other colleagues who witnessed the treatment.

24.26. Tadder himself began using the term in yet another effort to demean Sandra.

25.27. Tadder repeatedly rolled his eyes, shrugged his shoulders, laughed, and shook his head in disdain toward Sandra and other women during meetings.

26.28. In December 2018, Tadder's temper escalated during a meeting. Those in attendance included: Sandra, a new Customer Service Supervisor Danielle Tiedeman, a potential cash-handling vendor, and former customer Service Manager, Michele Bader, as well as other team members were present. In front of others, Tadder yelled at Sandra, questioning her abilities. Tiedeman became visibly shaken. Sandra was afraid that she would lose her job if she defended herself.

27.29. Shortly after this meeting in 2018, Customer Service Manager, Michele Bader resigned, citing "Rick Tadder" as her only reason for leaving city employment. She told Sandra directly not to trust Tadder before she left.

28.30. In early 2019, Finance Director, Brandi Suda, came to Sandra in tears, seeking emotional support after Tadder had demeaned her.

HOOK LAW FIRM, PLLC
1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282
Telephone: 480.569.2377 ~ Fax: 480.569.2379

29.31.  By September 2019, Tadder's harassing emails and in-person bullying against Sandra had become routine, at least once a week.

30.32.  In late September 2019, Sandra attended a meeting where a draft project on Sales Tax Information to Council was presented by Economic Vitality Director, Heidi Hansen, and Community Investment Director, David McIntire.

31.33.  When Sandra made a suggestion on changing the formatting of a chart, Tadder shrugged his shoulders and rolled his eyes, blowing her off.

32.34.  Tadder then presented the same exact idea that he had just ignored from Sandra as his own. Sandra then confronted him and told him that she had just said the same thing, but Tadder told her that she did not.

33.35.  Hansen chimed in, stating, "In all fairness to Sandy, she did say just that," confirming that Sandra was the first to present the idea.

34.36.  It was not until McIntire also supported Sandra that Tadder finally backed down from claiming the idea as his own.

35.37.  This happened a second time during the same meeting just minutes later, where Tadder denied Sandra had the idea first and David felt compelled to bring it to Tadder's attention once more.

36.38.  At least one other co-worker, Financial Systems Analyst Martin Collins noted Tadder's disparate treatment of Sandra. His behavior became so incessant that Sandra's colleagues came to expect the treatment and were normalized to his treatment of Sandra, and therefore no longer reacted.

37.39.  Tadder did not treat men in the same way.

Page 7 of 17

**Tadder's Harassment of Sandra Reached a Boiling Point During a Work Trip with Colleagues**

~~38.~~40.  In October 2019, Tadder and Sandra attended a work conference in Colorado with several other City of Flagstaff employees. Tadder, Sandra, and several other employees attended a networking event sponsored by a client. After the event, the City of Flagstaff team all went to dinner together outside of the conference, on their personal time.

~~39.~~41.  At the networking event and at dinner, each employee had at least one drink. Tadder was aware that Sandra had some drinks, as he had.

~~40.~~42.  At dinner, Tadder continued his history of singling Sandra out, criticizing Sandra's work, being negative toward her, and saying demeaning comments towards her:

      a.  In a sign of his control and lack of respect toward her, at one point, when Sandra said she needed to go to the restroom, Tadder told her, she didn't need to go and sit down.

      b.  This time, Tadder was acting in a particularly humiliating way because he berated Sandra in front of Jessica Huleatt, a Customer Service Manager, who reported to Sandra.

      c.  Tadder also got angry with Sandra for making a joke about who was covering the tab for dinner and made an insensitive racial comment about a black waiter, to which Sandra objected.

~~41.~~43.  Sandra left the table and went to the bathroom, despite Tadder telling her to sit down. When she returned, Sandra attempted to lighten the mood and told a joke about who was paying the dinner bill. Tadder responded by increasing his disparaging remarks. The combination of these events at dinner, plus the years of distress caused by Tadder, led Sandra

HOUK LAW FIRM, PLLC
1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282
Telephone: 480.569.2377 – Fax: 480.569.2379

HOUK LAW FIRM, PLLC
1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282
Telephone: 480.569.2377 ~ Fax: 480.569.2379

to become upset, resulting in Sandra accidently knocking over glasses on the table. Tadder's condescending behavior followed years of his harassing behavior triggered Sandra's emotional response.

~~42.~~44.  There, her emotions culminated in a series of texts to Tadder. In her texts, she called out his insensitive behavior, telling him she will "not be demeaned" anymore, that she had witnesses to his poor treatment of women, and that he bullied another woman (Brandi Suda) to the point of tears.

**Tadder Terminated Sandra's Employment in Retaliation Minutes After Her Opposition to His Treatment of Women**

~~43.~~45.  Sandra texted Tadder that she "no longer report[s] to you [meaning Tadder] as I have submitted my resignation" by which she meant, she wanted to work for someone else at the City. She also texted, "I'll be contacting HR in the morning".

~~44.~~46.  The next morning, Sandra left a voice mail for Shauna Fischer, HR Manager, reporting Tadder's harassment and stating her intent was not to resign. Tadder immediately forced Sandra to resign.  He contacted Allison Eckert, the Interim HR Director, who issued a resignation letter. Tadder did this without confirming Sandra's intent in the text message, knowing she was at a dinner and had been drinking—as he had—and knowing she was objecting to his harassing behavior.

**The City of Flagstaff Ultimately Terminated Sandra's Employment.**

~~45.~~47.  At first, the City Manager, Greg Clifton, promptly reinstated Sandra's employment, placing her, rather than Tadder, on administrative leave until the City had time to assess the situation.

46.48.  Instead of investigating Tadder's behavior, in mid-October 2019, Interim Human Resources Director, Allison Eckert, initiated an investigation into Sandra's conduct in Colorado, insinuating possible blame.

47.49.  Sandra fully cooperated in the investigation.

48.50.  Sandra also provided a detailed account of the incident and the harassment she suffered.

49.51.  While Sandra made allegations of discrimination about Tadder's discrimination prior to what occurred in Colorado, the City refused to investigate those allegations, claiming to reserve them for later, stating "Other claims of harassment by Ms. Corder [Matlock] that fall outside of this event and timeframe will be investigated separately."

50.52.  To date, the City has not involved Sandra in any investigation, nor disclosed the results of the allegations that Tadder engaged in longstanding discrimination against her and other women. Nor upon information and belief has it investigated.

51.53.  In mid-November 2019, the City stated they completed the investigation into the event in Colorado:

    a.  While concluding that all of Sandra's harassment claims against Tadder during the Colorado trip were not substantiated—without explanation—the City turned the tables and found that Sandra—not Tadder—was at fault.

    b.  The City found Sandra was abusive and insubordinate to Tadder, again, without explanation.

    c.  The City recommended that the City Manager immediately terminate her employment, without any progressive discipline.

Page 10 of 17

HOUR LAW FIRM, PLLC
1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282
Telephone: 480.569.2377  ~  Fax:  480.569.2379

d.  In November 2019, Sandra met with the City Manager Greg Clifton and offered alternatives to termination, in line with City policy, but the City refused to accept them and Clifton forced Sandra to resign or be terminated, effective December 2, 2019.

~~52.~~54.  At age 57 at the time of her termination, Sandra was one of the oldest City employees.

~~53.~~55.  During her employment, ageist comments were made to Sandra.

~~54.~~56.  The City transferred Sandra's job duties to an employee who is around 30 years of age.

**Count I**
**Tortious Interference with Employment**
**(Against Rick Tadder)**

~~55.~~57.  Sandra re-alleges and incorporates each allegation of this complaint as if fully set forth in this claim.

~~56.~~58.  Tadder tortiously interfered with Sandra's employment with the City of Flagstaff when he contacted HR, resulting in HR accepting Sandra's resignation that she did not intend, thus improperly causing her termination.

~~57.~~59.  Tadder terminated Sandra's employment knowing Sandra was objecting to his harassing behavior.

~~58.~~60.  Tadder's interference was improper. There was a business expectancy between Sandra and the City of Flagstaff. Tadder knew about Sandra's and the City of Flagstaff's shared business expectancy. He intentionally interfered with her employment, causing her termination.

Page 11 of 17

59.61.        Tadder's interference caused damage to Sandra.

60.62.        As a direct and proximate result of the conduct by the City of Flagstaff, Sandra suffered compensatory damages including for pain, suffering (including pain and suffering due to developing PTSD), inconvenience, diminished enjoyment of life, humiliation, outrage, discomfort, anxiety, sorrow, fear, depression, loss of sleep, nightmares, loss of the love, care, affection, companionship, and close relationships, change in demeanor, and harmed reputation at work. Sandra is reasonably likely to incur more compensatory damages in the future.

61.63.  Sandra seeks a judgment for the following:

    a.    Compensatory and general damages in an amount to be determined by the trier-of-fact;

    b.    Monetary damages, including lost wages, salary, employment benefits, lost value of pension, and other compensation, in an amount to be proven at trial;

    c.    Interest at highest legal rate;

    d.    Reinstatement, or front pay in lieu of reinstatement;

    e.    Injunctive relief to prevent future similar violations and to remedy harm done to Sandra;

    f.    Punitive damages because Tadder's interference was the result of malice, spite, ill-will, or reckless indifference to her rights; and

    g.    Costs.

<div align="center">

Future Claim, **Count II:**
**Termination Based Upon Sex**
**Title VII, 42 U.S.C. § 2000e-2(a)(1)**

Page 12 of 17

</div>

HOUK LAW FIRM, PLLC
1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282
Telephone: 480.569.2377 ~ Fax: 480.569.2379

Hoig Law Firm, PLLC
1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282
Telephone: 480.569.2377  ·  Fax:  480.569.2379

62.64. Sandra re-alleges and incorporates each allegation of this complaint as if fully set forth in this claim.

63.65. City of Flagstaff terminated Sandra's employment in violation of 42 U.S.C. § 2000e-2(1) based on sex and discrimination.

64.66. As a direct and proximate result of the conduct by City of Flagstaff, Sandra is entitled to compensatory damages including for pain, suffering (including pain and suffering due to developing PTSD), inconvenience, diminished enjoyment of life, humiliation, outrage, discomfort, anxiety, sorrow, fear, depression, loss of sleep, nightmares, loss of the love, care, affection, companionship, and other close relationships, change in demeanor, and harmed reputation at work. Sandra is reasonably likely to incur more compensatory damages in the future.

65.67. Injunctive relief should be granted for Sandra against Defendant to prevent further acts of discrimination, particularly since the Defendant appears to be oblivious to their duties and liabilities under 42 U.S.C. § 2000(e)-2(1).

66.68.  The unlawful employment practices complained of were intentional.

67.69. Sandra seeks a judgment for the following:

a.       Compensatory and general damages in an amount to be determined by the trier-of-fact;

b.       Monetary damages, including lost wages, salary, employment benefits, lost value of pension, and other compensation, in an amount to be proven at trial;

c.       Reinstatement, or front pay in lieu of reinstatement;

Page 13 of 17

HOUK LAW FIRM, PLLC
1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282
Telephone: 480.569.2377 ~ Fax: 480.569.2379

d.      Injunctive relief to prevent future similar violations of federal statutes and to remedy harm done to Sandra;

e.      Her reasonable attorney's fees and expert fees incurred herein, pursuant to 42 U.S.C. § 1988 (b), (c), Federal Rule of Civil Procedure 54(d)(2), and Local Rule of Civil Procedure 54.2; and

f.      Her taxable costs incurred herein, pursuant to Federal Rule of Civil Procedure 54(d)(1), Local Rule of Civil Procedure 54.1, and 28 U.S.C. § 1920.

<div align="center">

~~Future Claim,~~ Count III
**Retaliation For Reporting Sex-Based Discrimination**
**Title VII, 42 USC § 2000e-3(a)**

</div>

~~68.~~70.  Sandra re-alleges and incorporates each allegation of this complaint as if fully set forth in this claim.

~~69.~~71.  The City of Flagstaff retaliated against Sandra in violation of U.S.C. § 2000e-3(a) including by terminating her employment because she complained about discrimination on the basis of sex and sexual harassment.

~~70.~~72.  As a direct and proximate result of the conduct of the City of Flagstaff, Sandra is entitled to compensatory damages including for lost earnings and benefits, decrease in earnings power or capacity, pain, suffering, inconvenience, diminished enjoyment of life, humiliation, outrage, discomfort, and harmed reputation at work and her industry. Sandra is also reasonably likely to incur more compensatory damages in the future.

~~71.~~73.  The unlawful employment practices complained of were intentional.

~~72.~~74.  Sandra seeks a judgment for the following:

a.      Injunctive relief, including enjoining harassment and implementing policy changes, training, and changing her status to eligible for rehire;

<div align="center">Page 14 of 17</div>

b.      Back pay, reinstatement in lieu of front pay, or front pay with interest;

c.      Compensatory and general damages in an amount to be determined by

        the trier-of-fact;

d.      Her reasonable attorney's fees and expert fees incurred herein, pursuant

        to 42 U.S.C. § 1988 (b), (c), Federal Rule of Civil Procedure 54(d)(2), and

        Local Rule of Civil Procedure 54.2; and

e.      Her taxable costs incurred herein, pursuant to Federal Rule of Civil

        Procedure 54(d)(1), Local Rule of Civil Procedure 54.1, and 28 U.S.C. §

        1920.

<del>Future Claim,</del> **Count IV**
**Unlawful Termination**
**Age Discrimination in Employment Act, 29 U.S.C. § 623**
**(City of Flagstaff)**

76.     The Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623(a)(1),

prohibits employers from terminating their employees because of age.

77.     Defendant violated the ADEA when it terminated Sandy's employment because

of her age.

78.     As a direct and proximate result of the conduct of Defendant, Plaintiff lost wages,

in an amount to be proven at trial.

79.     Defendant's unlawful employment practices were willful within the meaning of

the ADEA, 29 U.S.C. § 626(b).

<del>73.</del>75.  Sandra seeks a judgment for the following:

f.      Injunctive relief, including enjoining discrimination and implementing

        policy changes, training, and changing her status to eligible for rehire;

Page 15 of 17

HOUK LAW FIRM, PLLC
1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282
Telephone: 480.569.2377 ~ Fax: 480.569.2379

g.  Back pay, reinstatement in lieu of front pay, or front pay with interest;

h.  Liquidated damages;

i.  Her reasonable attorney's fees and expert fees incurred herein, pursuant to 42 U.S.C. § 1988 (b), (c), Federal Rule of Civil Procedure 54(d)(2), and Local Rule of Civil Procedure 54.2; and

j.  Her taxable costs incurred herein, pursuant to Federal Rule of Civil Procedure 54(d)(1), Local Rule of Civil Procedure 54.1, and 28 U.S.C. § 1920.

WHEREFORE, Sandra prays for the following relief:

1.  For a declaration that City of Flagstaff violated Sandra's rights under Title VII;

2.  For a declaration that Tadder ~~and the City of Flagstaff~~ improperly interfered with Sandra's rights;

3.  All relief available under the statutes and common laws asserted in this case;

4.  For injunctive relief, including a permanent injunction prohibiting City of Flagstaff from engaging in discrimination under Title VII;

5.  For equitable relief such as employment, promotion, reinstatement or, in lieu of reinstatement, front pay;

6.  For compensation for past and future non-pecuniary losses resulting from the unlawful practices under Title VII and the interference claim;

7.  For punitive damages resulting from the improper interference claim;

8.  For liquidated damages under the ADEA;

9.  For interest on the above amounts at the highest legal rate from the date of Judgment until paid in full;

HOUK LAW FIRM, PLLC
1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282
Telephone: 480.569.2377  ·  Fax: 480.569.2379

10. For reasonable attorneys' fees;

11. Taxable costs; and

12. All other relief the court shall deem is just.

**DATED** this 6th day of October 2020.

HOUK LAW FIRM, PLLC

By:   /s/ Christopher R. Houk
Christopher R. Houk
*Attorneys for Sandra Matlock*

1   Gordon Lewis, Bar #015162
2   JONES, SKELTON & HOCHULI, P.L.C.
    40 North Central Avenue, Suite 2700
3   Phoenix, Arizona  85004
    Telephone:  (602) 263-7341
4   Fax:  (602) 200-7897
    glewis@jshfirm.com
5   minuteentries@jshfirm.com

6   Attorneys for Defendants Richard Tadder and
7   Amanda Tadder

8                 SUPERIOR COURT OF THE STATE OF ARIZONA

9                          COUNTY OF COCONINO

10
    SANDRA (CORDER) MATLOCK,              NO. S0300CV202000504
11
                          Plaintiff,      **DEFENDANTS RICK TADDDER AND**
12                                        **AMAMDA TADDER'S MOTION TO**
                                          **DISMISS**
13            v.
                                          (Assigned to the Honorable Catherine Brown
14  CITY OF FLAGSTAFF, a municipal corporation,   Nichols)
    RICHARD TADDER and AMANDA TADDER,
15  wife and husband,

16                        Defendants.

17

18          Defendants Rick Tadder and Amanda Tadder, pursuant to Rule 12 (b)(6), Ariz.R.Civ.P.,

19  move to dismiss Plaintiff's claim of tortious interference with employment.[1] Defendants so move

20  because (a) Rick Tadder was Plaintiff's supervisor at the City of Flagstaff ("the City") and was acting in

21  the course and scope of his employment, and therefore cannot tortiously interfere with the City's

22  employment contract with Plaintiff, (b) Mr. Tadder's act of forwarding Plaintiff's resignation

23  communication to the City of Flagstaff Human Resource Department is not "improper" interference with

24

25          [1] Plaintiff has mentioned other causes of action in her pleading, but tortious interference with
    employment is the only active cause of action in the Complaint.

8955834.1

an employment relationship that can support a tortious interference claim, and (c) as a matter of law, Mr. Tadder forwarding Plaintiff's resignation to the City's Human Resources Department did not cause Plaintiff's termination from the City. This Motion is supported by the following Memorandum of Points and Authorities and all of the pleadings filed in this case, all of which are incorporated herein by reference.

## **MEMORANDUM OF POINTS AND AUTHOIRTIES**

### I.    **STANDARD OF REVIEW**

In determining whether a complaint adequately states a claim on which relief can be granted, courts must assume the truth of any ***well-pleaded*** factual allegations and indulge all reasonable inferences from those facts. *Coleman*, 230 Ariz. at 356, ¶ 9; *Cullen v. Auto-Owners Ins. Co.*, 218 Ariz. 417, 419, ¶ 7 (2008). That said, a simple recital of the elements of a cause of action supported by conclusory statements is not sufficient to survive a motion to dismiss. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-1950 (2009); see also *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007).

Arizona appellate courts have embraced *Twombly* and *Iqbal*, and like the U.S. Supreme Court, have "specifically rejected an interpretation of Rule 12(b)(6)" that allows "'a wholly conclusory statement of claim . . . [to] survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some "set of [undisclosed] facts" to support recovery.'" *Dube v. Likins*, 216 Ariz. 406, 424, ¶ 14 (App. 2007) (supp. op.) (punctuation and citation omitted). [2]

### II.    **FACTUAL ALLEGATIONS.**

Sandra Corder, the Plaintiff in this matter, was an employee with the City of Flagstaff. (Complaint at ¶2). Rick Tadder was her supervisor. (Complaint at ¶4,19).

In October of 2019, Rick Tadder and the Plaintiff attended a work conference in Colorado. (Complaint at ¶38). One evening during the conference, Plaintiff, Mr. Tadder, and other

---

[2] While the factual matters stated in the Complaint are taken as true for purposes of this 12(b)(6) Motion to Dismiss, the Tadders vehemently deny the assertions that Rick Tadder was in any way demeaning or unreasonable towards Sandra Corder.

colleagues went to dinner together. (Complaint at ¶38).  After the dinner, Mr. Tadder and Plaintiff got into a dispute regarding an alleged joke Plaintiff made about who would be paying the dinner bill. (Complaint at ¶41).  Plaintiff became upset, had an "emotional response," and knocked over glasses on the table.  *Id.*

Thereafter, Plaintiff and Mr. Tadder exchanged a series of text messages.  (Complaint at ¶42).  In one of the text messages, Plaintiff told Mr. Tadder that she "no longer reports to you [meaning Tadder] as I have submitted my resignation."  (Complaint at ¶43). Mr. Tadder subsequently informed the City of Flagstaff Human Resource Department that Plaintiff communicated her desire to resign. (Complaint at ¶43, 44, 56).

The City initially processed Plaintiff as a resignation, but then it stopped the resignation. (Complaint at ¶44-45). Instead, it placed her on administrative leave, and investigated her conduct at the conference.  (Complaint at ¶45-46).  The City's investigation revealed that Plaintiff was unprofessional and insubordinate to Mr. Tadder. (Complaint at ¶51).  The investigation resulted in a recommendation for Plaintiff's immediate termination.  *Id.* Plaintiff, after being notified of the termination recommendation, resigned her employment with the City on December 2, 2019. *Id.*

Plaintiff has now filed this lawsuit alleging that Mr. Tadder tortiously interfered with her employment with the City "when he contacted HR, resulting in HR accepting [Plaintiff's] resignation that she did not intend."  (Complaint at ¶56).  Plaintiff's allegations, however, do not state a claim on which relief can be granted.

## III.   AS HER SUPERVISOR, MR. TADDER CANNOT TOURTIOUSLY INTERFERE WITH PLAINTIFF'S EMPLOYMENT CONTRACT.

While styled as "Tortious Interference with Employment," Plaintiff's claim is actually a claim for intentional interference with contract.   The elements of a cause of action for intentional interference with contract are (1) a contract between the plaintiff and a third party; (2) knowledge of the defendant that the contract exists; (3) intentional interference by the defendant which causes the third party to breach the contract; (4) a showing that the defendant acted improperly; and (5) a showing that damage resulted to the plaintiff. *Barrow v. Arizona Bd. of Regents,* 158 Ariz. 71,78, 761 P.2d 145, 152

3

(App. 1988).  Critically, the tort of intentional interference with contract requires an "improper" act by a third party.  *Wallace v. Casa Grande Union High School Dist. No. 82 Bd. Of Governors*, 184 Ariz. 419, 427, 909 P.2d 486, 494 (App. 1995). Generally, an employee acting within the scope of employment cannot be liable for interference with the employer's contract because the employee stands in the shoes of the employer and not as a third-party. *Mintz v. Bell Atlantic Systems Leasing Int. Inc.,* 183 Ariz. 550, 555-556, 905 P.2d 559, 564-565 (App. 1995); *Barrow*, 158 Ariz at 78.

Here, the Complaint indicates that Mr. Tadder was an employee for the City of Flagstaff and was Plaintiff's supervisor. (Complaint at ¶4, 19).   The Complaint further alleges that Mr. Tadder terminated Plaintiff's employment contract. (Complaint at ¶57).  Mr. Tadder, therefore, is acting within the course and scope of his employment as the representative of the City, and he cannot, as a matter of law, interfere with the City's contract with Plaintiff.[3]

## IV.    MR. TADDER, AS A MATTER OF LAW, DID NOT ENGAGE IN "IMPROPER" CONDUCT.

In addition, as discussed above, the alleged interference must be "improper." for any contractual interference to give rise to a viable claim. *Brandon v. Maricopa County*, 849 F.3d 837 (9th Cir. 2017). Here, as a matter of law, Mr. Tadder has not engaged in any conduct that could be viewed as "improper" in relation to interfering with Plaintiff's employment contract.  The act of interference, as alleged, is Mr. Tadder informing the City Human Resources Department that Plaintiff said she was resigning her position. That's it.  That's the alleged "improper" interference.

Plaintiff is asking the court to accept that a Supervisor who informs the Human Resource Department that his subordinate has communicated a desire to resign is improper interference with the contract. This contention is ludicrous. Not only is it proper for a supervisor to inform human resources when a subordinate communicates a desire to resign, a supervisor arguably has an obligation -- as part of his or her duties -- to inform human resources personnel that employee has expressed a desire to leave

---

[3] Plaintiff's Complaint does not specifically allege that Mr. Tadder was acting within the course and scope of his employment.  The allegations of the Complaint, however, reflect that Mr. Tadder was acting within his capacity as an employee of the City.

the organization.  It should not be viewed as an improper, in any circumstance, for a supervisor to provide the human resources department with information about the conduct of an organization's employees.  As a matter of law, Mr. Tadder's alleged conduct of talking to the Human Resource Department cannot be viewed as improper, and cannot support Plaintiff's tortious interference with employment claim.

The Arizona Supreme Court has recognized that an action is not "improper," for purposes of an intentional interference claim, when an alleged interferer "(1) ... has or honestly believes he has a legally protected interest, (2) which he in good faith asserts or threatens to protect, and (3) he threatens to protect it by proper means." *Snow v. W. Sav. & Loan Ass'n*, 152 Ariz. 27, 34-35, 730 P.2d 204 (1987). "One is privileged to interfere with a contract between others when he does so in the bona fide exercise of his own rights or when he possesses an equal or superior interest to that of the plaintiffs in the subject matter." *McReynolds v. Short*, 115 Ariz. 166, 170–71, 564 P.2d 389 (App. 1977). Given his position, it is both Mr. Tadder's right and his obligation to inform the human resources department about the exchange he had with the Plaintiff. Making this report cannot, as a matter of law, subject Mr. Tadder to liability for intentional interference with contract.

## V.    THE CITY DID NOT BREACH ITS EMPLOYMENT CONTRACT WITH PLAINTIFF.

Plaintiff's claim also fails because the City did not breach its contract with the Plaintiff. Plaintiff was not terminated.  Rather, she resigned her position with the City after the City stated that her termination would be recommended. (Complaint at ¶51). Because there was no breach by the City, Plaintiff cannot claim that Mr. Tadder tortiously induced the non-existent breach of the employment contract.  Plaintiff's claim for tortious interference with employment should be dismissed.

## VI.    MR. TADDERS REPORT TO HUMAN RESOURCES DID NOT CAUSE PLAINTIFF'S TERMINATION.

Additionally, Plaintiff fails to state a claim for intentional interference with contractual relations because Mr. Tadder's communication on her resignation did not <u>cause</u> her contract to be terminated.  "A plaintiff proves proximate cause … by demonstrating a natural and continuous sequence of events stemming from the defendant's act or omission, unbroken by any efficient intervening cause,

8955834.1

that produces an injury, in whole or in part, and without which the injury would not have occurred." *Robertson v. Sixpence Inns of America, Inc.*, 163 Ariz. 539, 546, 789 P.2d 1040, 1047 (1990).

Here, Plaintiff alleges that Mr. Tadder told Human Resources that she had resigned. (Complaint at ¶43, 44, 56). She also alleges, however, that the City did not act upon that resignation. (Complaint at ¶44-46). Rather, she admits that the City rescinded the resignation, placed her on administrative leave, and conducted its own investigation into her conduct. (Complaint at ¶ 45). These intervening steps remove the causation element from Mr. Tadder's conduct. Plaintiff admits that the City investigated the matter for almost a month, informed her that the investigation would lead to a termination recommendation, and in light of the recommendation she chose to resign. (Complaint at ¶51).

Based on these allegations, Plaintiff cannot claim that Mr. Tadder's communication to Human Resources was the proximate cause of her ultimate resignation. Here, the causal relationship between Mr. Tadder's communication and Plaintiff's ultimate resignation is, for all practical purposes, nonexistent. Plaintiff admits that the City of Flagstaff did not accept Mr. Tadder's communication, admits that the City conducted its own investigation, and admits that after the investigation the City independently determined that she had engaged in conduct that justified her dismissal. (Complaint at ¶43-46, 51). These actions by the City break the causal chain, and remove any legitimate contention that Mr. Tadder's communication to HR "caused" her ultimate resignation. Because Plaintiff cannot show that Mr. Tadder's conduct caused a breach of her contract, her claim for tortious interference with employment must be dismissed.

## VII.    CONCLUSION

For the foregoing reasons, Defendants Rick and Amanda Tadder request that Plaintiff's Complaint against them be dismissed in its entirety and that they be awarded their attorney's fees in defending this matter pursuant to A.R.S. § 12–341.01.

6

8955834.1

1    DATED this 8th day of December 2020.

2                        JONES, SKELTON & HOCHULI, P.L.C.

3

4                        By /s/ Gordon Lewis

5                            Gordon Lewis
                            40 North Central Avenue, Suite 2700
6                            Phoenix, Arizona  85004
                            Attorneys for Defendants Richard Tadder and
7                            Amanda Tadder

8

9    ORIGINAL of the foregoing electronically filed
     this 8th day of December 2020.

10

11   COPY of the foregoing mailed/e-mailed
     this 8th\ day of December 2020, to:

12

13   Cheri L. McCracken
     2402 North 24th Street
     Phoenix, AZ 85008-1804

14

15   Christopher R. Houk
     HOUK LAW FIRM, PLLC
16   1050 East Southern Avenue, Suite A-3
     Tempe, AZ 85282

17

18   Attorneys for Plaintiff

     /s/ Jennifer Bernardo
19

20

21

22

23

24

25

26

7

**From:**     GORDON LEWIS
**To:**       Jennifer Bernardo
**Subject:**  FW: E-Filing Status: Form Set # 5220486 Delivered
**Date:**     Tuesday, December 8, 2020 4:12:06 PM

---

**From:** TurboCourt Customer Service
**Sent:** Tuesday, December 8, 2020 4:12:00 PM (UTC-07:00) Arizona
**To:** GORDON LEWIS
**Subject:** E-Filing Status: Form Set # 5220486 Delivered

PLEASE DO NOT REPLY TO THIS EMAIL.

AZTurboCourt Form Set # 5220486 has been DELIVERED to Coconino County - Superior Court.

You will be notified when your documents have been processed by the court.

You MUST log in and check your filing status online at http://turbocourt.com/.

Here are your filing details:
Case Number: S0300CV202000504 (Note: If this filing is for case initiation, you will receive a separate notification when the case # is assigned.)

Case Title: SANDRA MATLOCK PLAINTIFF vs CITY OF FLAGSTAFF, A MUNICIPAL CORPORATION et al. DEFENDANT

Filed By: Gordon Lewis

AZTurboCourt Form Set: #5220486
AOC Submission ID #1328359

Keyword/Matter #: 16799-00044
Delivery Date and Time: Dec 08, 2020 4:11 PM MST

Forms:
Summary Sheet (This summary sheet will not be filed with the court. This sheet is for your personal records only.)
First Appearance Notice


Attached Documents:
Motion: Dismiss: Defendants Rick Tadder and Amanda Tadder's Motion to Dismiss

Fees Paid:
First Appearance Fee: $215.00
Total Filing Fees: $215.00
Provider Fee: $ 6.50
E-Payment Fee: $ 6.65
Total Amount Paid: $228.15

You MUST log in and check your filing status and the e-service status of this form set online at http://turbocourt.com/.

If you have questions about your filing, please contact AOC Support Services, phone number 602-452-3519 or 1-800-720-7743, or e-mail pasupport@courts.az.gov.

Please have your AZTurboCourt Form Set # and AOC Submission ID available.

Cheri L. McCracken, State Bar No. 006111
Attorney at Law
2402 North 24th Street
Phoenix, AZ 85008-1804
Phone: 602.231.0595
FAX: 602.231.0841
cherimccracken@gmail.com

Christopher R. Houk, State Bar No. 020843
**HOUK LAW FIRM, PLLC**
1050 East Southern Avenue, Suite A-3
Tempe, AZ 85282
Telephone: 480.569.2377
Facsimile:  480.569.2379
chouk@houklawfirm.com

*Attorneys for Sandra (Corder) Matlock*

Please send all documents to:
jmontanez@houklawfirm.com

**IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

**IN AND FOR THE COUNTY OF COCONINO**

| | |
|---|---|
| Sandra (Corder) Matlock, | NO. CV2020-00504 |
| Plaintiff, | |
| vs. | **PLAINTIFF'S RESPONSE TO MOTION TO DISMISS** |
| City of Flagstaff, a municipal corporation, Richard Tadder and Amanda Tadder, wife and husband, | **Oral Argument Requested** |
| Defendants. | *(Assigned to Honorable Judge Catherine Brown Nichols)* |

HOUK LAW FIRM, PLLC
1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282
Telephone: 480.569.2377  ·  Fax:  480.569.2379

Plaintiff Sandra Matlock properly stated a tortious interference claim when she alleged facts that Defendant Rick Tadder[1] was the driving force in causing her separation from the City because of his sexist, ageist, and retaliatory behavior—actions which are "improper" because they violate the law. Significantly, Defendant City of Flagstaff did not move to dismiss the Complaint, and Sandra will add discrimination and retaliation claims when the agencies where those claims are pending have issued their right to sue letters.

## I.    Factual background

Sandra, who started with the City of Flagstaff as its Customer Service Manager in February 2015 and was ultimately promoted to Revenue Manager,[2] suffered four years[3] of sex-based harassment from Tadder that came to a head during a dinner where Tadder relentlessly belittled, demeaned, criticized, and singled out Sandra in front of staff.[4] The combination of these events at dinner and the years of distress suffered because of Tadder caused Sandra to become upset.[5]

After Sandra excused herself to the bathroom to diffuse the abuse, Sandra called out Tadder's insensitive behavior, telling him she would "not be demeaned" anymore[6] and that she "no longer report[s] to you [Tadder] as I have submitted my resignation" by which she meant, she wanted to work for someone else at the City.[7] She also texted, "I'll be contacting HR in the

---

[1] Defendant Amanda Tadder has been named as a Defendant for community property purposes only.
[2] Complaint ¶ 12.
[3] Complaint ¶ 19.
[4] Complaint ¶ 40.
[5] Complaint ¶ 41.
[6] Complaint ¶¶ 41-42.
[7] Complaint ¶ 43.

HOUK LAW FIRM, PLLC
1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282
Telephone: 480.569.2377  -  Fax:  480.569.2379

HOUK LAW FIRM, PLLC
1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282
Telephone: 480.569.2377 - Fax: 480.569.2379

morning"[8] which she did immediately the following morning by leaving a voicemail to Shauna Fischer, HR Manager, reporting Tadder's harassment and stating her intent was *not* to resign from the City of Flagstaff, but only from working under Tadder.[9]

Knowing that Sandra was specifically objecting to his harassment in her text message, Tadder forced her resignation by instructing Interim HR Director Allison Eckert to issue a letter of resignation for Sandra.[10] While City Manager Greg Clifton initially rejected Tadder's attempt to terminate Sandra and reinstated Sandra's employment, the City ultimately blamed Sandra for Tadder's harassing behavior at dinner and Clifton forced Sandra to resign or be terminated, transferring her job duties to someone about 27 years younger than her.[11]

## II.  Tadder's Motion to Dismiss Should Be Denied Because Sandra Alleged Sufficient Facts—with the Benefit of Reasonable Inferences Drawn from the Facts—that Defendant Rick Tadder Tortiously Interfered with Her Employment.

The Court should deny the Motion to Dismiss because Sandra properly stated claims against Defendants.

### A.  Motions to Dismiss Are Disfavored.

"Motions to dismiss for failure to state a claim are not favored in Arizona law."[12]

### B.  In Reviewing a Motion to Dismiss, Courts Must Assume the Truth of the Allegations in the First Amended Complaint Giving Plaintiff Benefit of All Reasonable Inferences.

---

[8] *Id.*

[9] Complaint ¶ 44.

[10] Complaint ¶ 44.

[11] Complaint ¶¶ 45-54.

[12] *Luchanski v. Congrove*, 193 Ariz. 176, 179, 971 P.2d 636, 639 (Ct. App. 1998) (reversing dismissal).

Page 3 of 11

"Courts must also assume the truth of the well-pled factual allegations and indulge all reasonable inferences therefrom."[13]

### C. At this Stage, Sandra Is Only Required to Provide a Short, Plain Statement of the Claim Showing Entitlement to the Relief.

Ariz.R.Civ.P. 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief."[14] "Under Rule 8, Arizona follows a notice pleading standard, the purpose of which is to "give the opponent fair notice of the nature and basis of the claim and indicate generally the type of litigation involved."[15] "We will affirm the dismissal only if [Plaintiff] would not have been entitled to relief under *any* facts susceptible of proof in his complaint."[16] "The inclusion of conclusory statements does not invalidate a complaint, but a complaint that states only legal conclusions, without *any* supporting factual allegations, does not satisfy Arizona's notice pleading standard under Rule 8."[17]

Providing evidentiary details or specific states of mind is not necessary.

Under Arizona's notice pleading rules, it is not necessary to allege the evidentiary details of plaintiff's claim for relief.…In addition, knowledge, and other condition of mind of a person may be averred generally. The test is whether *enough* is stated to entitle the pleader to relief on some theory of law susceptible of proof under the allegations made.[18]

---

[13] *Cullen v. Auto-Owners Ins. Co.*, 218 Ariz. 417, 419, 189 P.3d 344, 346 (2008); *Botma v. Huser*, 202 Ariz. 14, 15, 39 P.3d 538, 539 (Ct. App. 2002) ("In reviewing the grant of a motion to dismiss, we accept as true all well-pleaded facts, and we give plaintiffs the benefit of all inferences arising therefrom."); *Gatecliff v. Great Republic Life Ins. Co.*, 154 Ariz. 502, 508, 744 P.2d 29, 35 (Ct. App. 1987).
(When a complaint is the target of a rule 12(b)(6) motion, the court must assume the truth of all of the complaint's material allegations, accord the plaintiffs the benefit of all inferences which the complaint can reasonably support, and deny the motion unless certain that plaintiffs can prove no set of facts which will entitle them to relief upon their stated claims.)
(citation omitted) (reversing dismissal).
[14] *Verduzco v. American Valet*, 240 Ariz. 221, 225, ¶ 9 (App. 2016) (quoting Ariz. R. Civ. P. 8(a)(2)) (under Arizona's notice pleading rules, "[a] short and plain statement of the claim showing that the pleader is entitled to relief" is sufficient to overcome a Rule 12(b)(6) motion to dismiss).
[15] *Cullen v. Auto-Owners Ins. Co.*, 218 Ariz. 417, 419, 189 P.3d 344, 346 (2008).
[16] *Coleman v. City of Mesa*, 230 Ariz. 352, 356, 284 P.3d 863, 867 (2012) (citation omitted).
[17] *Cullen*, 218 Ariz. at 419, 189 P.3d at 346 (citation omitted).
[18] *Verduzco v. Am. Valet*, 240 Ariz. at 225, 377 P.3d at 1020 (internal quotations and citations omitted).

HOUK LAW FIRM, PLLC
1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282
Telephone: 480.569.2377 - Fax: 480.569.2379

HOUK LAW FIRM, PLLC
1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282
Telephone: 480.569.2377 - Fax: 480.569.2379

Courts give plaintiffs the benefit of the doubt when they are at an informational disadvantage since defendants likely have additional information in their possession to prove plaintiffs' claims.[19]

### D. Sandra is Permitted to Plead in the Alternative.

As Ariz.Civ.P. Rule 8(a)(3) makes clear, Sandra may plead "relief in the alternative...."

### E. Sandra Properly Stated a Claim for Intentional Interference.

Plaintiff must establish the following elements to prove that Tadder intentionally interfered with his employment:

(1) a contract between the plaintiff and a third party;
(2) knowledge of the defendant that the contract exists;
(3) intentional interference by the defendant which causes the third party to breach the contract;
(4) a showing that the defendant acted improperly; and
(5) a showing that damage resulted to the plaintiff.[20]

Tadder does not contest the first two elements, namely that he knew Sandra had a valid contract with the City of Flagstaff. Sandra worked for the City and expected to continue in that role.[21]

---

[19] "Where a plaintiff is at an informational disadvantage—where the information necessary to plead with greater specificity is in the possession of the defendant—courts give plaintiffs 'some benefit of the doubt to go along with the specific facts it has pled....'" *Hamblen v. Diamante Crossroads Plaza, LLC,* No. CV 08-0561-PHX-JAT, 2009 WL 825809, at *2–3 (D. Ariz. Mar. 30, 2009) (Here, Hamblen is at a clear informational disadvantage and likely would be able to provide evidentiary support for his claim of alterations only after conducting discovery. Given the foregoing, the Court finds that, at this juncture, Hamblen's allegations are sufficient to survive a motion to dismiss.) (citation omitted).

[20] *Wagenseller v. Scottsdale Mem'l Hosp.*, 147 Ariz. 370, 386, 710 P.2d 1025, 1041 (1985); *Barrow v. Arizona Bd. of Regents,* 158 Ariz. 71,78, 761 P.2d 145, 152 (App. 1988).

[21] An at-will employee has a valid contract for the purpose of the intentional interference claim. *Wagenseller v. Scottsdale Mem'l Hosp.*, 147 Ariz. 370, 387, 710 P.2d 1025, 1042 (1985) ("Thus, a cause of action in tort is available to a party to any contract, at-will or otherwise, when a third party improperly and intentionally interferes with the performance of that contract.")

Page 5 of 11

HOUK LAW FIRM, PLLC
1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282
Telephone: 480.569.2377  -  Fax:  480.569.2379

1.  **Tadder Is a "Third Party" for the Purpose of the Interference Claim.**

Tadder is a "third party" for the purpose of the interference claim. The Arizona Supreme Court in *Wagonseller v. Scottsdale Mem'l Hosp.* allowed an interference claim to go forward against the Plaintiff's supervisor, Defendant Smith, who allegedly terminated Plaintiff's employment because she refused to engage in certain activities such as "mooning" the audience on a work camping and rafting trip down the Colorado river.[22]  Similarly, here, Tadder, as Sandra's supervisor is a third party for the purpose of the interference claim.[23]

Tadder's arguments to the contrary are unavailing. Tadder cites *Mintz v. Bell Atlantic Systems Leasing Int. Inc.* for the proposition that he, as Sandra's supervisor, he cannot be held liable for interference with the employer's contract.[24] But Tadder misstates the holding in *Mintz*. *Mintz* held that the supervisor could not be held liable for the supervisor's failure to promote Plaintiff because the court found that the tort of wrongful promotion did not exist.[25] The Court reasoned that if the employer cannot be held liable for the tort of wrongful promotion, neither

---

[22] "We approve this result" of allowing the interference claim against Defendant Smith to go forward. *Wagonseller v. Scottsdale Mem'l Hosp.*, 147 Ariz. 370, 386, 710 P.2d 1025, 1041 (1985);  "[A] person who maliciously procures the discharge of another by their common employer is not shielded from liability by his or her status as a supervisory employee." *Sorrells v. Garfinckel's, Brooks Bros., Miller & Rhoads*, 565 A.2d 285, 291 (D.C. 1989) (upholding a verdict of a supervisor for intentional inference claim).

[23] Tadder is correct that Sandra did not argue one way or the other that his alleged interference was in the course and scope of his duties. Sandra can argue both, in the alternative. *See* Ariz.R.Civ.P. 8(a)(3). But this analysis is irrelevant. As *Wagenseller's* holding makes clear, Tadder can be liable for the interference claim simply by virtue of being Sandra's supervisor, without regard to whether he is found to have acted in the course and scope of his duties.

[24] *Mintz v. Bell Atlantic Systems Leasing Int. Inc.*, 183 Ariz. 550, 555-56, 905 P.2d 559, 564-65 (App. 1995); Barrow, 158 Ariz at 78.

[25] "We know of no court that recognizes the tort of wrongful failure-to-promote." *Mintz v. Bell Atl. Sys. Leasing Int'l, Inc.*, 183 Ariz. 550, 553, 905 P.2d 559, 562 (Ct. App. 1995)

HOUK LAW FIRM, PLLC
1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282
Telephone: 480.569.2377 - Fax: 480.569.2379

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

can the supervisor.[26] Here, Sandra's claim is wrongful termination, not wrongful promotion, and, unlike in *Mintz*, Defendant City of Flagstaff is not contesting that it could be liable for the tort at issue.

Tadder also cites *Wallace v. Casa Grande Union High Sch. Dist. No. 82 Bd. of Governors*.[27] For the same reasons that *Mintz* is not applicable here, Wallace—which relies on *Mintz*—is also not persuasive. In *Wallace*, a school teacher's contract was not renewed by the Superintendent. The court held, citing *Mintz*, that because the school District could not be held liable for the non renewal, neither could the Superintendent. Again, here, Defendant City of Flagstaff makes no argument that it is not potentially liable for the alleged wrongful termination.

Finally, Defendant's citation to *Barrow v. Arizona Bd. of Regents*[28] is also misplaced. *Barrow* relied on *Payne v. Pennzoil Corp.,*[29] which is a pre Wagonseller case and thus not applicable, as well as *Lindsey v. Dempsey,*[30] which is distinguishable because, unlike here, as noted below, no evidence of improper motive was alleged by Plaintiff.

## 2. Tadder Engaged in Improper Conduct.

Tadder engaged in improper conduct for the purpose of the intentional inference claim.

---

[26] "If Bell Atlantic cannot be liable in tort for [supervisor] Schoenlank's failure to promote Mintz, neither can Schoenlank." *Mintz v. Bell Atl. Sys. Leasing Int'l, Inc.*, 183 Ariz. 550, 556, 905 P.2d 559, 565 (Ct. App. 1995).
[27] 184 Ariz. 419, 428, 909 P.2d 486, 495 (Ct. App. 1995).
[28] 158 Ariz. 71, 78, 761 P.2d 145, 152 (Ct. App. 1988).
[29] 138 Ariz. 52, 672 P.2d 1322 (App.1983).
[30] "In this case, Lindsey has produced no evidence of any improper motive or action by Dempsey." 153 Ariz. 230, 233, 735 P.2d 840, 843 (Ct. App. 1987).

Houk Law Firm, PLLC
1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282
Telephone: 480.569.2377 - Fax: 480.569.2379

[W]rongful conduct can be analyzed by considering seven factors previously advanced by this court:

(a) the nature of the actor's conduct,
(b) the actor's motive,
(c) the interests of the other with which the actor's conduct interferes,
(d) the interest sought to be advanced by the actor,
(e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other,
(f) the proximity or remoteness of the actor's conduct to the interference, and
(g) the relations between the parties.[31]

"Factors deserving the most weight are the nature of the actor's conduct and the actor's motive."[32] "Conduct specifically in violation of statutory provisions or contrary to public policy may for that reason make an interference improper."[33]

Here, Tadder's conduct was improper when he forced Sandra's termination. He acted out of animus toward Sandra with regard to her gender and age, along with retaliatory intent, violating statutes that prohibit age and sex discrimination and retaliation. For example,

- Despite great performance,[34] Tadder created a hostile work environment for Sandra and other women for years, treating men better than women.[35]

---

[31] *Wells Fargo Bank v. Arizona Laborers, Teamsters & Cement Masons Local No. 395 Pension Tr. Fund*, 201 Ariz. 474, 494, 38 P.3d 12, 32 (2002), *as corrected* (Apr. 9, 2002) citing *Wagenseller* at 387, 710 P.2d at 1042 (quoting Restatement (Second) of Torts § 767 (1979))

[32] *Wells Fargo Bank v. Arizona Laborers, Teamsters & Cement Masons Local No. 395 Pension Tr. Fund*, 201 Ariz. 474, 494, 38 P.3d 12, 32 (2002), *as corrected* (Apr. 9, 2002)

[33] *Wells Fargo Bank v. Arizona Laborers, Teamsters & Cement Masons Local No. 395 Pension Tr. Fund*, 201 Ariz. 474, 494–95, 38 P.3d 12, 32–33 (2002), *as corrected* (Apr. 9, 2002) citing Restatement (Second) of Torts § 767 cmt. c (1979)) (finding that failing to follow banking practices and regulations could form the basis of an interference claim).

[34] Complaint ¶¶ 12-17.

[35] Complaint ¶¶ 15-37.

- During dinner at a work trip in October 2019, Sandra opposed Tadder's continued harassment, informing Tadder that she'd be contacting HR the next morning about his harassment, which she did.[36]

- Tadder contacted HR saying Sandra resigned—despite the fact she had not—and the very next morning, HR informed Sandra that the City accepted Sandra's resignation.[37]

- Though the City Manager reinstated Sandra's employment, ultimately Tadder's account of the work trip was accepted and the City forced Sandra to resign.[38]

- The City transferred Sandra's job duties to someone about 27 years younger than her.[39]

Tadder's sexist, ageist, and retaliatory motives for getting rid of Sandra is properly characterized as improper for the purpose of the interference claim.

### 3. Tadder Caused the Interference When He Caused Sandra's Forced Separation from City employment.

Tadder's remaining arguments are essentially that Tadder didn't cause Sandra's separation from the City. But, there is ample factual support that Tadder's actions did indeed cause Sandra's termination.[40] Tadder's report to HR caused plaintiff's termination. Following

---

[36] Complaint ¶¶ 38-43.
[37] Complaint ¶ 44.
[38] Complaint ¶¶ 45-51.
[39] Complaint ¶¶ 52-54.
[40] It's clear that forcing someone to quit is a termination. "To be sure, a constructive discharge is functionally the same as an actual termination in damages-enhancing respects." *Pennsylvania State Police v. Suders*, 542 U.S. 129, 148 (2004); "A claim of constructive discharge will be sustained if the district court finds that a reasonable person in a similar situation would have felt that he was forced to quit because of intolerable and discriminatory working conditions."; *Ford v. Alfaro*, 785 F.2d 835, 841 (9th Cir. 1986) ("[a]n employer cannot do constructively what the act prohibits his doing directly.") (quotations or citations omitted). Moreover, a claim of constructive discharge requires proof that the plaintiff's "working conditions were so intolerable that a reasonable person would have been

HOUK LAW FIRM, PLLC
1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282
Telephone: 480.569.2377 - Fax: 480.569.2379

Page 9 of 11

HOUK LAW FIRM, PLLC
1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282
Telephone: 480.569.2377 - Fax: 480.569.2379

submission of the Tadder's report, the City forced Sandra to choose between resigning and being terminated. The timing between Sandra's complaint about  Tadder's sex-based harassment (October 2019), Tadder's same-day communication to HR falsely stating Sandra resigned from the City (October 2019), and Sandra's forced resignation  in November 2019 (effective December 2019) is key evidence that Tadder's communications had a direct impact on the City forcing Sandra's ultimate termination.[41]

### III.    Motion for Leave to Amend the Complaint.

In the alternative, if the Court does not deny the Motion to Dismiss, Sandra respectfully requests that this Court grant her leave to Amend the Complaint. "Leave to amend must be freely given when justice requires."[42] Amendments to a pleading should be liberally granted.[43] A denial for leave to amend is granted only where there exists "undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments or undue prejudice."[44] "The merits or facts of the controversy are not to be decided in the consideration of a motion to amend."[45]

---

compelled to resign."; *MacLean v. State Dep't of Educ.*, 195 Ariz. 235, 245, 986 P.2d 903, 913 (Ct. App. 1999), *as corrected* (Aug. 27, 1999) (citation omitted).

[41] *Passantino v. Johnson & Johnson Consumer Products, Inc.*, 212 F.3d 493, 507 (9th Cir. 2000) ("[W]e have held that evidence based on timing can be sufficient to let the issue go to the jury, even in the face of alternative reasons proffered by the defendant."); *Scott v. Mabus*, 618 F. App'x 897, 902 (9th Cir. 2015) ("The district court erred by stating that four months "is by itself insufficient" evidence of causation. We have previously held that "[d]epending on the circumstances, three to eight months is easily within a time range that can support an inference of retaliation.").

[42] Ariz. R. Civ. P. 15(a)(2).

[43] *Cagle v. Carr*, 101 Ariz. 225, 227, 418 P.2d 381, 383 (1966)
(This court has stated that amendments to pleadings should be granted with great liberality, so that cases may be decided on the merits rather than on mere technicalities of pleadings, and so long as the granting of the amendment does not prejudice the other party.).

[44] *Owen v. Superior Court of State of Ariz., In For Maricopa County*, 133 Ariz. 75, 79, 649 P.2d 278, 282 (1982).

[45] *Hernandez v. Maricopa County Superior Court*, 108 Ariz., 422, 501 P.2d 6 (1972).

HOUK LAW FIRM, PLLC
1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282
Telephone: 480.569.2377 - Fax: 480.569.2379

If necessary, Sandra could add the following facts: Tadder recommended Sandra's termination on November 19, 2019 and Sandra's forced resignation by the City Manager occurred on November 19, 2019, effective December 2, 2019.

While Plaintiff does not believe further amendments are necessary to defeat the motion to dismiss, should the Court be inclined to grant the motion to dismiss, Plaintiff requests the opportunity to cure any deficiency with an opportunity to amend the Complaint.

## IV.     Conclusion

Motions to dismiss in Arizona are disfavored with good reason. There is a lot to learn during the discovery process. Here, sufficient facts have been pled to place Tadder on notice of Sandra's claims. Alternatively, if additional facts are needed, Sandra respectfully requests to amend the complaint.

DATED this 21st day of December, 2020.

By: /s/Christopher R. Houk
Christopher R. Houk
*Attorney for Plaintiff*

**ORIGINAL** of the foregoing e-filed
with the Court this 21st day of December 2020
and a copy emailed to:

Gordon Lewis
**JONES, SKELTON & HOCHULI, P.L.C.**
40 North Central Avenue, Suite 2700
Phoenix, Arizona 85004
*Attorneys for Defendants*

/s/Christopher R. Houk
Christopher R. Houk

1   Gordon Lewis, Bar #015162
    JONES, SKELTON & HOCHULI, P.L.C.
2   40 North Central Avenue, Suite 2700
    Phoenix, Arizona  85004
3   Telephone:  (602) 263-7341
    Fax:  (602) 200-7897
4   glewis@jshfirm.com
    minuteentries@jshfirm.com
5
    Attorneys for Defendants Richard Tadder and
6   Amanda Tadder

7
                    **SUPERIOR COURT OF THE STATE OF ARIZONA**
8
                              **COUNTY OF COCONINO**
9

10  SANDRA (CORDER) MATLOCK,              NO. S0300CV202000504

11                          Plaintiff,   **DEFENDANTS RICK AND AMANDA**
                                         **TADDER'S REPLY IN SUPPORT OF**
12         v.                            **MOTION TO DISMISS**

13  CITY OF FLAGSTAFF, a municipal       (Assigned to the Honorable Catherine Brown
    corporation, RICHARD TADDER and      Nichols)
14  AMANDA TADDER, wife and husband,
                                         (Oral Argument Requested)
15                          Defendants.

16
17          Defendants Rick Tadder and Amanda Tadder ("the Tadders") submit their Reply

18  in Support of their Motion to Dismiss.

19  **I.     PRELIMINARY STATEMENT**

20          This is a tortious interference with contract case. The Plaintiff must allege that a

21  third party interfered with her employment contract with the City of Flagstaff.  Rick Tadder,

22  however, was Plaintiff's supervisor, and the actions alleged took place within the course and

23  scope of his employment.  Under Arizona law, this makes him the employer for purposes of an

24  intentional interference with contract claim, and there is no "third party" that would allow the

25  claim to move forward.

9015754.1

To state a claim, Plaintiff must also allege that Mr. Tadder engaged in improper conduct. The "improper" conduct alleged in the Complaint, however, is that Mr. Tadder told the City of Flagstaff Human Resources Department about a text Plaintiff sent him saying that she resigned. (Complaint at ¶43). This is not improper conduct. It cannot form the basis for a tortious interference with contract claim.

Plaintiff also alleges that, following Mr. Tadder's report of her text, the City (a) rejected the alleged resignation, (b) conducted its own investigation into Plaintiff's conduct at a conference, (c) concluded that it would recommend termination for Plaintiff's conduct, and (d) Plaintiff again resigned. (Complaint at ¶¶44-46, 51). Rick Tadder's report, therefore, did not cause Plaintiff's eventual resignation, and the report of the text cannot form the basis of a tortious interference with contract claim.

Plaintiff's response fails to articulate a cognizable argument for how the elements for a tortious interference with contract claim are met in this case. Instead, she makes conclusory statements that are not reasonable inferences drawn from the factual assertions. There is no basis for Plaintiff to claim she was "forced" to resign, there is no basis to infer that Plaintiff did not "intend" to resign, and the facts alleged in the Complaint do not allow an inference that Rick Tadder's report of text message had any influence on Plaintiff's employment relationship. On the factual allegations made in this matter, the Tadders are entitled to dismissal of Plaintiff's tortious interference with contract claim, and thus on the Complaint in its entirety.

## II.  UNDER ARIZONA LAW, A SUPERVISOR ACTING WITHIN THE COURSE AND SCOPE OF EMPLOYMENT CANNOT INTERFERE WITH A SUBORDINATE'S EMPLOYMENT CONTRACT.

As an initial and dispositive matter, Rick Tadder's undisputed status as the Plaintiff's supervisor defeats the claim of intentional interference with contract. Plaintiff's Complaint acknowledges that Mr. Tadder was Plaintiff's supervisor, and the acts in the complaint all occurred within the scope of Mr. Tadder's management responsibilities. Under Arizona law, a claim for intentional interference with a plaintiff's employment contract cannot

2

1    be based on the actions of a fellow employee or supervisor acting within the scope of his or her

2    employment. *See Barrow v. Ariz. Bd. of Regents*, 158 Ariz. 71, 78, 761 P.2d 145, 152

3    (App.1988).  Because Tadder was acting within the course and scope of his employment, the

4    tortious interference with contract claim against him must be dismissed.

5            Plaintiff attempts to avoid this result by claiming that *Wagenseller v. Scottsdale*

6    *Memorial Hospital*, 147 Ariz. 370, 710 P.2d 1025 (1985), stands for the proposition that a

7    supervisor acting in the course and scope of employment can nonetheless interfere with his

8    subordinate's employment contract. (Response at pg. 6).  Several Arizona cases following

9    *Wagenseller*, however, have held that managers -- acting within the scope of their authority as a

10   management representative -- are in effect the employer, and cannot interfere with the

11   employer's contract. *See, e.g., Lindsey v. Dempsey*, 153 Ariz. 230, 735 P.2d 840 (App.1987);

12   *Barrow,* 158 Ariz. at 78, 761 P.2d at 152; *Higgins v. Assmann Electronics, Inc.*, 217 Ariz. 289,

13   293 ¶9, 173 P.3d 453, 457 (App. 2007) ("Cases addressing intentional interference with contract

14   claims have held that when an individual supervisor/defendant was acting within the scope of

15   authority as a management representative, he or she was, in effect, the employer, and could not

16   interfere with his or her own contract.").

17           In *Barrow,* the Arizona Court of Appeals -- fully cognizant of the *Wagenseller*

18   decision -- concluded that individual defendants acting within the scope of their authority as

19   management representatives cannot be liable for intentional or improper interference with the

20   employer's employment contract. In that case, a university professor's teaching contract was

21   suspended, and the professor alleged that the university president and other employees had

22   intentionally interfered with his employment contract. The trial court granted summary

23   judgment, finding that each of these individuals had acted within the scope of his or her

24   management responsibilities. The Court of Appeals, after citing *Wagenseller* (for the elements

25   of an intentional interference claim), upheld the grant of summary judgment, stating:

26

3

1
2
3
4
5
6
7
8

> This case is like that of *Payne v. Pennzoil Corp.*, 138 Ariz. 52, 672 P.2d 1322 (App.1983), in which the plaintiff also failed to produce any evidence that the defendants were acting other than within the scope of their authority as management representatives. <u>The court held that since the facts showed the employees were acting for the company, they were the company and thus could not interfere with their own contract.</u> Barrow contends that since none of the individual appellees ordered his suspension, they cannot be said to be the Board of Regents for purposes of this cause of action. He fails to remember that the actions of appellees of which he complains were that they improperly instigated the proceedings which ultimately led to his suspension. <u>Thus, in that instance they were the Board of Regents and could not interfere with their own contract.</u> *See also Lindsey v. Dempsey*, 153 Ariz. 230, 735 P.2d 840 (App.1987). We find that the trial court properly granted summary judgment on that cause of action.

9

*Barrow,* 158 Ariz. at 78, 761 P.2d at 152 (emphasis added).

10
11
12
13
14
15
16
17

The Plaintiff's attempt to distinguish *Barrow* is unavailing. The Court of Appeals, fully cognizant of the *Wagenseller* decision, held that supervisors who act within the scope of their authority as management representatives cannot interfere with their own contract. Indeed here, as in *Barrow*, Plaintiff claims that Mr. Tadder's improper conduct is instigating the investigation that led to Plaintiff's resignation. In such an instance, Mr. Tadder was the City of Flagstaff, and could not interfere with the City's contract. None of the facts presented in the Complaint show that Mr. Tadder acted outside the scope of his authority in management, and he is not a third party for purposes of her intentional interference with contract claim.

18
19
20
21
22
23
24

More recently, the court of appeals confirmed the principle that a supervisor acting within the scope of his or her employment cannot be liable for intentional interference with an employment contract. In *Aubuchon v. Brock,* 2015 WL 2383820 (Ariz.App. May 14, 2015) (memorandum decision)[1], the Court of Appeals considered a deputy county attorney's request to amend her complaint to allege that her supervisors intentionally interfered with her employment contract. The court of appeals rejected the proposed amendment, stating:

25
26

---

[1] This memorandum decision is presented as persuasive authority pursuant to Arizona Rule of the Supreme Court 111(c)(1)(C). A copy of the decision is attached as Exhibit A to this Reply pursuant to Arizona Rule of the Supreme Court 111(c)(3).

4

Plaintiffs' proposed second amended complaint claimed "tortious interference of contract," "inducing breach of contract," and "interference with contractual relations" related to Aubuchon's employment contract. Construing the complaint liberally, as we must, we treat these allegations as an assertion of a claim for intentional interference with contractual relations…. The interferer must be a third party to the contractual relationship or business expectancy. [Cite omitted]. <u>A claim for intentional interference with a plaintiff's employment contract therefore cannot be based on the actions of a fellow employee or supervisor acting within the scope of his or her employment.</u> *See Barrow v. Ariz. Bd. of Regents*, 158 Ariz. 71, 78, 761 P.2d 145, 152 (App.1988); *Mintz*, 183 Ariz. at 555–56, 905 P.2d at 564–65.

As we explained above, Plaintiffs' second amended complaint alleged that the County was vicariously liable for conduct taken by individual defendants within the scope of their employment, and <u>Plaintiffs did not allege that the breach of Aubuchon's employment contract was caused by actions taken outside of the scope of employment. On this ground alone, Plaintiffs failed to state a claim for intentional interference with contractual relations.</u> The superior court correctly concluded that the claim was futile.

*Aubuchon*, 2015 WL 2383820 *11 ¶¶42-43 (emphasis added).

Here, the Plaintiff has not alleged -- and cannot allege -- that Mr. Tadder acted outside the course and scope of his employment. Therefore, Plaintiff cannot state a claim for intentional interference with contract. The claim against the Tadders should be dismissed.

## III.    <u>MR. TADDER DID NOT ENGAGE IN IMPROPER CONDUCT WHEN HE FORWARDED PLAINTIFF'S RESIGNATION TO THE CITY'S HUMAN RESOURCES DEPARTMENT.</u>

A claim for tortious interference with an employment contract requires a showing that the third party acted improperly. *Wells Fargo Bank v. Arizona Laborers, Teamsters & Cement Masons Local No.395 Pension Tr. Fund*, 201 Ariz. 474, 494, 38 P.3d 12, 32 (2002), Even assuming *arguendo* that Mr. Tadder is a third party, his conduct – as alleged --  was not improper.

In her Complaint, Plaintiff acknowledges that she sent Mr. Tadder a text message claiming that she no longer reported to him because she had "submitted [her] resignation." (*See* Complaint at ¶ 43). Mr. Tadder then informed the City's Human Resources Department of Plaintiff's text message. (*See* Complaint at ¶ 44). In order to support the notion that Rick Tadder

5

1 interfered with Plaintiff's employment, in a manner that would give rise to tort liability, this act
2 must have been "improper"

3 　　　　　　But Rick Tadder's conduct, as alleged in the Complaint, is not "improper" as a
4 matter of law.  Rick Tadder was the Plaintiff's supervisor. He received a communication from
5 the Plaintiff, where she stated that she resigned her position. (*See* Complaint at ¶ 43). He told the
6 City's Human Resources Department that Plaintiff communicated her intent to resign. There is
7 no set of circumstances that could transform this act into tortious and improper conduct.

8 　　　　　　Allowing this claim to proceed would be devastating for supervisors in the State.
9 If the matters alleged in this complaint state a claim for tortious interference with contract, then
10 any supervisor who forwards a resignation communication could be subject to individual
11 liability -- and could be forced to personally defend a lawsuit from a subordinate -- if the
12 subordinate changes her mind about her resignation decision. Supervisors would be in constant
13 fear of lawsuits for merely reporting on the communication of an employee. This cannot be the
14 state of the law, and Mr. Tadder's report of Plaintiff's communication cannot be deemed
15 "improper."

16 　　　　　　Plaintiff attempts to bolster the alleged impropriety of reporting her text message
17 by asserting that Mr. Tadder created a hostile work environment for her. This is her conclusion.
18 The facts alleged in the Complaint, however, do not support a conclusion that Mr. Tadder's
19 alleged conduct created an actionable hostile work environment.

20 　　　　　　In the Complaint, Plaintiff alleges that Mr. Tadder did not train her on his
21 expectations, gave her negative feedback, unreasonably criticized her work, rolled his eyes at
22 her, yelled at her, shrugged his shoulders at her, laughed and shook his head in disdain, and tried
23 to take the credit for one of her ideas in a meeting. (Complaint at ¶¶ 20, 21, 25, 31-33). It is not
24 "improper", however, for a supervisor to criticize a subordinate's work.  A supervisor "rolling
25 eyes" at an employee or ignoring an employee's suggestion does not support a personal tort
26 action against the supervisor for interference with contract.

9015754.1

While these other allegations are mentioned, the act that is alleged to have caused the ultimate resignation is the reporting of the text message. It is this act that must be evaluated for propriety, and there is no universe where it could be deemed improper for a supervisor, who has received a communication from an employee stating that the employee resigns, to forward that communication to the human resources department.

To be clear, the Plaintiff does not allege that she didn't <u>say</u> she resigned, she just alleges that she didn't <u>mean</u> it. She claims that Mr. Tadder should have understood that she didn't really mean to resign, and should not have told Human Resources about her communication. The law does not require Mr. Tadder to be clairvoyant about the Plaintiff's state of mind, and regardless of her intentions, it is completely proper for a supervisor to report to human resources that an employee has stated that they resign. The claim against the Tadders must be dismissed.

## IV. MR. TADDER'S REPORT ABOUT THE TEXT MESSAGE DID NOT CAUSE A BREACH OF CONTRACT.

Plaintiff's Response concludes with a blanket argument that Mr. Tadder caused the interference with Plaintiff's employment contract when he "caused [Plaintiff's] forced separation from City employment." *See* Plaintiff's Response to the Motion to Dismiss at 9:13-15. This argument completely disregards, and is logically inconsistent with, the facts alleged in the Complaint.

In her Complaint, Plaintiff admits that she informed Mr. Tadder that she had, of her own accord, resigned from City employment. (*See* Complaint at ¶ 43). She then acknowledges that Mr. Tadder informed the City's Human Resources Department of Plaintiff's communication. (*See* Complaint at ¶¶ 43, 44, and 56). However, Plaintiff then admits that the City did not act on Mr. Tadder's communication of her text. (*See* Complaint at ¶¶ 44-46). Instead, The City rescinded Plaintiff's resignation, placed her on administrative leave, and conducted an investigation into the circumstances surrounding her conduct at the conference. (*See* Complaint at ¶ 45). It was only after the City completed its investigation and informed

Plaintiff of its conclusion that Plaintiff decided to resign her employment. (Complaint at ¶51). This City's rejection of the initial resignation communication and independent investigation breaks the causal chain that connects Mr. Tadder's report to the Plaintiff's ultimate resignation.

Plaintiff's characterization of her departure from City employment as a "forced separation" is a conclusion. It is not a fact. It does not have to be accepted by the Court, and it is not a reasonable interference from the fact she alleged that led up to her resignation. *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009) (Legal conclusions couched as factual allegations are not entitled to the assumption of truth). The alleged facts -- (1) Mr. Tadder informed the City of the text message, (2) Plaintiff then said she did not wish to resign, (3) the City then rescinded the resignation, (4) the City investigated the underlying incident, (5) the City recommended termination of Plaintiff's employment after its investigation, and (6) after hearing the recommendation Plaintiff chose to resign -- does not allow for a conclusion that Mr. Tadder caused Plaintiff to resign, much less that Mr. Tadder "forced" Plaintiff to resign.

Plaintiff's Response does not address proximate causation in any way. Rather, Plaintiff asserts that Mr. Tadder's actions could support a claim for constructive discharge. (Response at pgs. 9-10). Plaintiff, however, has not brought a claim of constructive discharge against Mr. Tadder. The analysis applicable to a constructive discharge claim is irrelevant to the causation requirement in a tortious interference with contract claim. Here, to show causation, Plaintiff must plead facts that would demonstrate "a natural and continuous sequence of events stemming from the defendant's act or omission, unbroken by any efficient intervening cause, that produces an injury." *Robertson v. Sixpence Inns of America, Inc.*, 163 Ariz. 539, 546, 789 P.2d 1040, 1047 (1990). Based on the reasonable inferences that can be drawn from the alleged facts, Mr. Tadder's conduct was not the cause of Plaintiff's resignation, and the tortious interference with contract claim must be dismissed.

9015754.1

## V.    A THIRD PARTY DID NOT BREACH A CONTRACT, AS REQUIRED TO STATE A CLAIM FOR TORTIOUS INTERFERENCE WITH CONTRACT

Plaintiff is attempting to create a claim that does not exist: "constructive intentional interference with contract." In order to state a claim for intentional interference with contract, you must have "intentional interference by the defendant which causes <u>the third party</u> to breach the contract." *Barrow v. Arizona Bd. of Regents,* 158 Ariz. 71, 78, 761 P.2d 145, 152 (App. 1988) (emphasis added). On the alleged facts, the third-party did not breach the contract. Plaintiff terminated the agreement, not the City. Plaintiff resigned. While she alleges that her resignation was "caused" by Rick Tadder's actions, the breach was committed by her-- not a third party. Because Mr. Tadder's conduct did not cause a breach by a third party, the Tadders are entitled to dismissal of the intentional interference with contract claim.

## VI.    AMENDMENT WILL NOT CURE THE DEFECTS IN PLAINTIFF'S COMPLAINT

Finally, Plaintiff asserts that she could make additional factual allegations in the hopes of avoiding dismissal of her Complaint against Rick Tadder. She cannot, however, amend the Complaint to change the fact that Rick Tadder was her supervisor and was acting within the course and scope of his employment.  She also cannot amend the Complaint to change the fact that she herself terminated the employment relationship, and there is no such thing as "constructive intentional interference with contract." No proposed amendment would create a circumstance where a third party interfered with the employment relationship (Tadder was Plaintiff's supervisor acting within the scope of his employment), and no proposed amendment would create a circumstance where a third party breached the employment relationship (it was the Plaintiff who resigned). It is impossible to amend the Complaint to state a claim for intentional interference with contract in this matter, and it would be futile for Plaintiff to attempt to do so. Plaintiff's intentional interference with contract claim should be dismissed, and Plaintiff's suggestion that the Complaint could be amended should be rejected.

9

9015754.1

VII.    **CONCLUSION**

Based on the foregoing, the Tadders respectfully request that the Court dismiss Plaintiff's claim for tortious interference with a contract, and award them their attorneys' fees incurred in defending this matter pursuant to A.R.S. §12-341.01.

DATED this 4th day of January, 2021.

JONES, SKELTON & HOCHULI, P.L.C.

By /s/ Gordon Lewis
Gordon Lewis
40 North Central Avenue, Suite 2700
Phoenix, Arizona  85004
Attorneys for Defendants Richard Tadder and
Amanda Tadder

ORIGINAL of the foregoing electronically filed
this 4th day of January, 2021.

COPY of the foregoing mailed/e-mailed
this 4th day of January, 2021, to:

Cheri L. McCracken
705 E. Coronado Road
Phoenix, AZ 85006-04733

Christopher R. Houk
HOUK LAW FIRM, PLLC
1050 East Southern Avenue, Suite A-3
Tempe, AZ 85282

Attorneys for Plaintiff

/s/ Jennifer Bernardo

10

9015754.1

| | |
|---|---|
| **From:** | GORDON LEWIS |
| **To:** | Jennifer Bernardo |
| **Subject:** | FW: E-Filing Status: Form Set # 5294668 Delivered |
| **Date:** | Monday, January 4, 2021 2:17:01 PM |

---

**From:** TurboCourt Customer Service
**Sent:** Monday, January 4, 2021 2:16:55 PM (UTC-07:00) Arizona
**To:** GORDON LEWIS
**Subject:** E-Filing Status: Form Set # 5294668 Delivered

PLEASE DO NOT REPLY TO THIS EMAIL.

AZTurboCourt Form Set # 5294668 has been DELIVERED to Coconino County - Superior Court.

You will be notified when your documents have been processed by the court.

You MUST log in and check your filing status online at http://turbocourt.com/.

Here are your filing details:
Case Number: S0300CV202000504 (Note: If this filing is for case initiation, you will receive a separate notification when the case # is assigned.)

Case Title: SANDRA MATLOCK PLAINTIFF vs CITY OF FLAGSTAFF, A MUNICIPAL CORPORATION et al. DEFENDANT

Filed By: Gordon Lewis

AZTurboCourt Form Set: #5294668
AOC Submission ID #1354598

Keyword/Matter #: 16799-00044
Delivery Date and Time: Jan 04, 2021 2:16 PM MST

Forms:
Summary Sheet (This summary sheet will not be filed with the court. This sheet is for your personal records only.)

Attached Documents:
Reply: Reply: Defendant Reply In Support Of Motion to Dismiss Tadder

Fees Paid:

Total Filing Fees: $0.00
Provider Fee: $6.50
E-Payment Fee: $0.20
Total Amount Paid: $6.70

You MUST log in and check your filing status and the e-service status of this form set online at http://turbocourt.com/.

If you have questions about your filing, please contact AOC Support Services, phone number 602-452-3519 or 1-800-720-7743, or e-mail pasupport@courts.az.gov.

Please have your AZTurboCourt Form Set # and AOC Submission ID available.

**EXHIBIT A**

2015 WL 2383820
Only the Westlaw citation is currently available.
NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME
COURT 111(c), THIS DECISION IS NOT
PRECEDENTIAL AND MAY BE CITED
ONLY AS AUTHORIZED BY RULE.
Court of Appeals of Arizona,
Division 1.

Lisa M. AUBUCHON and Peter R. Pestalozzi,
wife and husband; David Hendershott and Anna
Hendershott, husband and wife, Plaintiffs/
Appellants; Edward Moriarity; Moriarity,
Badaruddin & Booke, LLC, Appellants,

v.

Supervisor Fulton BROCK; Supervisor Andrew
Kunasek; Supervisor Donald Stapley; Supervisor
Mary Rose Wilcox; Supervisor Max Wilson;
County Manager David Smith; Assistant County
Manager Sandi Wilson; former Maricopa County
Attorney Richard Romley; County Attorney
William Montgomery; Paul Ahler; Mark Faull;
Maricopa County; Edward Novak; Thomas Irvine;
Polsinelli Shughart PC, Defendants/Appellees.

No. 1 CA–CV 13–0451.
|
May 14, 2015.

Appeal from the Superior Court in Maricopa County;
No. CV2011–014754; The Honorable Sally Schneider
Duncan, Judge. AFFIRMED IN PART, REVERSED AND
REMANDED IN PART, VACATED IN PART, VACATED
AND REMANDED IN PART.

**Attorneys and Law Firms**

Lisa M. Aubuchon, Tempe, for Plaintiff/Appellant.

Edward P. Moriarity, Missoula, MT, for Appellant.

Swenson Storer Andrews & Frazelle, P.C., by Michael J.
Frazelle, Phoenix, Counsel for Defendants/Appellees Brock,
Kunasek, Stapley, Wilcox, M. Wilson, Smith, S. Wilson,
Romley, Ahler.

Dickinson Wright PLLC, by Victoria Orze, Anne L. Tiffen,
Phoenix, Counsel for Defendants/Appellees Montgomery,
Faull.

Sacks Tierney P.A., Scottsdale by James W. Armstrong,
Jeffrey S. Leonard, for Counsel for Defendant/Appellee
Maricopa County.

Polsinelli PC, By Thomas K. Irvine, Andrew S. Jacob,
Phoenix, Counsel for Defendants/Appellees Novak, Irvine,
Polsinelli Shughart PC.

Presiding Judge PETER B. SWANN delivered the decision
of the court, in which Judge KENTON D. JONES and Judge
MICHAEL J. BROWN joined.

**MEMORANDUM DECISION**

SWANN, Judge.

**\*1** ¶ 1 This lawsuit was filed in the aftermath of a
series of disputes between the Maricopa County Board of
Supervisors and the Maricopa County Attorney's Office.
After plaintiff Lisa Aubuchon, a high-ranking Maricopa
County prosecutor,[1] was terminated from her employment,
she and former Maricopa County Sheriff's deputy David
Hendershott brought a number of claims seeking damages
against the county, various public officials and a law firm
that the county had retained. The superior court dismissed the
action, and awarded sanctions against the plaintiffs.

¶ 2 This appeal requires us to decide whether the superior
court erred by determining that claims set forth in the
plaintiffs' proposed second amended complaint were futile,
and by imposing attorney's-fees awards against the plaintiffs
as sanctions. We affirm the court's determination of futility
with respect to the majority of the claims but conclude
that the claims for breach of contract and breach of the
covenant of good faith and fair dealing were sufficiently pled.
We further hold that while the plaintiffs clearly engaged in
sanctionable conduct, the final calculation of the amount of
sanctions in favor of the county must await the conclusion
of the case on remand. Finally, we hold that while the court
properly awarded sanctions in favor of a self-represented
law firm, the measure of those sanctions that the trial court
employed conflicts with recent case law, and the sanctions
must therefore be recomputed.

### FACTS AND PROCEDURAL HISTORY

¶ 3 In August 2011, Aubuchon, Hendershott, and their spouses (collectively, "Plaintiffs") commenced an action against multiple defendants: Maricopa County ("the County"); the Maricopa County Board of Supervisors ("the MCBOS"); the Maricopa County Attorney's Office ("the MCAO"); County officials, employees, or contractors Fulton Brock, Andrew Kunasek, Donald Stapley, Mary Rose Wilcox, Max Wilson ("M.Wilson"), Richard Romley, William Montgomery, David Smith, Sandi Wilson ("S.Wilson"), Paul Ahler, Mark Faull, and Katherine Baker (collectively, "the County officials and employees"); the State of Arizona ("the State"); State officials Terry Goddard and Thomas Horne (collectively, "the State officials"); and the law firm of Polsinelli Shughart, P.C., and its members Edward Novak and Thomas Irvine (collectively, "the Polsinelli defendants"). Plaintiffs were represented in the action by the law firm of Moriarity, Badaruddin & Booke, LLC ("the Moriarity Firm"), and all of their pleadings and proposed pleadings were signed by Moriarty Firm attorney Edward P. Moriarity.

¶ 4 All of the defendants moved to dismiss Plaintiffs' first amended complaint, arguing that it violated the basic pleading standards of Rule 8 and was subject to dismissal under Rule 12(b)(6) for failure to state claims. Some of the defendants argued that the complaint also violated the pleading standard prescribed by Rule 10(b). The MCBOS and the MCAO further argued that they were immune from suit as non-jural entities, and the Polsinelli defendants argued that dismissal was warranted under A.R.S. § 12–752. The Polsinelli defendants also stated that they intended to seek sanctions under Rule 11 and A.R.S. §§ 12–349 and –752.

*2 ¶ 5 Plaintiffs disputed that the first amended complaint was deficient, but posited that they would be able to cure any defects if granted leave to amend. At oral argument on the motions to dismiss, Plaintiffs' counsel did not argue the merits of the motions. Instead, he simply stated:

> I'm wondering if I could make a suggestion that could cut this thing way short. I've gone through in detail and looked at all of the arguments and matters as set forth by the Defendants, and if the Court were to deem these say ten or 15 days to file an amended complaint, I think that we can resolve probably almost everything that they are complaining about.

¶ 6 In response to this statement, the court explained that it agreed with the defendants that the first amended complaint violated Rules 8 and 10, and that it was concerned that dismissal might be warranted under Rule 12(b)(6). Specifically, the court indicated that it was skeptical about claims of legal malpractice in the absence of allegations of an attorney-client relationship, as well as about claims of defamation arising out of privileged complaints filed with the State Bar of Arizona. The court allowed Plaintiffs to file a motion seeking leave to amend, but warned that the motion and proposed second amended complaint would need to comply with the rules of civil procedure. The court further stated that it was "not ready to make th[e] decision" regarding whether sanctions were warranted, explaining that "depending on what happens there may or may not be sanctions that are appropriate" and that "[i]f there is a violation of Rule 11, and I have given due process warning as far as I'm concerned, sanctions can attach to any further action." The court granted the MCBOS and the MCAO's request for dismissal based on their non-jural status but otherwise denied the defendants' motions to dismiss, without prejudice.

¶ 7 In February 2012, Plaintiffs filed their motion for leave to file a second amended complaint. The proposed second amended complaint attached to the motion eliminated several of the remaining defendants from the caption, namely: Faull, Baker, the State, the State officials, and the Polsinelli defendants. The defendants who remained in the proposed second amended complaint objected to the motion for leave to amend, arguing that the motion did not comply with Rule 7.1, that the proposed amendments did not comply with the applicable pleading standards, and that the proposed amendments were futile. The Polsinelli defendants filed a renewed motion to dismiss the first amended complaint (alternatively styled a motion for judgment on the pleadings) and requested sanctions under Rule 11 and A.R.S. § 12–349.

¶ 8 In May 2012, after holding oral argument, the court denied Plaintiffs' motion for leave to amend. The court found that Plaintiffs' motion did not comply with Rule 7.1 and that "even if filed in compliance with the Arizona Rules of Civil Procedure, [a]mendment would be futile because the claims are not legally viable." The court specifically

found that "Montgomery was not in office at the time the claims arose and/or the claims are futile," and that there was "no legal basis" for the defamation and intentional infliction of emotional distress ("IIED") claims related to Kunasek even assuming the truth of the allegations. The court also granted the Polsinelli defendants' motion for dismissal and sanctions, ordering dismissal with prejudice and directing the defendants to file an application for attorney's fees. The court found that such sanctions were appropriate because "[n]o legal or factual basis ever existed to file a Complaint against these defendants" and "the Complaint was filed for vexatious purposes."

 **\*3**  ¶ 9 The County and the County officials and employees (with the exception of Faull and Baker) subsequently requested attorney's fees as sanctions. The court granted these requests, ordered the dismissal with prejudice of "ALL named Defendants," and awarded the Polsinelli defendants the full amount of fees and costs they requested.

¶ 10 Before the court entered any appealable orders, Plaintiffs filed a motion for reconsideration regarding the court's award of fees and costs to the Polsinelli defendants, arguing that these defendants were not entitled to recover fees because they had represented themselves in the action. The court promptly set oral argument on the motion, but before the date set for argument, Plaintiffs filed a notice of appeal. This court dismissed the appeal as premature. Plaintiffs then filed an unsuccessful motion in the superior court for a change of judge for cause.

¶ 11 In May 2013, the court ultimately entered final, appealable Rule 54(b) judgments awarding approximately $185,000 in attorney's fees and costs to the Polsinelli defendants; approximately $35,000 in fees to the County; approximately $18,000 in fees to Montgomery; and approximately $17,000 in fees to Brock, Kunasek, Stapley, Wilcox, M. Wilson, Romley, Smith, S. Wilson, and Ahler.[2] Each of the judgments specified that the fees were awarded jointly and severally against Plaintiffs, the Moriarity Firm, and Moriarity. Plaintiffs, the Moriarity Firm, and Moriarity timely appeal.

## DISCUSSION

### I. PROPOSED SECOND AMENDED COMPLAINT
¶ 12 Plaintiffs do not challenge the dismissal of the first amended complaint except as it relates to the award of

sanctions. They argue only that they should have been allowed to file the proposed *second* amended complaint because not all of its claims were futile.

¶ 13 We review the denial of a motion to amend for abuse of discretion. *Hall v. Romero,* 141 Ariz. 120, 124, 685 P.2d 757, 761 (App.1984). It is within the court's discretion to deny a motion to amend based on futility in the proposed amendment. *Bishop v. State, Dep't of Corrs.,* 172 Ariz. 472, 474–75, 837 P.2d 1207, 1209–10 (App.1992). The determination of futility, however, is a question of law that we review de novo. *Carvalho v. Equifax Info. Servs., LLC,* 629 F.3d 876, 893 (9th Cir.2010). An amendment is futile if the proposed amended pleading would be subject to dismissal under Rule 12(b)(6) for failure to state a claim. *Miller v. Rykoff–Sexton, Inc.,* 845 F.2d 209, 214 (9th Cir .1988). Accordingly, in considering futility, all well-pled factual allegations and reasonable inferences in the proposed pleading must be taken as true. *See Cullen v. Auto–Owners Ins. Co.,* 218 Ariz. 417, 419, ¶ 7, 189 P.3d 344, 346 (2008).

¶ 14 We consider in turn each of the claims set forth in Plaintiffs' proposed second amended complaint and not otherwise waived.[3] We conclude that the superior court's determination of futility was correct with respect to Plaintiffs' claims for defamation, IIED, constructive fraud, and constitutional violations. But we hold that certain of Plaintiffs' contract-related claims were not futile, and we therefore reverse and remand with respect to these claims.

### A. The Proposed Second Amended Complaint's Defamation Claims Were Futile.
 **\*4**  ¶ 15 Plaintiffs' proposed second amended complaint purported to set forth claims for defamation based on statements attributed to Kunasek, Smith, and S. Wilson.[4] The claim regarding Kunasek was futile because his alleged statements were not actionable as a matter of law. The claim regarding Smith and S. Wilson was futile because the statements attributed to them were not sufficiently pled.

#### 1. The Statements Attributed to Kunasek Were Not Actionable.
¶ 16 Plaintiffs alleged that in a widely published letter, Kunasek made false statements regarding their involvement in an investigation of him. Specifically, Plaintiffs alleged that Kunasek wrote:

a. "Early this year, Sheriff Arpaio's top henchman, Chief Hendershott, and his cohorts in former County Attorney Andrew Thomas' office [where Aubuchon was employed as a deputy county attorney] brought a fabricated case to the Grand Jury accusing me of theft and participating in a widespread government conspiracy. They knew these charges were false and created them to achieve their political ends."

b. ... [A]n opinion by Sheila Polk "should have ended the ridiculous 'Bug Sweep' chapter in the ongoing saga being created by some of the most demented minds in law enforcement."

c. "Unable to obtain an indictment, he opted to smear my name."

d. "The County Attorney's actions were a vile and criminal abuse of his sworn duty to uphold the Constitution and laws of our state and nation."

e. "After seeing what they had done to Judge Donahoe, I knew these two would not hesitate to bring charges even without any evidence of a crime." ....

f. "After hours of hearing how bad my life was going to get, the free talk [held during the course of the investigation] took a bizarre turn. The prosecutor (Aubuchon) made it clear that I could avoid all the pain and shame if I chose another option-assuring the Sheriff and county Attorney that Thomas' successor or the process to select a successor would be acceptable to them!["]

g. "It would be as simple as assuring the Sheriff and County Attorney that Thomas' successor would be their choice."

h. "The personal 'incentive' to align myself with the Sheriff's and County Attorney's wishes was an effort to extort the Board's acquiescence to their plan to choose a replacement for Andrew Thomas ."

i. ... [T]he "grand jury demanded facts to support the charges, and finding none, not only refused to indict but unequivocally terminated the investigation."

j. "I believe that justice will be done and that these individuals will face indictment, trial,—and if an impartial jury of their peers sees fit, convicted and punished for their crimes."

Plaintiffs further alleged that during a television broadcast, Kunasek supplemented the letter with the following oral statement:

"As far as I'm concerned, it was pure extortion. It was, 'Give us what we want or we're going to ruin your life[.]' "

**\*5** ¶ 17 A defendant is subject to liability for defamation if he, with requisite scienter, [5] publishes a false and defamatory communication concerning the plaintiff to a third party. *Peagler v. Phoenix Newspapers, Inc.,* 114 Ariz. 309, 315, 560 P.2d 1216, 1222 (1977); *Dube v. Likins,* 216 Ariz. 406, 417, ¶ 36, 167 P.3d 93, 104 (App.2007). "To be defamatory, a publication must be false and must bring the defamed person into disrepute, contempt, or ridicule, or must impeach plaintiff's honesty, integrity, virtue, or reputation." *Turner v. Devlin,* 174 Ariz. 201, 203–04, 848 P.2d 286, 288–89 (1993) (citation omitted). The defamed person need not be specifically named, but his identity must be reasonably clear. *Hansen v. Stoll,* 130 Ariz. 454, 458–59, 636 P.2d 1236, 1240–41 (App.1981).

¶ 18 Whether the publication is capable of bearing a defamatory meaning is a question of law for the court to decide. *Yetman v. English,* 168 Ariz. 71, 79, 811 P.2d 323, 331 (1991). In assessing the publication, the court must consider the totality of the circumstances and take the viewpoint of the average reader or listener. *Phoenix Newspapers, Inc. v. Church,* 103 Ariz. 582, 587, 447 P.2d 840, 845 (App.1968). If the court determines that the publication is capable of defamatory meaning, it may either find as a matter of law that such meaning was actually conveyed or, if the question is one which reasonable people might differ, submit the matter to the finder of fact. *Yetman,* 168 Ariz. at 79, 811 P.2d at 331. But if the court determines that the publication is incapable of defamatory meaning, the claim is subject to dismissal. *Id.; see Reynolds v. Reynolds,* 231 Ariz. 313, 317–18, ¶¶ 9–12, 294 P.3d 151, 155–56 (App.2013).

¶ 19 A publication is not actionable if it is comprised of "loose, figurative, or hyperbolic language" that cannot reasonably be interpreted as stating or implying facts "susceptible of being proved true or false." *Milkovich v. Lorain Journal Co.,* 497 U.S. 1, 21 (1990). The crucial inquiry is whether the finder of fact could employ an

objective criteria to determine the statement's truth or falsity. *Id.* at 22; *Turner,* 174 Ariz. at 207, 848 P.2d at 292. This limitation "provides assurance that public debate will not suffer for lack of 'imaginative expression' or the 'rhetorical hyperbole' which has traditionally added much to the discourse of our Nation." *Milkovich,* 497 U.S. at 19. "[V]igorous epithet[s]," *Greenbelt Cooperative Pub. Ass'n v. Bresler,* 398 U.S. 6, 14 (1970), personal characterizations of manner, *Turner,* 174 Ariz. at 207–08, 848 P.2d at 292–93, and "rhetorical political invective [or] opinion," *Burns v. Davis,* 196 Ariz. 155, 165, ¶ 39, 993 P.2d 1119, 1129 (App.1999), therefore are not actionable. The proposed second amended complaint did not allege that any specific objectively verifiable statement was false.

¶ 20 Here, Kunasek's statements identified and generally disparaged Plaintiffs in connection with their legal and political disputes—indeed, the entire body of statements was aimed at convincing the public that Aubuchon had misused her power as a prosecutor to political ends.[6] The disparaging portions of the statements did not, however, assert or imply statements of fact capable of being proved true or false. Kunasek's description of Plaintiffs as "demented minds," and his characterization of conduct in which they participated as abusive, criminal, and unsupported name-smearing, could not reasonably be construed as anything more than hyperbolic invective reflecting his view of a disputed issue—issues that raised passions but were incapable of objective verification. The statement on which much of the invective was based— that the grand jury had refused to indict Kunasek and had terminated the investigation—was capable of being proved true or false. But nothing about that statement was either false or defamatory as a matter of law.

**\*6** ¶ 21 Likewise, Kunasek's statements that he believed Aubuchon had tried to extort him by threatening to ruin his life, and that she would be indicted and possibly found guilty, were incapable of being proved true or false. Kunasek's characterization of Aubuchon's behavior as extortive was a personal assessment of her manner and a characterization of his own reaction to the prospect of criminal charges that he maintained would have been unwarranted. His reference to the outcome of hypothetical criminal proceedings was nothing more than his prediction about what he believed might happen in the future-he did not state that Aubuchon had actually been charged with any crime.[7] To be sure, his description of some of the events on which his prediction

was based were capable of being proved true or false. But these factual representations were offered as background for Kunasek's political rhetoric, and were not themselves defamatory.

¶ 22 We conclude that Kunasek's statements were not actionable as a matter of law, and that the superior court correctly determined that the defamation claims related to him were futile.[8]

### 2. The Statements Attributed to Smith and S. Wilson Were Not Sufficiently Alleged.

¶ 23 Plaintiffs alleged that Smith provided "information ... [that] was defamatory" to the Arizona Peace Officer Standards and Training Board, that Smith "threatened Hendershott during a budget meeting," and that Smith and his subordinates (a group that included S. Wilson) made disparaging public comments.

¶ 24 Plaintiffs made no attempt to identify or even describe the content of the statements made to the Board or the threat made at the budget meeting. Nor did they identify the language used in the public comments. They instead generally characterized the comments as statements that: "berat[ed] Chief Hendershott and his performance to put him in a false light and disparage him and his family and accuse him of a crime"; accused Hendershott of having "committed crimes"; accused Hendershott of being "unethical and dangerous a criminal and lost his mental stability [sic]"; "falsely stated Hendershott had ordered the seizure of court computers, records and emails and that he had ordered deputies to take the items at gunpoint"; and described efforts to prepare testimony against Hendershott "for 'abuse of power.' "

¶ 25 Under Rule 8, a pleading must give the opposing party fair notice of the nature and basis of the claim by setting forth a short and plain statement that demonstrates entitlement to relief. *Cullen,* 218 Ariz. at 419, ¶ 6, 189 P.3d at 346. And though the court must take as true all well-pled factual allegations and reasonable inferences, *id.* at ¶ 7, it may not speculate about hypothetical facts, *id.* at 420, ¶ 14, 189 P.3d at 347. The context and language of an allegedly defamatory statement is crucial to the court's analysis of a defamation claim. *See Church,* 103 Ariz. at 587, 447 P.2d at 845. Plaintiffs' vague summations of the allegedly defamatory statements were insufficient to allow either the defendants or the court to conduct a meaningful assessment. Further, based on the summaries, the majority of the statements appear to

have been nothing more than hyperbolic invective. The court's determination of futility therefore was appropriate.

### B. The Proposed Second Amended Complaint's IIED Claims Were Futile.

**\*7 ¶ 26** Plaintiffs' proposed second amended complaint purported to set forth IIED claims based on a variety of conduct. First, the complaint purported to set forth IIED claims based on Kunasek, Smith, and S. Wilson's allegedly defamatory statements. Next, the complaint purported to set forth IIED claims based on conduct of "defendants" that "include[d but wa]s not limited to": the appointment of Richard Romley as interim County Attorney of the MCAO; Romley's statement at a press conference and other defendants' "tout[ing]" of that statement; "[f]eeding false information to the media relating to investigations into Plaintiffs"; and Aubuchon's "demotion" and "termination" from her position as an employee of the MCAO.

**¶ 27** A defendant is subject to liability for IIED if he engages in "extreme and outrageous" conduct, he intends the conduct to cause emotional distress or recklessly disregards the near certainty that the conduct will cause emotional distress, and the conduct does in fact cause the plaintiff to suffer severe emotional distress. *Watts v. Golden Age Nursing Home,* 127 Ariz. 255, 257, 619 P.2d 1032, 1035 (1980). Whether conduct is capable of being found "extreme and outrageous" is a question for the court to decide in the first instance.

*Cluff v. Farmers Ins. Exch.,* 10 Ariz.App. 560, 562, 460 P.2d 666, 668 (1969), *overruled on other grounds by* *Godbehere v. Phoenix Newspapers, Inc.,* 162 Ariz. 335, 783 P.2d 781 (1989). This inquiry requires a case-by-case analysis. *Midas Muffler Shop v. Ellison,* 133 Ariz. 194, 197, 650 P.2d 496, 499 (App.1982). If the court determines that the conduct is not, as a matter of law, "extreme and outrageous," judgment must be entered for the defendant. *See, e.g.,* *Watts,* 127 Ariz. at 258, 619 P.2d at 1035.

**¶ 28** "Extreme and outrageous" conduct is conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community."

*Cluff,* 10 Ariz.App. at 562, 460 P.2d at 668 (quoting Restatement (Second) of Torts (hereinafter "Restatement") § 46 cmt. d (1965)). Conduct qualifies as "extreme and outrageous" only if it "completely violate[s] human dignity ...

[and] strike[s] to the very core of one's being, threatening to shatter the frame upon which one's emotional fabric is hung." *Pan kratz v. Willis,* 155 Ariz. 8, 15, 744 P.2d 1182, 1189 (App.1987) (citation omitted). This category of conduct is that which "falls at the very extreme edge of the spectrum of possible conduct." *Watts,* 127 Ariz. at 258, 619 P.2d at 1035. It does not include "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Duhammel v. Star,* 133 Ariz. 558, 561, 653 P.2d 15, 18 (App.1982) (quoting Restatement § 46 cmt. d), *overruled on other grounds by* *Godbehere,* 162 Ariz. 335, 783 P.2d 781. Further, harsh or unfair conduct that falls within the realm of acceptable business practices is not "extreme and outrageous." *Patton v. First Fed. Savs. & Loan Ass'n of Phoenix,* 118 Ariz. 473, 476, 578 P.2d 152, 155 (1978); *see also* *Nelson v. Phoenix Resort Cory.,* 181 Ariz. 188, 199, 888 P.2d 1375, 1386 (App.1994).

**\*8 ¶ 29** Accordingly, it is "extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery." *Mintz v. Bell Atlantic Sys. Leasing Int'l,* 183 Ariz. 550, 554, 905 P.2d 559, 563 (App.1995) (citation omitted). In *Mintz,* for example, we held that an employer's failure to promote an employee did not provide grounds for an IIED claim even though the conduct was motivated by sexual discrimination or retaliation. *Id. See also* *Wallace v. Casa Grande Union High School District No. 82 Board of Governors,* 184 Ariz. 419, 423–24, 428, 909 P.2d 486, 490–91, 495 (App.1995) (affirming summary judgment for employer on IIED claim based on employee's reassignment and demotion by supervisor with whom she had conflicts); *but see* *Ford v. Revlon,* 153 Ariz. 38, 43, 734 P.2d 580, 585 (1987) (affirming jury verdict for employee on IIED claim based on employer's prolonged failure to address employee's claims of sexual harassment by supervisor).

**¶ 30** Plaintiffs' allegations could not support a finding of "extreme and outrageous" conduct. At most, the comments attributed to Kunasek, Smith, and S. Wilson (as described above) constituted hyperbolic rhetoric. Similarly, the statement attributed to Romley—that "he falsely told the public ... that the grand jury [convened to consider charges levied against those whom Plaintiffs had investigated] had found no evidence"—was, at most, an indirect expression

of criticism. And even a generous construction of Plaintiffs' allegations that "defendants" made "false public comments" designed to "make it appear Hendershott was crazy and that Aubuchon and Hendershott were incompetent and evil" merely reveals pejorative commentary. As a matter of law, such criticisms do not meet the standard of "extreme and outrageous" conduct required for recovery under an IIED claim. Further, Plaintiffs' allegations that Romley was appointed for the purpose of firing Aubuchon, and that he unfairly conducted her termination proceedings, do not describe "extreme and outrageous" conduct. Even unjustified termination of employment cannot, without more, support an IIED claim. *See Mintz, 183 Ariz. at 554, 905 P .2d at 563.* The superior court properly deemed the IIED claims futile.

### C. The Proposed Second Amended Complaint's Constructive Fraud Claim Was Futile.

¶ 31 Plaintiffs' proposed second amended complaint purported to set forth a constructive fraud claim. Plaintiffs alleged that they were owed a legal or equitable duty by virtue of their employment as county employees, and that the duty was breached by "all of the facts" alleged.

¶ 32 Constructive fraud requires the "breach of a legal or equitable duty which, without regard to moral guilt or intent of the person charged, the law declares fraudulent because the breach tends to deceive others, violates public or private confidences, or injures public interests." *Lasley v. Helms, 179 Ariz. 589, 591, 880 P.2d 1135, 1137 (App.1994).* Though the defendant need not have acted with intent to deceive, the duty breached must be based on a fiduciary or confidential relationship that induced justifiable and detrimental reliance by the claimant. *Dawson v. Withycombe, 216 Ariz. 84, 107, ¶ 72, 163 P.3d 1034, 1057 (App.2007).*

**\*9** ¶ 33 Under Rule 8, all claims must be supported with well-pled facts; conclusory statements are insufficient. *Cullen, 218 Ariz. at 419, ¶¶ 6–7, 189 P.3d at 346.* Moreover, under Rule 9(b), all claims of fraud, including constructive fraud, must be pled with particularity. *Green v. Lisa Frank, Inc., 221 Ariz. 138, 155–56, ¶¶ 53–54, 211 P.3d 16, 33–34 (App.2009).* "Magic language" is not required, but bare allegations of fraud are insufficient. *Hall v. Romero, 141 Ariz. 120, 124, 685 P.2d 757, 761 (App.1984).* Here, Plaintiffs' claim fell far short of those pleading standards. Plaintiffs failed to allege any facts that would support a

finding of a fiduciary or confidential relationship that induced their detrimental reliance. Their conclusory allegation that a duty was owed based on their employment was insufficient. Further, their general allegation that "all of the facts" demonstrated a breach of duty was precisely the opposite of what Rule 9(b) required. Accordingly, the superior court properly determined that the constructive fraud claim was futile.

### D. The Proposed Second Amended Complaint's Constitutional Claims Were Futile.

¶ 34 Plaintiffs' proposed second amended complaint purported to set forth a claim for violation of constitutional rights, presumably under 42 U.S.C. § 1983. Plaintiffs alleged that they were entitled to due process and equal protection, and that "all of the Defendants," acting under color of law, deprived them of these rights through their "acts and omissions." These vague and conclusory allegations were insufficient under Rule 8, and the superior court correctly deemed the claim futile.

### E. Certain of the Proposed Second Amended Complaint's ContractRelated Claims Were Sufficiently Alleged.

¶ 35 Plaintiffs' proposed second amended complaint purported to set forth several claims related to Aubuchon's employment contract: breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, and intentional interference with contractual relations. We hold that the breach claims were not, at least in theory, futile.

### 1. The Proposed Second Amended Complaint Sufficiently Alleged Claims Against the County for Breach of Contract and Breach of the Covenant of Good Faith and Fair Dealing.

¶ 36 Plaintiffs' proposed second amended complaint set forth claims for breach of Aubuchon's employment contract and the covenant of good faith and fair dealing implied in the contract. Plaintiffs alleged that Aubuchon worked as a County employee for the MCAO and that her employment contract provided for "payment of attorneys' fees to defend against any bar complaints made against her for her actions while she was employed as a deputy county attorney." Plaintiffs further alleged that this contractual duty was breached when MCAO officials and employees Romley, Montgomery, and Ahler failed to provide or pay for an attorney to represent her in disciplinary proceedings before the State Bar of Arizona,

and that she was damaged in the amount of the costs and fees incurred for these proceedings.[9]

**\*10** ¶ 37 A breach of contract claim requires the existence of a contract, breach of the contract, and resulting damages. *Chartone, Inc. v. Bernini,* 207 Ariz. 162, 170, ¶ 30, 83 P.3d 1103, 1111 (App.2004). An employment relationship is contractual in nature. A.R.S. § 23–1501(A)(1). The law implies a covenant of good faith and fair dealing in all contracts. *Rawlings v. Apodaca,* 151 Ariz. 149, 153, 726 P.2d 565, 569 (1986). The covenant is breached when a party "exercise[s] express discretion in a way inconsistent with a party's reasonable expectations ... [or] act[s] in ways not expressly excluded by the contract's terms but which nevertheless bear adversely on the party's reasonably expected benefits of the bargain." *Bike Fashion Corp. v. Kramer,* 202 Ariz. 420, 424, ¶ 14, 46 P.3d 431, 435 (App.2002).

¶ 38 The proposed second amended complaint alleged sufficient facts to support all of the elements of a claim for breach of contract, and of a claim for breach of the covenant of good faith and fair dealing. We reject the County's contention that it was not included in the breach claims. Though the allegations referred to actions taken by individual County officials and employees and though the claims were titled with a parenthetical identifying these individuals, the proposed second amended complaint made clear that liability was sought only against the County. At the outset of the proposed pleading, Plaintiffs alleged that the acts and omissions of individual defendants "were taken under the guise of their elected office, or employment as public employees ... in their official capacity," except when they acted "outside the scope of their employment or elected office ... or in excess of their official capacity." Plaintiffs further alleged that "[a]ll of these actions by the Defendants described in this Complaint constitute actions of Maricopa County; therefore, Maricopa County is vicariously and directly liable for their wrongful conduct, as alleged herein." None of the allegations underlying the breach claims stated that the individual County employees and officials acted outside of the scope of their County employment. The proposed second amended complaint therefore gave the County fair notice that those claims were directed at it, and not at the actors personally.

¶ 39 We hold that the allegations were sufficient to state claims against the County for breach of contract and the

implied covenant of good faith and fair dealing. We express no opinion concerning the defenses available to these claims, nor do we imply that the claims are viable as a matter of fact. The record does not reveal the terms of Aubuchon's contract of employment, but the proposed second amended complaint alleges the existence of a term which, if breached, could give rise to an action for damages.

¶ 40 We reverse the superior court's determination that the proposed second amended complaint's breach of contract claims against the County were futile, and remand for proceedings consistent with this decision. We hold, however, that Plaintiffs' request for punitive damages is barred by A.R.S. § 12–820.04.

### 2. The Court Properly Determined That the Unjust Enrichment Claims Were Futile.

**\*11** ¶ 41 An unjust enrichment claim requires "(1) an enrichment; (2) an impoverishment; (3) a connection between the enrichment and the impoverishment; (4) the absence of justification for the enrichment and the impoverishment; and (5) the absence of a legal remedy." *Trustmark Ins. Co. v. Bank One, Ariz.,* 202 Ariz. 535, 541, ¶ 31, 48 P.3d 485, 491 (App.2002). Plaintiffs alleged that the County was enriched and that Aubuchon was damaged as a result of the County's failure to pay for her attorney's fees in the disciplinary proceedings, and that this result was unjustified based on her reasonable expectations regarding promises made to her. At bottom, this claim depends on the same facts as the breach of contract claim. Assuming that Plaintiffs are able to establish those facts, there would by definition be an adequate legal remedy—the remedy for breach of contract. The only reasons for which the breach of contract claim could fail would also cause the unjust enrichment claim to fail. Because there are no circumstances in which the unjust enrichment claim could exist independent of the contract claim, we conclude that the unjust enrichment claim was futile.

### 3. The Proposed Second Amended Complaint's Claim for Intentional Interference with Contractual Relations Was Futile.

¶ 42 Plaintiffs' proposed second amended complaint claimed "tortious interference of contract," "inducing breach of contract," and "interference with contractual relations" related to Aubuchon's employment contract. Construing the complaint liberally, as we must, we treat these allegations as an assertion of a claim for intentional interference with

contractual relations. This tort requires "the existence of a valid contractual relationship or business expectancy; the interferer's knowledge of the relationship or expectancy; intentional interference inducing or causing a breach or termination of the relationship or expectancy; ... resultant damage to the party whose relationship or expectancy has been disrupted ... [and] 'improper ... motive or means.' " *Wallace, 184 Ariz. at 427, 909 P.2d at 494.* The interferer must be a third party to the contractual relationship or business expectancy. *Ulan v. Vend–a–Coin, Inc., 27 Ariz.App. 713, 717, 558 P.2d 741, 745 (1976).* A claim for intentional interference with a plaintiff's employment contract therefore cannot be based on the actions of a fellow employee or supervisor acting within the scope of his or her employment. *See Barrow v. Ariz. Bd. of Regents, 158 Ariz. 71, 78, 761 P.2d 145, 152 (App.1988); Mintz, 183 Ariz. at 555–56, 905 P.2d at 564–65.*

¶ 43 As we explained above, Plaintiffs' second amended complaint alleged that the County was vicariously liable for conduct taken by individual defendants within the scope of their employment, and Plaintiffs did not allege that the breach of Aubuchon's employment contract was caused by actions taken outside of the scope of employment. On this ground alone, Plaintiffs failed to state a claim for intentional interference with contractual relations. The superior court correctly concluded that the claim was futile. [10]

## II. SANCTIONS

**\*12** ¶ 44 Plaintiffs and their trial counsel, the Moriarity Firm and Moriarity, [11] challenge the superior court's assessment of attorney's fees against them as sanctions under Rule 11 and A.R.S. § 12–349. All of the defendants to whom fees were awarded moved for sanctions under both Rule 11 and A.R.S. § 12–349, and some of the County employees and officials also moved under former A.R.S. § 12–341.01(C). With respect to the County and the County officials and employees, the court specifically found that fees were warranted under both Rule 11 and § 12–349. With respect to the Polsinelli defendants, the superior court granted the motion for sanctions based on findings that could support an award under either Rule 11 or § 12–349, directed the defendants to prepare an application for fees "pursuant to A.R.S. § 12–349," and approved the application under "[t]he Rules and statutes." Importantly, the Polsinelli defendants maintained at oral argument that the award in their favor was issued under A.R.S. § 12–349 only.

¶ 45 Both Rule 11 and § 12–349 are designed to discourage wasteful litigation. *Phoenix Newspapers, Inc. v. Dep't of Corrs., 188 Ariz. 237, 244, 934 P.2d 801, 808 (App.1997).* We review all aspects of an order imposing sanctions under Rule 11 for abuse of discretion. *James, Cooke & Hobson, Inc. v. Lake Havasu Plumbing & Fire Protection, 177 Ariz. 316, 319, 868 P.2d 329, 332 (App.1993).* We review the applicability of § 12–349 de novo but review the superior court's findings (required by § 12–350) for clear error, viewing the facts in the light most favorable to sustaining the award under a preponderance-of-the-evidence standard of proof. *Dep't of Corrs., 188 Ariz. at 243–44, 934 P.2d at 807–08.*

¶ 46 Rule 11(a) provides:

> The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass or cause unnecessary delay or needless increase in the cost of litigation .... If a pleading, motion or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, including a reasonable attorney's fee.

Under Rule 11(a), the test to determine whether a document is reasonably grounded is one of objective reasonableness— subjective good faith provides no safe harbor. *Wright v.*

*Hills,* 161 Ariz. 583, 589, 780 P.2d 416, 422 (App.1989), *overruled in part on other grounds by* *James,* 177 Ariz. 316, 868 P.2d 329. The objective standard is violated here: "(1) there was no reasonable inquiry into the basis for a pleading or motion; (2) there was no chance of success under existing precedent; and (3) there was no reasonable argument to extend, modify, or reverse the controlling law."

*Smith v. Lucia,* 173 Ariz. 290, 297, 842 P.2d 1303, 1310 (App.1992). The reasonableness of a factual inquiry depends on the totality of the circumstances, which may change as the case progresses. *Boone v. Superior Court (Croddy),* 145 Ariz. 235, 241, 700 P.2d 1335, 1341 (1985); *Wright,* 161 Ariz. at 590, 780 P .2d at 423. With respect to the reasonableness of a legal position, the court's mere rejection of an argument regarding the applicability of precedent does not, in itself, provide grounds for sanctions. *See* *Fritz v. City of Kingman,* 191 Ariz. 432, 435–36, ¶ 22, 957 P.2d 337, 340–41 (1998). But sanctions may be imposed when an argument is plainly contrary to well-established case law or clear statutory language. *Villa de Jardines Ass'n v. Flagstar Bank,* 227 Ariz. 91, 97, ¶¶ 16–19, 253 P.3d 288, 294 (App.2011); *Linder v. Brown & Herrick,* 189 Ariz. 398, 408, 943 P .2d 758, 768 (App.1997).

**\*13** ¶ 47 Section 12–349(A) provides that the court shall assess attorney's fees and expenses, and may assess certain limited damages, against parties and attorneys who "[b]ring[ ] or defend [ ] a claim without substantial justification[,] ... [b]ring[ ] or defend[ ] a claim solely or primarily for delay or harassment[,] ... [or u]nreasonably expand[ ] or delay[ ] the proceeding." At the time relevant to this appeal, § 12–349(F) defined "without substantial justification" as "mean[ing] that the claim or defense is groundless and is not made in good faith." An objective standard is used to determine groundlessness, and a subjective standard is used to determine good faith and whether there was an intent to harass. *Dep't of Corrs.,* 188 Ariz. at 244, 934 P.2d at 808. A claim or defense is groundless when it is contrary to facts that were known or that should have been known, and when it is based on arguments contrary to settled law. *See* *Harris v. Reserve Life Ins. Co.,* 158 Ariz. 380, 383, 762 P.2d 1334, 1337 (App.1998). Sanctions under § 12–349 are not appropriate, however, when a party or attorney's position was unsuccessful but nonetheless fairly debatable. *See City of Casa Grande v. Ariz. Water Co.,* 199 Ariz. 547, 556, ¶ 30, 20 P.3d 590, 599 (App.2001).

¶ 48 Here, the superior court acted well within its discretion when it determined that the appellants had engaged in sanctionable conduct. But because we have concluded that not all of the claims proposed against the County were futile, we defer consideration of the amount of sanctions in favor of the County until the case is resolved on remand. Further, the computation of the sanctions on the basis of attorney's fees was error with respect to the Polsinelli defendants because these defendants, as self-represented parties, were legally ineligible to recover fees. We therefore vacate the award of sanctions to the County without prejudice to their recalculation, and we vacate the award of sanctions to the Polsinelli defendants for recalculation under the "expenses" prong of § 12–349.

**A. The Award of Attorney's Fees to the County Officials and Employees Was Proper, but the Award to the County Was Premature in View of Our Decision on Appeal.**

¶ 49 The court awarded attorney's fees to the County, and to the County officials and employees who requested sanctions, under Rule 11 and A.R.S. § 12–349 based on findings that the first amended complaint was "unintelligible"; that "notwithstanding the Court's warnings, Plaintiffs again failed to comply with the Arizona Rules of Civil Procedure when they filed their Motion for Leave to File Second Amended Complaint"; and that the proposed second amended complaint set forth "groundless claims" with "no factual or legal basis." The appellants contend that the imposition of sanctions was error because the first amended complaint was based on a good-faith investigation of the facts and merely "lacked quality in draftsmanship," and because the claims asserted in the proposed second amended complaint were viable. [12]

**\*14** ¶ 50 The court's findings described grounds for the imposition of sanctions under both Rule 11 and § 12–349, and were well-founded. The first amended complaint completely failed to comply with Rule 8, Rule 10, and *Cullen,* 218 Ariz. at 419, ¶¶ 6–7, 189 P.3d at 346. The pleading was not merely an example of substandard draftsmanship-it objectively failed to state any claims upon which relief could be granted. And as we have explained above, all of the proposed claims against the County officials and employees were futile, and most of the proposed claims against the County were futile.

¶ 51 The record therefore supports the court's findings and award of sanctions to the County officials and employees. [13]

But because the award of sanctions to the County was based in part on an erroneous determination of futility, we vacate the award to the County without prejudice to its reimposition at the conclusion of the case. We note that nothing in our decision prevents the superior court from awarding sanctions in the same or different amount. *See Corbett v. Manorcare of Am., Inc.,* 213 Ariz. 618, 630, ¶ 43, 146 P.3d 1027, 1039 (App.2006) ("In view of our reversal of summary judgment ... insufficient evidence supports the award of fees as a Rule 11 sanction. The trial court may, however, revisit the issue of attorney fees when the trial court proceedings have concluded.").

### B. The Award of Sanctions to the Polsinelli Defendants Was Proper, But the Form of the Award Was Not.

#### 1. The Polsinelli Defendants Were Entitled to Receive Sanctions.

¶ 52 The court awarded sanctions to the Polsinelli defendants under § 12–349 based on findings that "[n]o legal or factual basis ever existed to file a Complaint against these defendants" and "the Complaint was filed for vexatious purposes." Again, the appellants contend that the first amended complaint was based on a good-faith investigation of the facts. We conclude that the record amply supported the court's determination that sanctions were warranted.

¶ 53 The first amended complaint's failure to comply even with Arizona's generous pleading standards makes it difficult to discern the nature of the claims intended to be asserted against the Polsinelli defendants. In general, however, the first amended complaint alleged that the Polsinelli defendants had a conflict of interest, unlawfully interfered with Plaintiffs' attempts to examine and disclose that conflict, and retaliated by instituting or encouraging groundless investigations against Plaintiffs. In response to the Polsinelli defendants' initial motion to dismiss, Plaintiffs asserted that their allegations supported two claims: (1) breach of fiduciary duty by the Polsinelli defendants as evidenced by legal malpractice, and (2) defamation by the Polsinelli defendants based on information that they provided to the State Bar of Arizona in connection with its investigation of Aubuchon. Both purported claims are devoid of factual or legal support.

**\*15** ¶ 54 Legal malpractice based on breach of fiduciary duty requires, *inter alia,* an attorney-client relationship and a breach of the attorney's fiduciary duty to the client. *Cecala v. Newman,* 532 F.Supp.2d 1118, 1135 (D.Ariz.2007). Plaintiffs did not allege any facts suggesting that they shared an attorney-client relationship (or any other kind of fiduciary relationship) with the Polsinelli defendants. In asserting the defamation claim, Plaintiffs ignored the plain language of Ariz. R. Sup.Ct. 48(1), which provides that "[c]ommunications to the ... state bar ... relating to lawyer misconduct, lack of professionalism or disability ... shall be *absolutely privileged* conduct, and *no civil action predicated thereon may be instituted against any complainant or witness.*" (Emphases added.) The appellants' contention that the defamation claim was based on a reasonable argument for the extension of Rule 48(1) is unpersuasive. Though the appellants argue that "whether the rule is constitutional is something that Appellants could claim," they make no attempt to identify grounds on which a constitutional challenge plausibly could be based, and no such grounds appear to us. And their assertion that attorneys who provide false information to the State Bar may face professional discipline is immaterial to a claim for damages.

¶ 55 The superior court did not err by finding that the claims asserted against the Polsinelli defendants were unreasonable. Sanctions were warranted under A.R.S. § 12–349. [14]

#### 2. The Polsinelli Defendants Were Ineligible to Receive Attorney's Fees as Sanctions.

¶ 56 The appellants next contend that the nature of the sanctions imposed-an award of attorney's fees—was inappropriate because the Polsinelli defendants, as self-represented parties, were ineligible to recover fees. This argument was first raised in a motion for reconsideration. We generally do not consider arguments raised for the first time in a motion for reconsideration, in part because in such circumstances the prevailing party is often deprived of the opportunity to respond. *Evans Withycombe, Inc. v. W. Innovations, Inc.,* 215 Ariz. 237, 240, ¶ 15, 159 P.3d 547, 550 (App.2006). Here, however, the court expressly authorized the Polsinelli defendants to file a response to the motion for reconsideration, and they did so. On this record, we find no waiver. We hold that the court erred by awarding sanctions to the Polsinelli defendants in the form of attorney's fees.

¶ 57 Prerequisite to the recovery of attorney's fees is the existence of an attorney-client relationship. *Connor v. Cal–AZ Props., Inc.,* 137 Ariz. 53, 56, 668 P.2d 896, 899 (App.1983). Because "[o]ne who acts only for himself

in legal matters is not considered to be engaged in the practice of law," a self-represented party has no attorney-client relationship and therefore no right to recover fees —even if he or she is an attorney. *Id.* This rule serves to discourage selfrepresented attorneys from strategically protracting litigation to gain unfair advantage. *Id.* It also prevents self-represented attorneys from receiving unjustified windfalls. 🚩 *Lisa v. Strom,* 183 Ariz. 415, 419, 904 P .2d 1239, 1243 (App.1995). To be sure, self-represented attorneys may suffer lost opportunity costs in the form of time that they could have spent representing paying clients. *Id.* But self-represented non-attorneys incur similar lost opportunity costs, and it would be "palpably unjust" to allow one category of self-represented litigants to recover for such costs based solely on the nature of their profession. *Id.* Fees may be recovered only if there is an attorney-client relationship and a genuine financial obligation to pay for the legal services. 🚩 *Id.* at 419–20, 904 P.2d at 1243–44; *see also* 📄 *Moedt v. Gen. Motors Corp.,* 204 Ariz. 100, 103, ¶ 11, 60 P.3d 240, 243 (App.2003).

**\*16** ¶ 58 The Polsinelli defendants—a law firm and two of its attorneys—contend that they were nonetheless eligible to recover attorney's fees because they had "intertwined defenses," "the sanctions awarded will go to Polsinelli, not the individual attorneys,"[15] and there is "no authority ... that precludes a court from awarding sanctions measured by attorney's fees to a law firm ... that used its employee-attorneys as in-house counsel to defend itself and its employees in litigation." They argue that they were entitled to recover fees because they were "incurring fees by virtue of paying in-house counsel salaries."

¶ 59 The Polsinelli defendants rely primarily on 📄 *Hunt Investment Co. v. Eliot,* 154 Ariz. 357, 742 P.2d 858 (App.1987). In *Hunt,* a general partnership was represented in litigation by an attorney who was one of the partnership's general partners. 📄 154 Ariz. at 359, 742 P.2d at 860. The partnership's other general partner was a trust for which the attorney was trustee as well as one of several beneficiaries. *Id.* We affirmed an award of attorney's fees to the partnership, holding that the partnership could not represent itself and that the attorney did not represent *only* himself in the litigation because he acted for the benefit of the trust's other beneficiaries as well as for his own benefit. 📄 *Id.* at 362–63, 742 P.2d at 863–64. The Polsinelli defendants contend that "[l]ike the partnership in *Hunt,* the Polsinelli law firm

has interests beyond those of its individual shareholders and it cannot appear *pro per.*" But unlike the partnership in *Hunt,* the Polsinelli firm *could* represent itself. *Munger Chadwick, P.L.C. v. Farwest Dev. & Constr. of the Sw., LLC,* 235 Ariz. 125, 127, ¶ 7, 329 P.3d 229, 231 (App.2014). And there is "no logical reason to draw any distinction between a law firm that represents itself and a sole practitioner that does so." *Id.* at 128, ¶ 10, 329 P.3d at 232. The mere fact that a law firm's self-representation requires its members or employees to devote time to the representation does not justify an award of fees.

*See id.* at ¶ 11; 🚩 *Lisa,* 183 Ariz. at 420, 904 P.2d at 1244. The policies underlying the rule disallowing fees for self-represented attorneys who incur no financial obligation are equally applicable when a law firm "hires" its own attorneys. *Munger,* 235 Ariz. at 128, ¶ 12, 329 P.3d at 232.

¶ 60 The Polsinelli defendants also rely on 📄 *Farmers Ins. Exchange v. Law Offices of Conrado Joe Sayas, Jr.,* 250 F.3d 1234 (9th Cir.2001). In concluding that fees were recoverable by two law firms that represented each other in a collection action against a former client, *Farmers* cited California cases holding that when an attorney was represented by other members of his law firm, and when a corporation was represented by its in-house counsel, attorney's fees were warranted because expenses were incurred in the form of salaries paid. 📄 *Id.* at 1238–39. We are not bound by *Farmers* or the cases it cites. Moreover, we do not find those cases persuasive. In *Lisa,* we explained that an attorney-litigant was not entitled to recover attorney's fees for work performed by his firm's employees because he paid the employees a salary regardless of what matters they worked on, and therefore did not incur a specific obligation to pay fees for the work done on his behalf. 🚩 183 Ariz. at 420, 904 P.2d at 1244. *See also Munger,* 235 Ariz. at 128, ¶ 11, 329 P.3d at 232 (holding that law firm members' work in representing law firm "in their spare time" did not provide grounds for attorney's fees award).

**\*17** ¶ 61 Under Arizona law, the Polsinelli defendants were not eligible for an award of attorney's fees. The imposition of sanctions in the form of attorney's fees therefore was error, and we must vacate the fee-based portion of the award.[16] But because sanctions were warranted, *see supra* Section II.B.1, and because A.R.S. § 12–349 does not limit sanctions to attorney's fees awards, we remand so that the court may impose a proper sanction. Under § 12–349(A) the court may award "double damages of not to exceed five thousand dollars," in addition to "reasonable ... expenses."

The calculation of such an award may naturally bear some relation to the amount of legal work that the Polsinelli defendants were reasonably required to undertake as a result of the sanctionable conduct. *See Taliaferro v. Taliaferro,* 188 Ariz. 333, 341, 935 P .2d 911, 919 (App.1996) ("As a general rule, the sanction for a Rule 11 violation should bear some relationship to the expenses directly caused by the sanctionable conduct."). In this sense, the application for attorney's fees may be relevant to the inquiry. We caution, however, that an analysis related to fees should focus on the *expenses* actually incurred, and that such detriment will naturally be less than the market rates reflected in the fee application. The Polsinelli defendants are entitled to a compensatory sanction that does not include the profit that its billing rates include.

**CONCLUSION**

¶ 62 For the reasons set forth above, we reverse the superior court's determination that Plaintiffs' proposed second amended complaint failed to sufficiently plead claims for breach of contract and breach of the covenant of good faith and fair dealing, and we remand for further proceedings. We vacate the court's award of sanctions to the County and vacate and remand its award of sanctions to the Polsinelli defendants. We otherwise affirm.

¶ 63 All of the appellees request awards of attorney's fees on appeal. The County, Montgomery, and the Polsinelli defendants request fees under Rule 11 and A.R.S. § 12–349, and the remaining County officials and employees request fees under Rule 11, § 12–349, and ARCAP 25. Rule 11 does not provide grounds for an award of fees on appeal. *Villa de Jardines,* 227 Ariz. at 99 n. 10, ¶ 26, 253 P.3d at 296 n. 10. In our discretion, we decline to award fees under § 12–349 and ARCAP 25.

**All Citations**

Not Reported in P.3d, 2015 WL 2383820

**Footnotes**

| | |
|---|---|
| 1 | In 2013, the Supreme Court ordered Aubuchon disbarred, holding that she had "failed to fulfill her responsibilities as a prosecutor, abused the public trust, and misused the justice system." *In re Aubuchon,* 233 Ariz. 62, 63, 309 P.3d 886, 887 (2013). |
| 2 | The court later entered Rule 54(b) judgments awarding costs to Baker and approximately $10,000 in attorney's fees to the State and the State officials. No appeal was taken from these judgments. Further, no appeal was taken from the earlier-signed order dismissing Faull from the case, which order became appealable upon the entry of the judgment for the State and the State officials. *See Hill v. City of Phoenix,* 193 Ariz. 570, 573, ¶ 15, 975 P.2d 700, 703 (1999) ("[A]ll judgments become effective upon entry of the one last in time which disposes of the last claim."). Faull nonetheless asks us to affirm the judgment in his favor. |
| | We have no jurisdiction to do so. *See Lee v. Lee,* 133 Ariz. 118, 124, 649 P .2d 997, 1003 (App.1982) ("The court of appeals acquires no jurisdiction to review matters not contained in the notice of appeal ."). We note, however, that Plaintiffs' opportunity to appeal that judgment has long since expired under ARCAP 9. |
| 3 | Plaintiffs do not challenge the determination of futility with respect to the proposed second amended complaint's claims for abuse of process and tortious aiding and abetting. Accordingly, Plaintiffs have waived any argument regarding the denial of amendment with respect to these claims. *Schabel v. Deer Valley Unified Sch. Dist. No. 97,* 186 Ariz. 161, 167, 920 P.2d 41, 47 (App.1996). |
| 4 | Though Plaintiffs styled the count regarding Smith and S. Wilson as a claim for IIED, the allegations set forth in the count were directed not toward the elements of IIED but toward the elements of defamation. The allegations were later incorporated by reference into a count charging "all defendants" with IIED. Plaintiffs' IIED claims are discussed in Section I.B, *infra.* |

5    If the communication concerns a public official or public figure, the plaintiff must prove that the defendant acted with "actual malice"—knowledge of the statement's falsity or conscious disregard for the truth. *Dombey v. Phoenix Newspapers, Inc.,* 150 Ariz. 476, 486, 724 P.2d 562, 572 (1986). If the plaintiff is a private person, the defendant must have acted at least negligently in failing to ascertain the truth of his statements for liability to attach. *Peagler v. Phoenix Newspapers, Inc.,* 114 Ariz. 309, 315, 560 P.2d 1216, 1222 (1977).

6    Though Plaintiffs alleged that they are not public figures, there can be no doubt that they were public officials.

7    By way of analogy, a speaker who expresses his view that a President of the United States should be, and will be, impeached, removed from office and criminally tried does not commit actionable defamation.

8    Though it did not plead false light invasion of privacy as a separate cause of action, the proposed second amended complaint alleged that Kunasek had attempted to portray Plaintiffs in a false light. Public officials may not bring such a cause of action. *Godbehere v. Phoenix Newspapers, Inc.,* 162 Ariz. 335, 783 P.2d 781 (1989).

9    The proposed second amended complaint also alleged breach based on the termination of Aubuchon's employment. But Plaintiffs have expressly abandoned that theory on appeal, stating: "This case is not about the employment merit proceedings. It is about the failure to provide counsel [Aubuchon] had already been given, that every deputy county [attorney] is told is a part of their position as a public official, and how the Appellees refused to provide her counsel while providing all other prosecutors representation."

10    In denying Plaintiffs' motion to file the proposed second amended complaint, the court found not only that the claims were futile but also that the motion accompanying the proposed pleading failed to comply with Rule 7.1. Rule 7.1 gives the court discretion to summarily dispose of motions that, like Plaintiffs', are unsupported by a memorandum of law. Ariz. R. Civ. P. 7.1(a)-(b); *see Ursel v. Pizzo,* 126 Ariz. 316, 318, 614 P.2d 858, 860 (App.1980) (applying predecessor rule to Rule 7.1). But reading the superior court's order as a whole, we do not believe that the court held that the denial of the motion to amend would be warranted based on Rule 7.1 alone. Though Plaintiffs' motion did not include the memorandum required by Rule 7.1(a), the motion was filed at the court's invitation after the parties had fully briefed the deficiencies in the first amended complaint. Accordingly, the parties and the court were well aware of the circumstances of the motion despite Plaintiffs' failure to provide the required memorandum regarding its legal grounds.

11    Though not parties to the proceedings in the superior court, the Moriarity Firm and Moriarity have standing to appeal the imposition of sanctions against them. *Wieman v. Roysden,* 166 Ariz. 281, 284, 802 P.2d 432, 435 (App.1990).

12    The appellants also contend that the superior court erred by denying their request for an evidentiary hearing. Nothing in Rule 11 or § 12–349 provides for a hearing.

13    The appellants do not challenge the amount of these sanctions.

14    We reject the appellants' suggestion that the court was estopped from imposing sanctions based on its remarks at the oral argument on the motions to dismiss the first amended complaint. The appellants cite the court's statement that "sanctions can attach to any *further* action" (emphasis added) and point out that the proposed second amended complaint did not assert any claims against the Polsinelli defendants. The appellants' reliance on these facts is misplaced. The court said nothing that limited its ability to impose sanctions based on the first amended complaint, and the proposed second amended complaint's exclusion of the Polsinelli defendants did not end their interest in the litigation.

15    The judgment actually awarded fees to the law firm *and* to the individual attorneys.

16    A small portion of the sanctions award was based on costs. Recovery of costs is authorized under A.R.S. § 12–349. The appellants do not argue that the Polsinelli defendants were ineligible to recover costs, and we see no reason to deem the award of costs inappropriate.

---

**End of Document**                                    © 2020 Thomson Reuters. No claim to original U.S. Government Works.

Cheri L. McCracken, State Bar No. 006111
Attorney at Law
2402 North 24th Street
Phoenix, AZ 85008-1804
Phone: 602.231.0595
FAX: 602.231.0841
cherimccracken@gmail.com

Christopher R. Houk, State Bar No. 020843
**HOUK LAW FIRM, PLLC**
1050 East Southern Avenue, Suite A-3
Tempe, AZ 85282
Telephone: 480.569.2377
Facsimile:  480.569.2379
chouk@houklawfirm.com

*Attorneys for Sandra (Corder) Matlock*

Please send all documents to:
jmontanez@houklawfirm.com

**IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

**IN AND FOR THE COUNTY OF COCONINO**

| | |
|---|---|
| Sandra (Corder) Matlock,<br><br>    Plaintiff,<br><br>vs.<br><br>City of Flagstaff, a municipal corporation, Richard Tadder and Amanda Tadder, wife and husband,<br><br>    Defendants. | Case No.  S0300-CV-2020-00504<br><br>**MOTION FOR LEAVE TO FILE THE FIRST AMENDED COMPLAINT** |

Plaintiff Sandra Corder Matlock respectfully requests that this Court grant her leave to Amend the Complaint to add claims under the Arizona Civil Rights Act that have recently become ripe. Plaintiff sought Defendants' consent for the amendment, but Defendants

declined. Thus, pursuant to Arizona Rule of Civil Procedure 15(a)(2), Plaintiff seeks leave of this Court to amend the Complaint.

<div align="center"><strong><u>Memorandum of Points and Authorities</u></strong></div>

On December 1, 2020, the Arizona Attorney General's Office issued a Notice of Right to Sue, giving Plaintiff 90 days to file suit under the Arizona Civil Rights Act.[1] Plaintiff could not bring suit until receiving this Notice.[2]  Plaintiff's First Amended Complaint[3] adds discrimination and retaliation claims under the Arizona Civil Rights Act. Specifically, Sandra alleges Defendant City of Flagstaff terminated her employment on basis of 1) sex and age in violation of A.R.S. § 41-1463 and 2) retaliation for complaining about sex and age discrimination under A.R.S. § 41-1464.

## I.  Leave to Amend Should Be Freely Granted.

The Arizona Rules of Civil Procedure state that "[l]eave to amend must be freely given when justice requires."[4] The Arizona Supreme Court has stated that "amendments to pleadings should be granted with great liberality, so that cases may be decided on the merits rather than on mere technicalities of pleadings and so long as the granting of the amendment does not prejudice the other party."[5]

Importantly, "[t]he merits or facts of the controversy are not to be decided in the consideration of a motion to amend."[6]  Instead, "[t]he petitioners should have been allowed

---

[1] *See* Exhibit A.
[2] A.R.S. § 41-1481 ("Within ninety days after the giving of such notice [of the right to sue] a civil action may be brought against the respondent named in the charge by the charging party….").
[3] *See* Exhibit B.
[4] Ariz. R. Civ. P. 15(a)(2).
[5] *Cagle v. Carr*, 101 Ariz. 225, 227, 418 P.2d 381, 383 (Ariz. 1966).
[6] *Hernandez v. Maricopa Cnty. Superior Ct.*, 108 Ariz. 422, 422, 501 P.2d 6, 6 (Ariz. 1972).

<div align="center">Page 2 of 6</div>

HOUK LAW FIRM, PLLC
1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282
Telephone: 480.569.2377  -  Fax:  480.569.2379


HOUK LAW FIRM, PLLC
1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282
Telephone: 480.569.2377 - Fax: 480.569.2379

to file their amended complaint, and the factual basis of the amended complaint could then be attacked under Rule 12(b) or Rule 56."[7]

## II. Amending the Complaint Does Not Create Undue Delay, Bad Faith, Undue Prejudice, or Futility.

A denial of leave to amend should only be granted where there exists "'undue delay in the request, bad faith or a dilatory motive on the part of the movant, undue prejudice to the opposing party as a result of the amendment, or futility in the amendment."[8]

### A. Sandra Did Not Unduly Delay in Adding Discrimination Claims.

"Although mere delay is not justification in and of itself for denial of leave to amend,"[9] undue delay may exist where counsel is "negligent in their efforts to prepare the case or complete discovery."[10]

Here, as noted above, Sandra's amendment for civil rights claims could not have been brought prior to the issuance the right to sue letter, so there is no undue delay.

### B. Sandra Is Not Adding Discrimination Claims in Bad Faith.

Bad faith may be found where "the filing of the motion to amend was deliberately delayed by any improper motive…."[11]

Here, the proposed amendment is not in bad faith, but rather brought to enforce alleged violations of civil rights.

### C. Adding Discrimination Claims Will Not Substantially Prejudice the Defendants.

---

[7] *Id.*
[8] *Bishop v. State Dept. of Corr.*, 172 Ariz. 472, 474–75, 837 P.2d 1207, 1209–10 (Ariz. Ct. App. 1992) (finding undue delay where Plaintiff "sought to amend her complaint more than two years after filing her original complaint and only a few months before the date set for trial.").
[9] *Schoolhouse Educ. Aids, Inc. v. Haag,* 145 Ariz. 87, 91, 699 P.2d 1318, 1322 (Ct. App. 1985)
[10] *Owen v. Superior Court of State of Ariz., In & For Maricopa Cty.,* 133 Ariz. 75, 80, 649 P.2d 278, 283 (1982).
[11] *Id.*

HOUK LAW FIRM, PLLC
1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282
Telephone: 480.569.2377 - Fax: 480.569.2379

Undue or "substantial prejudice to the opposing party is a critical factor used in determining whether an amendment should be granted."[12] "Denial of leave to amend is generally considered an abuse of discretion where the amendment merely seeks to add a new legal theory supported by factual issues already in the case."[13]

Here, Defendants are not unduly prejudiced by an Amended Complaint because Plaintiff does not raise new factual issues close to the end of trial or discovery, but rather is brought at the initial phase of the case.

**D. Adding Sandra's Discrimination Claims Is Not Futile.**

As to futility, "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits."[14]

Finally, there's no futility with the amendment because the facts pled are sufficient to state a claim for discrimination and retaliation. Here, Sandra alleges she was discriminated against by Defendant City of Flagstaff based on her sex and age, and was fired immediately after she expressed her opposition to Defendant's treatment. There's ample factual support for these claims. As to the sex discrimination claims, Tadder engaged in years of sexist behavior.[15] Plaintiff was 57 years old at the time of her termination and her job duties were transferred to an employee about 30 years her junior, so the age difference of the replacement

---

[12] *Schoolhouse Educ. Aids, Inc. v. Haag*, 145 Ariz. 87, 91, 699 P.2d 1318, 1322 (Ct. App. 1985).

[13] *Walls v. Arizona Dep't of Pub. Safety*, 170 Ariz. 591, 597, 826 P.2d 1217, 1223 (Ct. App. 1991); *Uyleman v. D.S. Rentco*, 194 Ariz. 300, 303, 981 P.2d 1081, 1084 (Ariz. Ct. App. 1999) (Courts generally abuse their discretion in denying leave to amend "where the amendment merely advances a new legal theory.").

[14] *Spitz v. Bache & Co.*, 122 Ariz. 530, 531, 596 P.2d 365, 366 (1979) (citation and quotation omitted).

[15] FAC ¶¶ 24-42, 45-46.

Page 4 of 6

combined with ageist comments, states a claim for age discrimination.[16]  As to retaliation,

Tadder forced Sandra to resign within minutes after she reported his sexist behavior to HR,

establishing a causal connection between Sandra's complaint and her termination.[17] Therefore,

Plaintiff's claims for unlawful termination based on sex and age under A.R.S. § 41-1463, as

well as for retaliation for reporting unlawful discrimination under A.R.S. § 41-1464, are not

futile.

Thus, in sum, the amendment should be granted.

### III.        Conclusion.

Because leave to amend a complaint should be granted liberally where there is no

undue delay, prejudice, or futility, such as here, Sandra respectfully requests the Court allow

her to amend her complaint to add civil rights claims.

DATED this 11th day of February, 2021.

HOUK LAW FIRM, PLLC
1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282
Telephone: 480.569.2377 - Fax: 480.569.2379

---

[16] FAC ¶¶ 57 - 59; *Chuang v. Univ. of Cal. Davis, Bd. of Trs.*, 225 F.3d 1115, 1124 (9th Cir.2000) ("Each plaintiff can establish a prima facie case of disparate treatment by demonstrating that he was (1) at least forty years old, (2) performing his job satisfactorily, (3) discharged, and (4) either replaced by substantially younger employees with equal or inferior qualifications or discharged under circumstances otherwise "'giving rise to an inference of age discrimination.'"); Ageist comments can be taken into account to establish the inference of discrimination. *Brockbank v. U.S. Bancorp*, 506 F. App'x 604, 606 (9th Cir. 2013) ("This evidence, when considered with the ageist comments made by Sullivan, is sufficient to establish a prima facie case."); A nearly 30-year age difference between the Plaintiff and the replacement may be enough to create an inference of age discrimination. *Douglas v. Anderson*, 656 F.2d 528 (9th Cir. 1981) (a five-year age difference between the plaintiff and the replacement may be sufficient to establish a prima facie case of age discrimination); *Mark Starling v. Banner Health*, No. CV-16-00708-PHX-NVW, 2018 WL 397236, at *8 (D. Ariz. Jan. 12, 2018) (holding that a seven-year age difference between the plaintiff and the replacement may be sufficient to establish a prima facie case).

[17] FAC ¶ 49. The timing alone between the protected conduct and the termination may be sufficient to establish the causal link. *Passantino v. Johnson & Johnson Consumer Products, Inc.*, 212 F.3d 493, 507 (9th Cir. 2000) ("[W]e have held that evidence based on timing can be sufficient to let the issue go to the jury, even in the face of alternative reasons proffered by the defendant."); *Scott v. Mabus*, 618 F. App'x 897, 902 (9th Cir. 2015) ("The district court erred by stating that four months "is by itself insufficient" evidence of causation. We have previously held that "[d]epending on the circumstances, three to eight months is easily within a time range that can support an inference of retaliation.").

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

By:    /s/ Christopher R. Houk
Christopher R. Houk
*Attorneys for Sandra Matlock*

The foregoing was e-filed
with the Court this 11th day
of February 2021
and a copy emailed to:

Gordon Lewis
**JONES, SKELTON & HOCHULI, P.L.C.**
40 North Central Avenue, Suite 2700
Phoenix, Arizona 85004
*Attorneys for Defendants*

/s/Christopher R. Houk
Christopher R. Houk

**HOUK LAW FIRM, PLLC**
1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282
Telephone: 480.569.2377 - Fax: 480.569.2379

Page 6 of 6

Cheri L. McCracken, State Bar No. 006111
Attorney at Law
2402 North 24th Street
Phoenix, AZ 85008-1804
Phone: 602.231.0595
FAX: 602.231.0841
cherimccracken@gmail.com

Christopher R. Houk, State Bar No. 020843
**HOUK LAW FIRM, PLLC**
1050 East Southern Avenue, Suite A-3
Tempe, AZ 85282
Telephone: 480.569.2377
Facsimile:  480.569.2379
chouk@houklawfirm.com

*Attorneys for Sandra (Corder) Matlock*

Please send all documents to:
jmontanez@houklawfirm.com

**IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

**IN AND FOR THE COUNTY OF COCONINO**

| | |
|---|---|
| Sandra (Corder) Matlock,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>City of Flagstaff, a municipal corporation, Richard Tadder and Amanda Tadder, wife and husband,<br><br>　　　　Defendants. | Case No.  S0300-CV-2020-00504<br><br>**MOTION FOR LEAVE TO FILE THE FIRST AMENDED COMPLAINT** |

Plaintiff Sandra Corder Matlock respectfully requests that this Court grant her leave to Amend the Complaint to add claims under the Arizona Civil Rights Act that have recently become ripe. Plaintiff sought Defendants' consent for the amendment, but Defendants

HOUK LAW FIRM, PLLC
1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282
Telephone: 480.569.2377 - Fax: 480.569.2379

declined. Thus, pursuant to Arizona Rule of Civil Procedure 15(a)(2), Plaintiff seeks leave of this Court to amend the Complaint.

**Memorandum of Points and Authorities**

On December 1, 2020, the Arizona Attorney General's Office issued a Notice of Right to Sue, giving Plaintiff 90 days to file suit under the Arizona Civil Rights Act.[1] Plaintiff could not bring suit until receiving this Notice.[2]  Plaintiff's First Amended Complaint[3]  adds discrimination and retaliation claims under the Arizona Civil Rights Act. Specifically, Sandra alleges Defendant City of Flagstaff terminated her employment on basis of 1) sex and age in violation of A.R.S. § 41-1463 and 2) retaliation for complaining about sex and age discrimination under A.R.S. § 41-1464.

**I.  Leave to Amend Should Be Freely Granted.**

The Arizona Rules of Civil Procedure state that "[l]eave to amend must be freely given when justice requires."[4] The Arizona Supreme Court has stated that "amendments to pleadings should be granted with great liberality, so that cases may be decided on the merits rather than on mere technicalities of pleadings and so long as the granting of the amendment does not prejudice the other party."[5]

Importantly, "[t]he merits or facts of the controversy are not to be decided in the consideration of a motion to amend."[6]  Instead, "[t]he petitioners should have been allowed

HOUK LAW FIRM, PLLC
1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282
Telephone: 480.569.2377  -  Fax:  480.569.2379

---

[1] *See* Exhibit A.
[2] A.R.S. § 41-1481 ("Within ninety days after the giving of such notice [of the right to sue] a civil action may be brought against the respondent named in the charge by the charging party….").
[3] *See* Exhibit B.
[4] Ariz. R. Civ. P. 15(a)(2).
[5] *Cagle v. Carr*, 101 Ariz. 225, 227, 418 P.2d 381, 383 (Ariz. 1966).
[6] *Hernandez v. Maricopa Cnty. Superior Ct.*, 108 Ariz. 422, 422, 501 P.2d 6, 6 (Ariz. 1972).

to file their amended complaint, and the factual basis of the amended complaint could then be attacked under Rule 12(b) or Rule 56."[7]

## II.    Amending the Complaint Does Not Create Undue Delay, Bad Faith, Undue Prejudice, or Futility.

A denial of leave to amend should only be granted where there exists "'undue delay in the request, bad faith or a dilatory motive on the part of the movant, undue prejudice to the opposing party as a result of the amendment, or futility in the amendment.'"[8]

### A.  Sandra Did Not Unduly Delay in Adding Discrimination Claims.

"Although mere delay is not justification in and of itself for denial of leave to amend,"[9] undue delay may exist where counsel is "negligent in their efforts to prepare the case or complete discovery."[10]

Here, as noted above, Sandra's amendment for civil rights claims could not have been brought prior to the issuance the right to sue letter, so there is no undue delay.

### B.  Sandra Is Not Adding Discrimination Claims in Bad Faith.

Bad faith may be found where "the filing of the motion to amend was deliberately delayed by any improper motive…."[11]

Here, the proposed amendment is not in bad faith, but rather brought to enforce alleged violations of civil rights.

### C.  Adding Discrimination Claims Will Not Substantially Prejudice the Defendants.

HOUK LAW FIRM, PLLC
1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282
Telephone: 480.569.2377  -  Fax:  480.569.2379

---

[7] *Id.*
[8] *Bishop v. State Dept. of Corr.*, 172 Ariz. 472, 474–75, 837 P.2d 1207, 1209–10 (Ariz. Ct. App. 1992) (finding undue delay where Plaintiff "sought to amend her complaint more than two years after filing her original complaint and only a few months before the date set for trial.").
[9] *Schoolhouse Educ. Aids, Inc. v. Haag,* 145 Ariz. 87, 91, 699 P.2d 1318, 1322 (Ct. App. 1985)
[10] *Owen v. Superior Court of State of Ariz., In & For Maricopa Cty.,* 133 Ariz. 75, 80, 649 P.2d 278, 283 (1982).
[11] *Id.*

Page 3 of 6

HOUK LAW FIRM, PLLC
1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282
Telephone: 480.569.2377 - Fax: 480.569.2379

Undue or "substantial prejudice to the opposing party is a critical factor used in determining whether an amendment should be granted."[12] "Denial of leave to amend is generally considered an abuse of discretion where the amendment merely seeks to add a new legal theory supported by factual issues already in the case."[13]

Here, Defendants are not unduly prejudiced by an Amended Complaint because Plaintiff does not raise new factual issues close to the end of trial or discovery, but rather is brought at the initial phase of the case.

**D. Adding Sandra's Discrimination Claims Is Not Futile.**

As to futility, "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits."[14]

Finally, there's no futility with the amendment because the facts pled are sufficient to state a claim for discrimination and retaliation. Here, Sandra alleges she was discriminated against by Defendant City of Flagstaff based on her sex and age, and was fired immediately after she expressed her opposition to Defendant's treatment. There's ample factual support for these claims. As to the sex discrimination claims, Tadder engaged in years of sexist behavior.[15] Plaintiff was 57 years old at the time of her termination and her job duties were transferred to an employee about 30 years her junior, so the age difference of the replacement

---

[12] *Schoolhouse Educ. Aids, Inc. v. Haag,* 145 Ariz. 87, 91, 699 P.2d 1318, 1322 (Ct. App. 1985).
[13] *Walls v. Arizona Dep't of Pub. Safety*, 170 Ariz. 591, 597, 826 P.2d 1217, 1223 (Ct. App. 1991); *Uyleman v. D.S. Rentco*, 194 Ariz. 300, 303, 981 P.2d 1081, 1084 (Ariz. Ct. App. 1999) (Courts generally abuse their discretion in denying leave to amend "where the amendment merely advances a new legal theory.").
[14] *Spitz v. Bache & Co.*, 122 Ariz. 530, 531, 596 P.2d 365, 366 (1979) (citation and quotation omitted).
[15] FAC ¶¶ 24-42, 45-46.

combined with ageist comments, states a claim for age discrimination.[16]  As to retaliation, Tadder forced Sandra to resign within minutes after she reported his sexist behavior to HR, establishing a causal connection between Sandra's complaint and her termination.[17] Therefore, Plaintiff's claims for unlawful termination based on sex and age under A.R.S. § 41-1463, as well as for retaliation for reporting unlawful discrimination under A.R.S. § 41-1464, are not futile.

Thus, in sum, the amendment should be granted.

**III.        Conclusion.**

Because leave to amend a complaint should be granted liberally where there is no undue delay, prejudice, or futility, such as here, Sandra respectfully requests the Court allow her to amend her complaint to add civil rights claims.

DATED this 11th day of February, 2021.

---

[16] FAC ¶¶ 57 - 59; *Chuang v. Univ. of Cal. Davis, Bd. of Trs.,* 225 F.3d 1115, 1124 (9th Cir.2000) ("Each plaintiff can establish a prima facie case of disparate treatment by demonstrating that he was (1) at least forty years old, (2) performing his job satisfactorily, (3) discharged, and (4) either replaced by substantially younger employees with equal or inferior qualifications or discharged under circumstances otherwise "'giving rise to an inference of age discrimination.'"); Ageist comments can be taken into account to establish the inference of discrimination. *Brockbank v. U.S. Bancorp,* 506 F. App'x 604, 606 (9th Cir. 2013) ("This evidence, when considered with the ageist comments made by Sullivan, is sufficient to establish a prima facie case."); A nearly 30-year age difference between the Plaintiff and the replacement may be enough to create an inference of age discrimination. *Douglas v. Anderson,* 656 F.2d 528 (9th Cir. 1981) (a five-year age difference between the plaintiff and the replacement may be sufficient to establish a prima facie case of age discrimination); *Mark Starling v. Banner Health,* No. CV-16-00708-PHX-NVW, 2018 WL 397236, at *8 (D. Ariz. Jan. 12, 2018) (holding that a seven-year age difference between the plaintiff and the replacement may be sufficient to establish a prima facie case).

[17] FAC ¶ 49. The timing alone between the protected conduct and the termination may be sufficient to establish the causal link. *Passantino v. Johnson & Johnson Consumer Products, Inc.,* 212 F.3d 493, 507 (9th Cir. 2000) ("[W]e have held that evidence based on timing can be sufficient to let the issue go to the jury, even in the face of alternative reasons proffered by the defendant."); *Scott v. Mabus,* 618 F. App'x 897, 902 (9th Cir. 2015) ("The district court erred by stating that four months "is by itself insufficient" evidence of causation. We have previously held that "[d]epending on the circumstances, three to eight months is easily within a time range that can support an inference of retaliation.").

HOUK LAW FIRM, PLLC
1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282
Telephone: 480.569.2377 - Fax: 480.569.2379

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

By:    /s/ Christopher R. Houk
        Christopher R. Houk
        *Attorneys for Sandra Matlock*

The foregoing was e-filed
with the Court this 11th day
of February 2021
and a copy emailed to:

Gordon Lewis
**JONES, SKELTON & HOCHULI, P.L.C.**
40 North Central Avenue, Suite 2700
Phoenix, Arizona 85004
*Attorneys for Defendants*

/s/Christopher R. Houk
Christopher R. Houk

HOUK LAW FIRM, PLLC
1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282
Telephone: 480.569.2377 - Fax: 480.569.2379

Page 6 of 6

Cheri L. McCracken, State Bar No. 006111
Attorney at Law
2402 North 24th Street
Phoenix, AZ 85008-1804
Phone: 602.231.0595
FAX: 602.231.0841
cherimccracken@gmail.com

Christopher R. Houk, State Bar No. 020843
**HOUK LAW FIRM, PLLC**
1050 East Southern Avenue, Suite A-3
Tempe, AZ 85282
Telephone: 480.569.2377
Facsimile:  480.569.2379
chouk@houklawfirm.com

*Attorneys for Sandra (Corder) Matlock*

Please send all documents to:
jmontanez@houklawfirm.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

HOUK LAW FIRM, PLLC
1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282
Telephone: 480.569.2377 • Fax:  480.569.2379

**IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

**IN AND FOR THE COUNTY OF COCONINO**

| | |
|---|---|
| Sandra (Corder) Matlock, | Case No.  CV202000504 |
| Plaintiff, | |
| vs. | **FIRST    AMENDED**   CIVIL **COMPLAINT AND DEMAND FOR JURY TRIAL** |
| City of Flagstaff, a municipal corporation, Richard Tadder and Amanda Tadder, wife and husband, | |
| Defendants. | |

Plaintiff Sandra (Corder) Matlock submits this Complaint for relief and Jury Trial Demand pursuant to Arizona Rules of Civil Procedure against Defendants because Defendants improperly interfered with Plaintiff's employment.

**Plaintiff's Claims**

Page 1 of 22

1.     Tortious Interference with Employment.

2.     A.R.S. § 41-1463, Termination Based on Sex under the Arizona Civil Rights Act (ACRA);

3.     A.R.S. § 41-1463, Termination Based on Age under the ACRD; and

4.     A.R.S. § 41-1464, Retaliation for Reporting Sex and Age Discrimination under the ACRA.

1.

**The Parties and Jurisdiction**

2.5.    The Plaintiff, Sandra Matlock, has been at all times material to this Complaint:

    a. An adult resident of Coconino County, and currently resides in Florida;

    b. Employed by Defendant City of Flagstaff, a municipal corporation; and

    c. A person whose sex is female and whose age is 58 years old.

3.6.    Defendant City of Flagstaff is, and has been at all times material to this Complaint:

    a. A municipal corporation and a body politic, established and operating pursuant to the Arizona Constitution, Art. XIII, § 1, and Title 9 of the Arizona Revised Statutes;

    b. The employer of Plaintiff, as that term is defined in 2000e(b) in 29 U.S.C. § 630 and A.R.S. § 41-1461;

    c. An employer of more than fifteen persons; and

    d. Located within Arizona, including Coconino County, Arizona.

4.7.    Defendant Richard Tadder (Tadder) is, and had been at all times relevant to this Complaint,

HOUK LAW FIRM, PLLC<br>1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282<br>Telephone: 480.569.2377 · Fax: 480.569.2379

HOUK LAW FIRM, PLLC
1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282
Telephone: 480.569.2377 - Fax: 480.569.2379

a. An adult resident of Coconino County, Arizona;

b. Employed by the City of Flagstaff;

c. Acting in the course of scope of business on behalf of the City of Flagstaff as its employee; and

d. Upon information and belief, is married to Amanda Tadder, acting on behalf of the marital community of his spouse and himself.

5.8.    Many of the events alleged occurred in Coconino County, Arizona, and Coconino County is the domicile of all parties at all relevant times.

6.9.    Coconino County is the appropriate venue pursuant to A.R.S. § 12-401 because Defendant resides in the County.

7.10.    Sandra has satisfied all conditions precedent to filing suit, including service of the Notice of Claim against both Tadder and the City of Flagstaff on May 27, 2020.

8.11.    Plaintiff gives notice that she has the additional, following claims against the City of Flagstaff based in part on Defendant's actions under Title VII on sex and retaliation against her that are not yet ripe because the EEOC has not issued a right to sue letter:

a. Title VII, 42 U.S.C. § 2000(e)-2(1) – Termination Based on Sex;

b. Title VII, 42 U.S.C. § 2000(e)-3(a) – Retaliation for Reporting Sex Discrimination;

c. 29 U.S.C. § 623, Age Discrimination in Employment Act.

Plaintiff will seek to amend her complaint when the right to sue letter is issued.

12.    On December 1, 2020, the Arizona Attorney General's Office issued a right to sue letter regarding state discrimination claims.

13.    The pre-suit requirements of A.R.S. § 41-1481(D) have been met.

Page 3 of 22

9.14.    Amanda Tadder is named solely because of Arizona's community property laws and is properly joined pursuant to Ariz. R. of Civ. P. 19.

**Demand for Jury Trial**

10.15.    While a written Jury demand is not necessary, pursuant to Rule 38 of the Arizona Rules of Civil Procedure, Plaintiff Sandra demands a trial by jury.

<u>**Fact Allegations in Support of All Counts**</u>

**For Four years, the City of Flagstaff Recognized Sandra's Excellent Job Performance.**

11.16.  Sandra re-alleges and incorporates each allegation of this complaint as if fully set forth in this claim.

12.17.  In February 2015, Sandra started at the City of Flagstaff as a Customer Service Manager.

13.18.  In eight months, she moved from Customer Service Manager to Sales Tax Manager, one month later to Interim Revenue Director in November 2015 and by July 2017 to Revenue Director where she remained until her termination in December 2019.

14.19.  In her role as Revenue Director, she oversaw the city's sizeable investment portfolio and budget, built and maintained relationships with vendors and community partners, and oversaw an award-winning team in her department, among other, important duties.

15.20.  During her time at the City of Flagstaff, Sandra received several performance-based awards—sometimes multiple awards per year—and often given directly by the City Manager himself. For example,

Page 4 of 22

HOUK LAW FIRM, PLLC
1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282
Telephone: 480.569.2377 - Fax:    480.569.2379

- From 2015 to 2019, Sandra was recognized with 25 different "On the Spot" awards from co-workers, colleagues, team members and other Flagstaff employees;

- In 2015, Sandra was honored with the City Manager Agassiz Award for Teamwork; 7K Award for Service at a Higher Elevation—bestowed directly by the City Manager; and

- In 2016, Sandra received her second 7K Award for Service at a Higher Elevation; Wonderful Outstanding Worker for Outstanding Performance.

16.21. In 2017, Sandra received her second City Manager Agassiz Award for Leadership; and

17.22. In 2018, Sandra earned her second Wonderful Outstanding Worker award for Outstanding Performance and a Blue Ribbon from Flagstaff Toastmasters, which demonstrates her presentation skills critical to her job duties.

18.23. Before Sandra joined the City of Flagstaff, she enjoyed a 28-year career in the public service sector in Orange County, California. There, too, the County of Orange promoted her through seven levels of supervision and four levels of management to the position of Program Manager of the Alcohol and Drug Abuse Program. During her time with Orange County, Sandra's work was recognized various time, including with the following awards:

   a.    Outstanding Leadership and Achievement Award by the County of
         Orange United Way;

   b.    Woman of Achievement; and

   c.    Rising Gold Star.

HOUK LAW FIRM, PLLC
1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282
Telephone: 480.569.2377 - Fax: 480.569.2379

HOUK LAW FIRM, PLLC
1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282
Telephone: 480.569.2377 · Fax: 480.569.2379

**City of Flagstaff Management Services Director Rick Tadder Exhibited a Pattern of Sexual Harassment Towards Women, Especially Sandra.**

19.24. Starting around December 2015—a few months after beginning work with the City of Flagstaff and directly following her reporting to Management Services Director Rick Tadder—Rick regularly engaged in offensive actions toward Sandra and other women.

20.25. Rick repeatedly refused to train Sandra on his expectations but regularly gave her negative feedback on her projects.

21.26. Rick demeaned Sandra in front of colleagues by unreasonably and unjustifiably criticizing her work.

22.27. Sandra coined the term "Tadderizing," a euphemism for Tadder tearing apart and "terrorizing" specifically her.

23.28. The term "Tadderizing" was adopted by other colleagues who witnessed the treatment.

24.29. Tadder himself began using the term in yet another effort to demean Sandra.

25.30. Tadder repeatedly rolled his eyes, shrugged his shoulders, laughed, and shook his head in disdain toward Sandra and other women during meetings.

26.31. In December 2018, Tadder's temper escalated during a meeting. Those in attendance included: Sandra, a new Customer Service Supervisor Danielle Tiedeman, a potential cash-handling vendor, and former customer Service Manager, Michele Bader, as well as other team members were present. In front of others, Tadder yelled at Sandra, questioning her abilities. Tiedeman became visibly shaken. Sandra was afraid that she would lose her job if she defended herself.

Page 6 of 22

27.32.  Shortly after this meeting in 2018, Customer Service Manager, Michele Bader resigned, citing "Rick Tadder" as her only reason for leaving city employment. She told Sandra directly not to trust Tadder before she left.

28.33.  In early 2019, Finance Director, Brandi Suda, came to Sandra in tears, seeking emotional support after Tadder had demeaned her.

29.34.  By September 2019, Tadder's harassing emails and in-person bullying against Sandra had become routine, at least once a week.

30.35.  In late September 2019, Sandra attended a meeting where a draft project on Sales Tax Information to Council was presented by Economic Vitality Director, Heidi Hansen, and Community Investment Director, David McIntire.

31.36.  When Sandra made a suggestion on changing the formatting of a chart, Tadder shrugged his shoulders and rolled his eyes, blowing her off.

32.37.  Tadder then presented the same exact idea that he had just ignored from Sandra as his own. Sandra then confronted him and told him that she had just said the same thing, but Tadder told her that she did not.

33.38.  Hansen chimed in, stating, "In all fairness to Sandy, she did say just that," confirming that Sandra was the first to present the idea.

34.39.  It was not until McIntire also supported Sandra that Tadder finally backed down from claiming the idea as his own.

35.40.  This happened a second time during the same meeting just minutes later, where Tadder denied Sandra had the idea first and David felt compelled to bring it to Tadder's attention once more.

Page 7 of 22

HOUK LAW FIRM, PLLC
1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282
Telephone: 480.569.2377  ·  Fax:  480.569.2379

36.41. At least one other co-worker, Financial Systems Analyst Martin Collins noted Tadder's disparate treatment of Sandra. His behavior became so incessant that Sandra's colleagues came to expect the treatment and were normalized to his treatment of Sandra, and therefore no longer reacted.

37.42. Tadder did not treat men in the same way.

**Tadder's Harassment of Sandra Reached a Boiling Point During a Work Trip With Colleagues**

38.43. In October 2019, Tadder and Sandra attended a work conference in Colorado with several other City of Flagstaff employees. Tadder, Sandra, and several other employees attended a networking event sponsored by a client. After the event, the City of Flagstaff team all went to dinner together outside of the conference, on their personal time.

39.44. At the networking event and at dinner, each employee had at least one drink. Tadder was aware that Sandra had some drinks, as he had.

40.45. At dinner, Tadder continued his history of singling Sandra out, criticizing Sandra's work, being negative toward her, and saying demeaning comments towards her:

    a. In a sign of his control and lack of respect toward her, at one point, when Sandra said she needed to go to the restroom, Tadder told her, she didn't need to go and sit down.

    b. This time, Tadder was acting in a particularly humiliating way because he berated Sandra in front of Jessica Huleatt, a Customer Service Manager, who reported to Sandra.

HOUK LAW FIRM, PLLC
1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282
Telephone: 480.569.2377 - Fax: 480.569.2379

c.  Tadder also got angry with Sandra for making a joke about who was covering
the tab for dinner and made an insensitive racial comment about a black
waiter, to which Sandra objected.

41.46.  Sandra left the table and went to the bathroom, despite Tadder telling her to sit down. When she returned, Sandra attempted to lighten the mood and told a joke about who was paying the dinner bill. Tadder responded by increasing his disparaging remarks. The combination of these events at dinner, plus the years of distress caused by Tadder, led Sandra to become upset, resulting in Sandra accidently knocking over glasses on the table. Tadder's condescending behavior triggered Sandra's reaction to his years of his harassing behavior.

42.47.  There, her emotions culminated in a series of texts to Tadder. In her texts, she called out his insensitive behavior, telling him she will "not be demeaned" anymore, that she had witnesses to his poor treatment of women, and that he bullied another woman (Brandi Suda) to the point of tears.

**Tadder Terminated Sandra's Employment In Retaliation Minutes After Her
Opposition to His Treatment of Women**

43.48.  Sandra texted Tadder that she "no longer report[s] to you [meaning Tadder] as I have submitted my resignation" by which she meant, she wanted to work for someone else at the City. She also texted, "I'll be contacting HR in the morning".

44.49.  The next morning, Sandra left a voice mail for Shauna Fischer, HR Manager, reporting Tadder's harassment and stating her intent was not to resign. Tadder immediately forced Sandra to resign.  He contacted Allison Eckert, the Interim HR Director, who issued a resignation letter. Tadder did this without confirming Sandra's intent in the text message,

Page 9 of 22

knowing she was at a dinner and had been drinking—as he had—and knowing she was objecting to his harassing behavior.

**The City of Flagstaff Ultimately Terminated Sandra's Employment.**

45.50. At first, the City Manager, Greg Clifton, promptly reinstated Sandra's employment, placing her, rather than Tadder, on administrative leave until the City had time to assess the situation.

46.51. Instead of investigating Tadder's behavior, in mid-October 2019, Interim Human Resources Director, Allison Eckert, initiated an investigation into Sandra's conduct in Colorado, insinuating possible blame.

47.52. Sandra fully cooperated in the investigation.

48.53. Sandra also provided a detailed account of the incident and the harassment she suffered.

49.54. While Sandra made allegations of discrimination about Tadder's discrimination prior to what occurred in Colorado, the City refused to investigate those allegations, claiming to reserve them for later, stating "Other claims of harassment by Ms. Corder [Matlock] that fall outside of this event and timeframe will be investigated separately."

50.55. To date, the City has not involved Sandra in any investigation, nor disclosed the results of the allegations that Tadder engaged in longstanding discrimination against her and other women.

51.56. In mid-November 2019, the City stated they completed the investigation into the event in Colorado:

Page 10 of 22

Houk Law Firm, PLLC
1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282
Telephone: 480.569.2377 - Fax: 480.569.2379

a. While concluding that all of Sandra's harassment claims against Tadder during the Colorado trip were not substantiated—without explanation—the City turned the tables and found that Sandra—not Tadder—was at fault.

b. The City found Sandra was abusive and insubordinate to Tadder, again, without explanation.

c. The City recommended that the City Manager immediately terminate her employment, without any progressive discipline.

d. In November 2019, Sandra met with the City Manager Greg Clifton and offered alternatives to termination, in line with City policy, but the City refused to accept them and Clifton forced Sandra to resign or be terminated, effective December 2, 2019.

~~52.~~57.  At age 57 at the time of her termination, Sandra was one of the oldest City employees.

~~53.~~58.  During her employment, ageist comments were made to Sandra.

~~54.~~59.  The City transferred Sandra's job duties to an employee who is around 30 years of age.

**Count I**
**Tortious Interference with Employment**
**(Against Rick Tadder)**

~~55.~~60.  Sandra re-alleges and incorporates each allegation of this complaint as if fully set forth in this claim.

Page 11 of 22

HOUK LAW FIRM, PLLC
1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282
Telephone: 480.569.2377 · Fax: 480.569.2379

56.61.    Tadder tortiously interfered with Sandra's employment with the City of Flagstaff when he contacted HR, resulting in HR accepting Sandra's resignation that she did not intend, thus improperly causing her termination.

57.62.    Tadder terminated Sandra's employment knowing Sandra was objecting to his harassing behavior.

58.63.    Tadder's interference was improper. There was a business expectancy between Sandra and the City of Flagstaff. Tadder knew about Sandra's and the City of Flagstaff's shared business expectancy. He intentionally interfered with her employment, causing her termination.

59.64.    Tadder's interference caused damage to Sandra.

60.65.    As a direct and proximate result of the conduct by the City of Flagstaff, Sandra suffered compensatory damages including for pain, suffering (including pain and suffering due to developing PTSD), inconvenience, diminished enjoyment of life, humiliation, outrage, discomfort, anxiety, sorrow, fear, depression, loss of sleep, nightmares, loss of the love, care, affection, companionship, and close relationships, change in demeanor, and harmed reputation at work. Sandra is reasonably likely to incur more compensatory damages in the future.

61.66.    Sandra seeks a judgment for the following:

    a.    Compensatory and general damages in an amount to be determined by the trier-of-fact;

    b.    Monetary damages, including lost wages, salary, employment benefits, lost value of pension, and other compensation, in an amount to be proven at trial;

HOUK LAW FIRM, PLLC
1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282
Telephone: 480.569.2377 - Fax: 480.569.2379

c.    Interest at highest legal rate;

d.    Reinstatement, or front pay in lieu of reinstatement;

e.    Injunctive relief to prevent future similar violations and to remedy harm
      done to Sandra;

f.    Punitive damages because Tadder's interference was the result of malice,
      spite, ill-will, or reckless indifference to her rights; and

g.    Costs.

**Count II**
**Tortious Interference with Employment**
**(Against the City of Flagstaff)**

~~62.~~67.  Sandra re-alleges and incorporates each allegation of this complaint as if fully set forth in this claim.

~~63.~~68.    The City of Flagstaff tortiously interfered with Sandra's employment when he contacted HR, resulting in HR accepting Sandra's resignation that she did not intend, thus improperly causing her termination.

~~64.~~69.        The City terminated Sandra's employment knowing she was objecting to Tadder's harassing behavior.

~~65.~~70.        The City's interference was improper:

a.  There was a business expectancy between Sandra and the City of Flagstaff.

b.  The City intentionally interfered with her employment, causing her termination.

c.  The City's interference caused damage to Sandra.

Page 13 of 22

HOUK LAW FIRM, PLLC
1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282
Telephone: 480.569.2377 - Fax: 480.569.2379

Houk Law Firm, PLLC
1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282
Telephone: 480.569.2377 - Fax: 480.569.2379

66.71.     At all relevant times, Tadder was acting in the course of scope of his job duties and thus the City is liable for Tadder's intentional tort pursuant to the doctrine of respondeat superior.

67.72.   As a direct and proximate result of the conduct by the City of Flagstaff, Sandra suffered compensatory damages including for pain, suffering (including pain and suffering due to developing PTSD), inconvenience, diminished enjoyment of life, humiliation, outrage, discomfort, anxiety, sorrow, fear, depression, loss of sleep, nightmares, loss of the love, care, affection, companionship, and other close relationships, change in demeanor, and harmed reputation at work. Sandra is reasonably likely to incur more compensatory damages in the future.

68.73.   Sandra seeks a judgment for the following:

a.     Compensatory and general damages in an amount to be determined by the trier-of-fact;

b.     Monetary damages, including lost wages, salary, employment benefits, lost value of pension, and other compensation, in an amount to be proven at trial;

c.     Reinstatement, or front pay in lieu of reinstatement;

d.     Injunctive relief to prevent future similar violations and to remedy harm done to Sandra;

e.     Interest at the highest legal rate;

f.     Costs.

**Count III:**
**Termination Based Upon Sex**
**Arizona Civil Rights Act, A.R.S. § 41-1463**

Page 14 of 22

**(Against the City of Flagstaff)**

74.    Sandra re-alleges and incorporates each allegation of this complaint as if fully set forth in this claim.

75.    The City of Flagstaff discriminated against Sandra in violation of A.R.S. §41-1463(b)(1), including by terminating her on the basis of her sex.

76.    As a direct and proximate result of the conduct by the City of Flagstaff, Sandra lost wages.

77.    Sandra seeks a judgment for the following:

   a.   Monetary damages, including lost wages, salary, employment benefits, lost value of pension, and other compensation, in an amount to be proven at trial;

   b.   Reinstatement, or front pay in lieu of reinstatement;

   c.   Injunctive relief to prevent future similar violations of the state statutes and to remedy harm done to Sandra;

   d.   Her reasonable attorney's fees and expert fees incurred herein, pursuant to A.R.S. § 41-1481(G) and Local Rule of Civil Procedure 54.2; and

   e.   Her taxable costs incurred herein, pursuant to A.R.S. § 41-1481(G).

**Count IV:**
**Unlawful Termination**
**Age Discrimination, Arizona Civil Rights Act, A.R.S. § 41-1463**
**(Against the City of Flagstaff)**

78.    Sandra re-alleges and incorporates each allegation of this complaint as if fully set forth in this claim.

76.    Defendant discriminated against Sandra in violation of A.R.S. §41-1463, including by terminating Sandra's employment because of her age.

HOUK LAW FIRM, PLLC
1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282
Telephone: 480.569.2377 - Fax: 480.569.2379

Formatted: Numbered + Level: 1 + Numbering Style: a, b, c, … + Start at: 1 + Alignment: Left + Aligned at: 1" + Indent at: 1.25"

79.     As a direct and proximate result of the conduct by the City of Flagstaff, Sandra lost wages.

80.     Sandra seeks a judgment for the following:

a.   Monetary damages, including lost wages, salary, employment benefits, lost value of pension, and other compensation, in an amount to be proven at trial;

b.   Reinstatement, or front pay in lieu of reinstatement;

c.   Injunctive relief to prevent future similar violations of the state statutes and to remedy harm done to Sandra;

d.   Her reasonable attorney's fees and expert fees incurred herein, pursuant to A.R.S. § 41-1481(G) and Local Rule of Civil Procedure 54.2; and

e.   Her taxable costs incurred herein, pursuant to A.R.S. § 41-1481(G).

**Count V**
**Retaliation for Reporting Sex-Based and Age-Based Discrimination**
**Arizona Civil Rights Act, A.R.S. § 41-1464**
**(Against the City of Flagstaff)**

81.     Sandra re-alleges and incorporates each allegation of this complaint as if fully set forth in this claim.

82.     The City of Flagstaff retaliated against Sandra in violation of A.R.S. § 41-1464, including by terminating her employment because she complained about discrimination made unlawful under the ACRA.

83.     As a direct and proximate result of the conduct by the City of Flagstaff, Sandra lost wages.

84.     Sandra seeks a judgment for the following:

Page 16 of 22

HOUK LAW FIRM, PLLC
1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282
Telephone: 480.569.2377  -  Fax:  480.569.2379

**Formatted:** Numbered + Level: 1 + Numbering Style: a, b, c, … + Start at: 1 + Alignment: Left + Aligned at:  1" + Indent at:  1.25"

Houk Law Firm, PLLC
1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282
Telephone: 480.569.2377 - Fax:  480.569.2379

a.   Monetary damages, including lost wages, salary, employment benefits, lost value of pension, and other compensation, in an amount to be proven at trial;

b.   Reinstatement, or front pay in lieu of reinstatement;

c.   Injunctive relief to prevent future similar violations of the state statutes and to remedy harm done to Sandra;

d.   Her reasonable attorney's fees and expert fees incurred herein, pursuant to A.R.S. § 41-1481(G) and Local Rule of Civil Procedure 54.2; and

e.   Her taxable costs incurred herein, pursuant to A.R.S. § 41-1481(G).

**Future Claim, Count III:**
**Termination Based Upon Sex**
**Title VII, 42 U.S.C. § 2000e-2(a)(1)**

69.85.  Sandra re-alleges and incorporates each allegation of this complaint as if fully set forth in this claim.

70.86.  City of Flagstaff terminated Sandra's employment in violation of 42 U.S.C. § 2000e-2(1) based on sex.

71.87.  As a direct and proximate result of the conduct by City of Flagstaff, Sandra is entitled to compensatory damages including for pain, suffering (including pain and suffering due to developing PTSD), inconvenience, diminished enjoyment of life, humiliation, outrage, discomfort, anxiety, sorrow, fear, depression, loss of sleep, nightmares, loss of the love, care, affection, companionship, and other close relationships, change in demeanor, and harmed reputation at work. Sandra is reasonably likely to incur more compensatory damages in the future.

Page 17 of 22

72.88. Injunctive relief should be granted for Sandra against Defendant to prevent further acts of discrimination, particularly since the Defendant appears to be oblivious to their duties and liabilities under 42 U.S.C. § 2000(e)-2(1).

73.89. The unlawful employment practices complained of were intentional.

74.90. Sandra seeks a judgment for the following:

g.f.    Compensatory and general damages in an amount to be determined by the trier-of-fact;

h.g.    Monetary damages, including lost wages, salary, employment benefits, lost value of pension, and other compensation, in an amount to be proven at trial;

i.h.    Reinstatement, or front pay in lieu of reinstatement;

j.i.    Injunctive relief to prevent future similar violations of federal statutes and to remedy harm done to Sandra;

k.j.    Her reasonable attorney's fees and expert fees incurred herein, pursuant to 42 U.S.C. § 1988 (b), (c), Federal Rule of Civil Procedure 54(d)(2), and Local Rule of Civil Procedure 54.2; and

l.k.    Her taxable costs incurred herein, pursuant to Federal Rule of Civil Procedure 54(d)(1), Local Rule of Civil Procedure 54.1, and 28 U.S.C. § 1920.

**Future Claim, Count IV**
**Retaliation For Reporting Sex-Based Discrimination**
**Title VII, 42 USC § 2000e-3(a)**

75.91. Sandra re-alleges and incorporates each allegation of this complaint as if fully set forth in this claim.

Page 18 of 22

HOUK LAW FIRM, PLLC
1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282
Telephone: 480.569.2377 - Fax: 480.569.2379

**Formatted:** Indent: Left: 0", First line: 0.5", Numbered + Level: 1 + Numbering Style: a, b, c, … + Start at: 1 + Alignment: Left + Aligned at: 1" + Indent at: 1.25"

76.92.  The City of Flagstaff retaliated against Sandra in violation of U.S.C. § 2000e-3(a) including by terminating her employment because she complained about discrimination on the basis of sex.

77.93.  As a direct and proximate result of the conduct of the City of Flagstaff, Sandra is entitled to compensatory damages including for lost earnings and benefits, decrease in earnings power or capacity, pain, suffering, inconvenience, diminished enjoyment of life, humiliation, outrage, discomfort, and harmed reputation at work and her industry. Sandra is also reasonably likely to incur more compensatory damages in the future.

78.94.  The unlawful employment practices complained of were intentional.

79.95.  Sandra seeks a judgment for the following:

    a.    Injunctive relief, including enjoining harassment and implementing policy changes, training, and changing her status to eligible for rehire;

    b.    Back pay, reinstatement in lieu of front pay, or front pay with interest;

    c.    Compensatory and general damages in an amount to be determined by the trier-of-fact;

    d.    Her reasonable attorney's fees and expert fees incurred herein, pursuant to 42 U.S.C. § 1988 (b), (c), Federal Rule of Civil Procedure 54(d)(2), and Local Rule of Civil Procedure 54.2; and

    e.    Her taxable costs incurred herein, pursuant to Federal Rule of Civil Procedure 54(d)(1), Local Rule of Civil Procedure 54.1, and 28 U.S.C. § 1920.

**Future Claim, Count IV:**
**Unlawful Termination**
**Age Discrimination in Employment Act, 29 U.S.C. § 623**

Page 19 of 22

HOUK LAW FIRM, PLLC
1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282
Telephone: 480.569.2377 · Fax: 480.569.2379

**(City of Flagstaff)**

76.77.  The Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623(a)(1), prohibits employers from terminating their employees because of age.

77.78.  Defendant violated the ADEA when it terminated Sandy's employment because of her age.

78.79.  As a direct and proximate result of the conduct of Defendant, Plaintiff lost wages, in an amount to be proven at trial.

79.80.  Defendant's unlawful employment practices were willful within the meaning of the ADEA, 29 U.S.C. § 626(b).

80.96.  Sandra seeks a judgment for the following:

> f.    Injunctive relief, including enjoining discrimination and implementing policy changes, training, and changing her status to eligible for rehire;
>
> g.    Back pay, reinstatement in lieu of front pay, or front pay with interest;
>
> h.    Liquidated damages;
>
> i.    Her reasonable attorney's fees and expert fees incurred herein, pursuant to 42 U.S.C. § 1988 (b), (c), Federal Rule of Civil Procedure 54(d)(2), and Local Rule of Civil Procedure 54.2; and
>
> j.    Her taxable costs incurred herein, pursuant to Federal Rule of Civil Procedure 54(d)(1), Local Rule of Civil Procedure 54.1, and 28 U.S.C. § 1920.

WHEREFORE, Sandra prays for the following relief:

Page 20 of 22

HOUK LAW FIRM, PLLC
1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282
Telephone: 480.569.2377  -  Fax:  480.569.2379

1.     For a declaration that City of Flagstaff violated Sandra's rights under Title VII and the Arizona Civil Rights Act (ACRA);

2.     For a declaration that Tadder and the City of Flagstaff improperly interfered with Sandra's rights;

3.     All relief available under the statutes and common laws asserted in this case;

4.     For injunctive relief, including a permanent injunction prohibiting City of Flagstaff from engaging in discrimination under Title VII and the ACRA;

5.     For equitable relief such as employment, promotion, reinstatement or, in lieu of reinstatement, front pay;

6.     For compensation for past and future non-pecuniary losses resulting from the unlawful practices under Title VII, the ACRA, and the interference claim;

6.7.     Monetary damages, including lost wages, salary, employment benefits, lost value of pension, and other compensation, in an amount to be proven at trial;

7.8.     For punitive damages resulting from the improper interference claim;

8.9.     For liquidated damages under the ADEA;

9.10.     For interest on the above amounts at the highest legal rate from the date of Judgment until paid in full;

10.11.     For reasonable attorneys' fees;

11.12.     Taxable costs; and

12.13.     All other relief the court shall deem is just.


**DATED** this _____ day of _____ 202110.

Page 21 of 22

**HOUK LAW FIRM, PLLC**

By:    /s/ Christopher R. Houk
      Christopher R. Houk
      *Attorneys for Sandra Matlock*



## OFFICE OF THE ARIZONA ATTORNEY GENERAL

### CIVIL LITIGATION DIVISION
### DIVISION OF CIVIL RIGHTS SECTION

**MARK BRNOVICH**
**ATTORNEY GENERAL**

**REBEKAH BROWDER**
**CHIEF COUNSEL**

## NOTICE OF RIGHT TO SUE

*Sandra Marie Corder*        v.        *City of Flagstaff*

CRD No.:    CRD-2020-0189          EEOC No.: 35A-2020-00277

On 02/25/2020, you filed a charge with the Division of Civil Rights Section alleging employment discrimination. Arizona law provides that you may bring a civil action in Superior Court of the county where the alleged discriminatory action took place. Should you decide to file a civil action, you must do so **within 90 days** of the date you receive this Notice or **within one year** of the date you filed the charge, **whichever comes first.** A.R.S. 41-1481(D.)

This Notice of Right to Sue letter is being issued because:

the Division of the Civil Rights Section has not completed the processing of your charge(s), but there are approximately 90 days left before the expiration of the one year deadline for filing a civil action in Superior Court.

If you have any questions concerning this notice, please contact us at 602-542-5263 or toll free at 1-877-491-5742. If you need legal assistance, you should seek the advice of an attorney.

BY:

*Stephen Scott, Compliance Manager*

Sent by regular mail this 1st day of December 2020

Cc: Sandra Marie Corder c/o Cheri L. McCracken, Esq. and City of Flagstaff c/o Gordon Lewis, Esq.

rec'd
12/3/2020

Cheri L. McCracken, State Bar No. 006111
Attorney at Law
2402 North 24th Street
Phoenix, AZ 85008-1804
Phone: 602.231.0595
FAX: 602.231.0841
cherimccracken@gmail.com

Christopher R. Houk, State Bar No. 020843
**HOUK LAW FIRM, PLLC**
1050 East Southern Avenue, Suite A-3
Tempe, AZ 85282
Telephone: 480.569.2377
Facsimile:  480.569.2379
chouk@houklawfirm.com

*Attorneys for Sandra (Corder) Matlock*

Please send all documents to:
jmontanez@houklawfirm.com

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

## IN AND FOR THE COUNTY OF COCONINO

| | |
|---|---|
| Sandra (Corder) Matlock, | Case No.  CV202000504 |
| Plaintiff, | **ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO FILE THE FIRST AMENDED COMPALINT** |
| vs. | |
| City of Flagstaff, a municipal corporation, Richard Tadder and Amanda Tadder, wife and husband, | |
| Defendants. | |

Upon Review of Plaintiff's Motion for Leave to File the First Amended Complaint, and good cause appearing,

IT IS HEREBY ORDERED granting Plaintiff's Motion for Leave to File the First Amended Complaint.

HOUK LAW FIRM, PLLC
1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282
Telephone: 480.569.2377 - Fax:  480.569.2379

**HOUK LAW FIRM, PLLC**
1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282
Telephone: 480.569.2377 - Fax: 480.569.2379

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**DONE IN OPEN COURT** this _____ day of _____, 2021.

_____
*Honorable Catherine Brown Nichols*

**HOUK LAW FIRM, PLLC**

By:    /s/ Christopher R. Houk
            Christopher R. Houk
            *Attorneys for Sandra Matlock*

1  Gordon Lewis, Bar #015162
   JONES, SKELTON & HOCHULI, P.L.C.
2  40 North Central Avenue, Suite 2700
   Phoenix, Arizona  85004
3  Telephone:  (602) 263-7341
   Fax:  (602) 200-7897
4  glewis@jshfirm.com
   minuteentries@jshfirm.com
5
   Attorneys for Defendants City of Flagstaff,
6  Richard Tadder and Amanda Tadder

7
                    **SUPERIOR COURT OF THE STATE OF ARIZONA**
8
                              **COUNTY OF COCONINO**
9

10  SANDRA (CORDER) MATLOCK,              NO. S0300CV202000504

11                          Plaintiff,   **DEFENDANTS' RESPONSE IN
                                         OPPOSITION TO PLAINTIFF'S**
12      v.                               **MOTION FOR LEAVE TO FILE THE
                                         FIRST AMENDED COMPLAINT**
13  CITY OF FLAGSTAFF, a municipal
    corporation, RICHARD TADDER and      **(Oral Argument Requested)**
14  AMANDA TADDER, wife and husband,
                                         (Assigned to the Honorable Catherine Brown
15                        Defendants.    Nichols)

16

17
            Defendants Rick Tadder and Amanda Tadder oppose Plaintiff's Motion for Leave
18
    to Amend.[1] The Court should deny Plaintiff's motion to add the proposed claims against the
19
    City of Flagstaff because those claims are untimely, the amendment would be futile, and adding
20
    claims and defendants to this matter would prejudice the Tadders.
21
    **I.    FACTUAL BACKGROUND**
22
            Plaintiff Sandra Corder was an employee of the City of Flagstaff. (Complaint at ¶
23
    2). Rick Tadder was her supervisor. (Complaint at ¶¶ 4, 19). While attending a work conference
24

25  ─────────────
        [1] While the City of Flagstaff is listed in the caption, there is no active claim against the
    City of Flagstaff in this lawsuit and the City of Flagstaff has not been served with this lawsuit.
    The City of Flagstaff is not a current defendant in the matter.

1   in Colorado in October of 2019, Plaintiff had an emotional reaction while at dinner with Mr.

2   Tadder and other colleagues. (Complaint at ¶¶ 38-41). Later that same evening, Plaintiff and Mr.

3   Tadder exchanged a series of text messages during which Plaintiff told Mr. Tadder that she "no

4   longer reports to you [meaning Tadder] as I have submitted my resignation." (Complaint at ¶¶

5   42-43). Mr. Tadder informed the City of Flagstaff Human Resource Department that Plaintiff

6   had communicated her desire to resign. (Complaint at ¶¶ 43, 44, and 56).

7           The City initially processed Plaintiff as a resignation, but stopped that process and

8   instead placed her on administrative leave in order to further investigate her conduct at the

9   conference. (Complaint at ¶¶ 44-46). The investigation revealed that Plaintiff was both

10  unprofessional and insubordinate, and resulted in a recommendation for her termination.

11  (Complaint at ¶ 51). After being notified of the termination recommendation, Plaintiff resigned

12  her employment with the City on December 2, 2019. *Id.*

13          Plaintiff filed her original Complaint in this action on October 6, 2020 bringing

14  one count of Tortious Interference with Employment against Rick Tadder.  *See* Complaint.

15  Plaintiff now seeks to add a new defendant and three new claims to this matter. Specifically,

16  Plaintiff's proposed First Amended Complaint seeks to add a claim for Termination Based on

17  Sex pursuant to Arizona Revised Statute ("A.R.S.") § 41-1463, a claim for Termination Based

18  on Age pursuant to A.R.S. § 41-1463, and a claim for Retaliation for Reporting Sex and Age

19  Discrimination pursuant to A.R.S. § 41-1464. Those claims all accrued at the latest on

20  December 2, 2019, when Plaintiff resigned her position with the City. Now, well more than a

21  year later, she seeks to add those and add the City as a Defendant. As will be discussed more

22  fully below, this effort is futile, it prejudices the Tadders, and it should be denied.

23  II.    **LEGAL ARGUMENT**

24          A.    **Plaintiff's proposed amendment is futile because the claims asserted in the
                  First Amended Complaint are untimely.**

25          While leave to amend must be freely given when justice requires, a request to

26  amend may be denied if the amendment would be futile. *See First-Citizens Bank & Trust*

*Company v. Morari*, 242 Ariz 562, 567 (App. 2017)*; Tumacacori Mission Land Dev., Ltd. v. Union Pac. R.R. Co.*, 231 Ariz. 517 (App. 2013); *Bishop v. State, Dept. of Corr.*, 172 Ariz. 472 (App. 1992). An amendment is futile if it seeks to add a claim or cause of action that is barred by the applicable statute of limitations. *See Deutsche Bank National Trust Company v. Phesant Grove LLC*, 245 Ariz. 325, 331 (App. 2018) (citing *Tovrea v. Nolan*, 178 Ariz. 485, 490 (App. 1993)) (denying Plaintiff's Motion to Amend which sought to add a declaratory relief claim as the court had previously ruled that the statute of limitations barred that claim).

Here, Plaintiff faced a one-year statute of limitations to bring her claim against the City of Flagstaff or Rick Tadder. *See* Arizona Revised Statute § 12-821 ("All actions against any public entity or public employee shall be brought within one year after the cause of action accrues and not afterward.) A.R.S. § 12-821.01(B) states that a cause of action against a public entity or public employee "accrues when the damages party realizes he or she has been damaged or knows or reasonably should know the cause, source, act, event, instrumentality or condition that caused or contributed to the damage." Plaintiff's claims against the City of Flagstaff and Rick Tadder accrued on December 2, 2019 when she resigned her employment with the City. Therefore, she had until December 2, 2020 to bring any and all claims against the City and/or Mr. Tadder. Amending the Complaint at this stage to bring new claims against the City is untimely, and the amendment is therefore futile. The Motion to Amend should be denied.

**B.** **Plaintiff did not bring her claim within one year of the accrual of her cause of action or one year of filing her charge of discrimination.**

Plaintiff alleges that her additional claims "could not have been brought prior to the issuance the right to sue letter . . . ." *See* Plaintiff's Motion to Amend at 3:13-14. Plaintiff, nonetheless, has an obligation to file her claim within the applicable statute of limitations. Indeed, as she demonstrated in her initial complaint, Plaintiff was perfectly capable of filing a timely claim and then amending the claim once the ACRD charges had been perfected.

In addition, Plaintiff's claims against the City are untimely under the ACRA limitations provision. Under A.R.S. § 41-1481(D), a Plaintiff has one year from the date she

filed the claim to bring her cause of action in Superior Court. A.R.S. § 41-1481(D) ("In no event shall any action be brought pursuant to his article more than one year after the charge to which the action relates has been filed."). Here, Plaintiff filed her charged with the ACRD on February 21, 2020.  Under the ACRA, she was therefore required to file a claim against the City by February 21, 2021. The Notice of Right to Sue letter itself indicates that it was being issued because Plaintiff was approaching "the one year deadline for filing a civil action in Superior Court." See Exhibit 1 to Plaintiff's Motion for Leave.

Plaintiff, however, has failed to file suit against the City of Flagstaff even within one year of filing her charge.  She possessed the Right to Sue letter in December, but waited until February to even request leave to add the claims to this lawsuit.  As a consequence, regardless of which limitations period the Court applies to the matter, Plaintiff's ACRA claims against the City are untimely and futile.  Leave to amend to bring these claims should not be granted.

**C.    Plaintiff's Motion should be denied as amending the Complaint as proposed would prejudice Rick and Amanda Tadder.**

The Court should also deny Plaintiff's Motion to Amend because it would prejudice the Defendants Rick and Amanda Tadder. Arizona courts have been clear that amendments should only be granted when they do not prejudice the other parties. *See Cagle v. Carr*, 101 Ariz. 225, 227 (Ariz. 1966); *Frank v. Solomon*, 94 Ariz. 55 (1963); *Conway v. State Consolidated Pub. Co.*, 57 Ariz. 162 (1941).

Prejudice to the other parties is "the inconvenience and delay suffered when the amendment raises new issues or inserts new parties into the litigation." *Romo v. Reyes*, 26 Ariz. App. 374 (1976) (citing *Williams v. United States*, 405 F.2d 234 (5th Cir. 1968)). That is exactly what Plaintiff's First Amended Complaint would do here. Currently, this action involves a single claim for Tortious Interference with Employment brought against a single Defendant, Rick Tadder. Plaintiff's First Amended Complaint would raise new issues in the form of three additional causes of action and would insert a new party to the litigation, the City of Flagstaff. It

is eminently clear that Mr. Tadder would be greatly prejudiced by this amendment. As a consequence, the amendment should not be granted.

## III.     CONCLUSION

For the foregoing reasons, Defendants Rick and Amanda Tadder respectfully request that this Court deny Plaintiff's Motion for Leave to File the First Amended Complaint.

DATED this 3rd day of March, 2021.

JONES, SKELTON & HOCHULI, P.L.C.


By /s/ Gordon Lewis

Gordon Lewis
40 North Central Avenue, Suite 2700
Phoenix, Arizona  85004
Attorneys for Defendants City of Flagstaff,
Richard Tadder and Amanda Tadder

ORIGINAL of the foregoing electronically filed
this 3rd day of March 2021.

COPY of the foregoing mailed/e-mailed
this 3rd day of March 2021, to:

Cheri L. McCracken
2402 North 24th Street
Phoenix, Arizona 85008
cherimccracken@gmail.com

Christopher R. Houk
HOUK LAW FIRM, PLLC
1050 East Southern Avenue, Suite A-3
Tempe, AZ 85282
chouk@houklawfirm.com
jmontanez@houklawfirm.com

Attorneys for Plaintiff

/s/ Jennifer Bernardo

**From:**     GORDON LEWIS
**To:**       Jennifer Bernardo
**Subject:**  FW: E-Filing Status: Form Set # 5479874 Delivered
**Date:**     Wednesday, March 3, 2021 3:26:23 PM

---

**From:** TurboCourt Customer Service
**Sent:** Wednesday, March 3, 2021 3:26:13 PM (UTC-07:00) Arizona
**To:** GORDON LEWIS
**Subject:** E-Filing Status: Form Set # 5479874 Delivered

PLEASE DO NOT REPLY TO THIS EMAIL.

AZTurboCourt Form Set # 5479874 has been DELIVERED to Coconino County - Superior Court.

You will be notified when your documents have been processed by the court.

You MUST log in and check your filing status online at http://turbocourt.com/.

Here are your filing details:
Case Number: S0300CV202000504 (Note: If this filing is for case initiation, you will receive a separate notification when the case # is assigned.)

Case Title: SANDRA MATLOCK PLAINTIFF vs CITY OF FLAGSTAFF, A MUNICIPAL CORPORATION et al. DEFENDANT

Filed By: Gordon Lewis

AZTurboCourt Form Set: #5479874
AOC Submission ID #1432176

Keyword/Matter #: 16799-00044
Delivery Date and Time: Mar 03, 2021 3:25 PM MST

Forms:

Attached Documents:
Response: Response: Defendants Response in Opposition to the Motion to file the First Amended Complaint

Fees Paid:

Total Filing Fees: $0.00
Provider Fee: $6.50
E-Payment Fee: $0.20
Total Amount Paid: $6.70

You MUST log in and check your filing status and the e-service status of this form set online at http://turbocourt.com/.

If you have questions about your filing, please contact AOC Support Services, phone number 602-452-3519 or 1-800-720-7743, or e-mail pasupport@courts.az.gov.

Please have your AZTurboCourt Form Set # and AOC Submission ID available.

FILED
Valerie Wyant
CLERK, SUPERIOR COURT
03/04/2021 3:36PM
BY: JDUTTON
DEPUTY

Cheri L. McCracken, State Bar No. 006111
Attorney at Law
2402 North 24th Street
Phoenix, AZ 85008-1804
Phone: 602.231.0595
FAX: 602.231.0841
cherimccracken@gmail.com

Christopher R. Houk, State Bar No. 020843
**HOUK LAW FIRM, PLLC**
1050 East Southern Avenue, Suite A-3
Tempe, AZ 85282
Telephone: 480.569.2377
Facsimile: 480.569.2379
chouk@houklawfirm.com

*Attorneys for Sandra (Corder) Matlock*

Please send all documents to:
jmontanez@houklawfirm.com

**IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

**IN AND FOR THE COUNTY OF COCONINO**

| | |
|---|---|
| Sandra (Corder) Matlock, | Case No.  CV202000504 |
| Plaintiff, | |
| vs. | **STIPULATION TO EXTEND TIME TO FILE A REPLY TO DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR LEAVE TO FILE THE FIRST AMENDED COMPLAINT** |
| City of Flagstaff, a municipal corporation, Richard Tadder and Amanda Tadder, wife and husband, | |
| Defendants. | |

Plaintiff Sandra (Corder) Matlock and Defendants Richard Tadder and Amanda Tadder, jointly

stipulate and agree that Plaintiff shall have until Monday, March 29, 2021 to Reply to

Defendants' Response to Plaintiff's Motion for Leave to File the First Amended Complaint.

The reason for the request is that Counsel for Plaintiff, Christopher R. Houk has a hearing

*(sidebar, rotated text)* HOUK LAW FIRM, PLLC
1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282
Telephone: 480.569.2377 - Fax: 480.569.2379

scheduled to begin Monday March 8, 2021 through Friday March 12, 2021, and continuing on

Tuesday March 16, 2021 in *Hayes v. Department of Labor*, EEOC No. 540-2017-00061X Agency

No. 16-09-029, EEOC No. 540-2017-00061X Agency No. 16-09-029 EEOC No. 541-2018-

00095X, Agency No. 17-09-052.

A proposed form of order is attached.

RESPECTFULLY SUBMITTED this 4th day of March, 2021.

*/s/ Christopher R. Houk*
Christopher R. Houk
HOUK LAW FIRM, PLLC
1050 E. Southern Avenue, Ste. A-3
Tempe, Arizona 85282
*Attorney for Plaintiff*

*/s/ Gordon Lewis (with permission)*
Gordon Lewis
JONES, SKELTON & HOCHULI, P.L.C.
40 N. Central Avenue, Ste. 2700
Phoenix, Arizona 85004
*Attorney for Defendants*

I hereby certify that the original of the
foregoing was electronically filed using
AZ Turbo Court to the Clerk of the Court
and a copy sent via email
this 4th day of March, 2021 to:

Gordon Lewis
JONES, SKELTON & HOCHULI, P.L.C.
40 N. Central Avenue, Ste. 2700
Phoenix, Arizona 85004
GLewis@jshfirm.com
*Attorneys for Defendants*

Cheri L. McCracken
2402 North 24th Street
Phoenix, AZ 85008-1804
cherimccracken@gmail.com
*Attorney for Plaintiffs*

*/s/ James Montanez*

HOUK LAW FIRM, PLLC
1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282
Telephone: 480.569.2377  -  Fax:  480.569.2379

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

HOUK LAW FIRM, PLLC
1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282
Telephone: 480.569.2377 - Fax:  480.569.2379

FILED
Valerie Wyant
CLERK, SUPERIOR COURT
03/29/2021 5:45PM
BY: JDUTTON
DEPUTY

1  Cheri L. McCracken, State Bar No. 006111
2  Attorney at Law
   2402 North 24th Street
3  Phoenix, AZ 85008-1804
   Phone: 602.231.0595
4  FAX: 602.231.0841
   cherimccracken@gmail.com
5
6  Christopher R. Houk, State Bar No. 020843
   **HOUK LAW FIRM, PLLC**
7  1050 East Southern Avenue, Suite A-3
   Tempe, AZ 85282
8  Telephone: 480.569.2377
   Facsimile:  480.569.2379
9  chouk@houklawfirm.com

10 *Attorneys for Sandra (Corder) Matlock*

11
   Please send all documents to:
12 jmontanez@houklawfirm.com

13

14         **IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

15            **IN AND FOR THE COUNTY OF COCONINO**

16
   Sandra (Corder) Matlock,
17                                          Case No.  S0300-CV-2020-00504
              Plaintiff,
18                                          **PLAINTIFF'S REPLY IN SUPPORT**
   vs.                                      **OF HER MOTION FOR LEAVE TO**
19                                          **FILE THE FIRST AMENDED**
   City of Flagstaff, a municipal corporation,   **COMPLAINT**
20 Richard Tadder and Amanda Tadder, wife and
   husband,
21
22            Defendants.
23
24         Plaintiff responds to Defendants that she timely moved to amend her complaint

25 because 1) the proposed complaint relates back to the original filing of the complaint (filed

26 October 2020)—well before Defendants say the complaint should have been filed—and 2)

27 the notice of claim statute tolls the statute of limitation until the mandatory administrative

28
                                    Page 1 of 12

HOUK LAW FIRM, PLLC
1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282
Telephone: 480.569.2377 - Fax: 480.569.2379

HOUK LAW FIRM, PLLC
1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282
Telephone: 480.569.2377  -  Fax:  480.569.2379

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

process has run. In the alternative, equitable tolling should be applied to deem the proposed amended complaint timely filed.

## I.    Background.

On December 2, 2019, Defendants forced Plaintiff Sandra (Corder) Matlock to either resign or be terminated.

An employee asserting civil rights claims under the Arizona Civil Rights Act (ACRA) must file a Charge of Discrimination with the Arizona Civil Rights Division within 180 days of the date of harm and receive a Right to Sue Letter before filing a lawsuit.[1]

On February 25, 2020—85 days after her termination (well within the 180-day filing requirement in the ACRA)—Sandra timely filed a Charge of Discrimination with the Arizona Attorney General Civil Rights Division (ACRD) alleging employment discrimination claims against the City of Flagstaff which was dual filed with the Equal Employment Opportunity Commission (EEOC).

On May 27, 2020, Sandra served Defendants and the City of Flagstaff with notices of claim for the state interference of contract claim and civil rights claims.

On October 6, 2020, Sandra filed a Complaint in Superior Court against Defendants alleging an interference claim, and giving notice to the City of Flagstaff of her civil rights claims.

On December 1, 2020, the ACRD issued its Notice of Right to Sue, which was received by Sandra's attorney on December 3, 2020.[2] This letter gave Sandra either 90 days

---

[1] A.R.S. §§ 41–1481(A), (D).
[2] *See* Exhibit 1, Declaration of Denise Adetokunbo.

Page 2 of 12

to file suit or one year from the date of filing her Charge (whichever came first), under the Arizona Civil Rights Act.[3] (The EEOC has not yet issued its Right to Sue Letter.) Because the one-year deadline was earlier than the 90-day deadline, and since the Charge of Discrimination was filed on February 25, 2020, Sandra had to file suit on or prior to February 25, 2021.

On January 22, 2021, Counsel for Sandra asked Counsel for Defendants if he would consent to the amendment of the complaint to add the civil rights claims.[4] Counsel for Defendants would not consent.[5]

On February 11, 2021, because Sandra required Defendants' consent to amend under Rule 15 Ariz.R.Civ.P., Sandra filed a Motion for Leave to File the First Amended Complaint, which was filed prior to the February 25, 2021 deadline provided by the Right to Sue letter. Sandra's proposed First Amended Complaint added discrimination and retaliation claims under the ACRA. Specifically, Sandra alleges Defendants terminated her employment on basis of 1) sex and age in violation of A.R.S. § 41-1463 and 2) retaliation for complaining about sex and age discrimination under A.R.S. § 41-1464.

## II.    The Proposed Amended Complaint Relates Back to the October 2020 Complaint.

Defendants argue that the proposed First Amended Complaint should have been filed on or before either December 2, 2020 or February 25, 2021. But Sandra's proposed amendment relates back to the October 2020 complaint, so the civil rights claims proposed

---

[3] A.R.S. § 41-1481(D).
[4] *See* Exhibit 2 (email exchange).
[5] *Id.*

HOUK LAW FIRM, PLLC
1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282
Telephone: 480.569.2377 - Fax:  480.569.2379

HOUK LAW FIRM, PLLC
1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282
Telephone: 480.569.2377 - Fax: 480.569.2379

in the First Amended Complaint are timely. In *Ritchie v. Grand Canyon Scenic Rides*, 165 Ariz. 460, 799 P.2d 801 (1990), the Arizona Supreme Court held that an amended complaint to add a new party relates back to the filing of the original complaint if the new party is served within the time prescribed by the applicable statute of limitations plus the time allowed for service of process under Rule 4(i) (90 days), and if the claim asserted in the amended pleading arose out of the same occurrence set forth in the original pleading.

Here, Sandra's original Complaint and the proposed First Amended Complaint are based on the same set of facts surrounding the Defendants' conduct leading up to and during Sandra's forced resignation on December 2, 2019. Sandra raises no new facts substantively in the proposed First Amended Complaint. As noted below, Sandra filed the Motion for Leave to amend the complaint within the applicable statutes of limitation, so the First Amended Complaint is deemed filed within the limitations period.[6] Therefore, the proposed

---

[6] The timely filing of a Motion for Leave to Amend the complaint tolls the statute of limitations for the claims in the proposed amended complaint. *DeLoach v. Ryan*, No. CV15530TUCRMJR, 2018 WL 5258794, at *4 (D. Ariz. May 21, 2018), *report and recommendation adopted*, No. CV-15-00530-TUC-RM, 2018 WL 5255182 (D. Ariz. Oct. 22, 2018) ("DeLoach filed his Amended Petition well-within the time provided by the Court for him to do so. As such, the Court is persuaded that even though filed after the expiration of the statute of limitations, the Amended Petition should be deemed timely filed.") (citing cases); *Mayes v. AT & T Info. Sys., Inc.*, 867 F.2d 1172, 1173 (8th Cir. 1989)

> (Amended complaints may not be filed until the court has ordered leave to do so. A number of courts have addressed the situation where the petition for leave to amend the complaint has been filed prior to expiration of the statute of limitations, while the entry of the court order and the filing of the amended complaint have occurred after the limitations period has expired. In such cases, the amended complaint is deemed filed within the limitations period.);

*Moore v. State of Ind.*, 999 F.2d 1125, 1131 (7th Cir. 1993)

> (As a party has no control over when a court renders its decision regarding the proposed amended complaint, the submission of a motion for leave to amend, properly accompanied by the proposed amended complaint that provides notice of the substance of those amendments, tolls the statute of limitations, even though technically the amended complaint will not be filed until the court rules on the motion.);

Page 4 of 12

First Amended Complaint relates back to the original Complaint, which was filed on October

6, 2020—well within the statute of limitations of both A.R.S. § 12-821 and A.R.S. § 41-

1481(D). Therefore, Sandra's proposed First Amended Complaint is not time-barred.

**III.    Alternatively, Sandra Is Required to Exhaust Administrative Remedies for Her Civil Rights Claims and the Notice of Claim Statute Tolls the Deadlines During Mandatory Exhaustion.**

If the relation-back argument is not accepted by the court, Sandra argues in the

alternative that her proposed First Amended Complaint is timely because the Notice of

Claim statute tolls the deadlines during mandatory exhaustion of her claims under the

ACRA.

"The Arizona Civil Rights Act …requires an employee to file a charge with the

Arizona Civil Rights Division within 180 days of an alleged violation, A.R.S. § 41–1481(A)

(2018), and an employee who does not do so loses her right to sue…."[7] Exhaustion of the

administrative remedies occurs when the Right to Sue letter is issued.[8] A.R.S. § 41-1481(D)

states that "[w]ithin ninety days after the giving of such notice [of the right to sue] a civil

action may be brought against the respondent named in the charge by the charging party . .

. ."

The Notice of Claim statute is tolled during the mandatory administrative claims

process. A.R.S. § 12-821.01(C) states that "any claim that must be submitted to . . . an

HOUK LAW FIRM, PLLC
1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282
Telephone: 480.569.2377 - Fax: 480.569.2379

---

*Rothman v. Gregor*, 220 F.3d 81, 96 (2d Cir. 2000) ("When a plaintiff seeks to add a new defendant in an existing action, the date of the filing of the motion to amend constitutes the date the action was commenced for statute of limitations purposes.") (citations and quotations omitted).
[7] *Peterson v. City of Surprise*, 244 Ariz. 247, 251, 418 P.3d 1020, 1024 (Ct. App. 2018) citing *Ornelas v. Scoa Indus., Inc.,* 120 Ariz. 547, 547, 587 P.2d 266, 266 (Ct. App. 1978).

Page 5 of 12

administrative claims process . . . pursuant to a statute . . . shall not accrue for the purposes of this section until all such procedures, processes, or remedies have been exhausted."[9]

Here, Sandra exhausted her administrative remedies as required by the ACRA prior to filing the complaint and as authorized by the Notice of Claim statute. She commenced the mandatory administrative process within 180 days of the accrual of the alleged violation—the issuance of the right to sue letter from the ACRD—and filed her Motion for Leave to File the First Amended Complaint within one year of filing the charge of discrimination.[10] Specifically, Sandra's Motion for Leave to File the First Amended Complaint was filed on February 11, 2021 within one year of the filing of the charge of discrimination, and is therefore timely under A.R.S. § 12-821 and the ACRA.[11]

**IV. The ACRA Requires Sandra to Exhaust Administrative Remedies Prior to Filing Suit and the Notice of Claim Statute Tolls Its Limitations While the Administrative Remedies Are Being Exhausted.**

Defendants argue that Sandra's claims of discrimination and retaliation are time-barred under the Notice of Claim statute under A.R.S. § 12-821.01 because she did not file

[9] *Finkle v. Ryan*, 174 F. Supp. 3d 1174, 1187 (D. Ariz. 2016); *Brown v. Valoff*, 422 F.3d 926, 942–43 (9th Cir. 2005).

[10] A.R.S. § 41-1481(D) required Plaintiff to file suit within 90 days or one year from the date of filing her charge to file suit under the Arizona Civil Rights Act, whichever is earlier. A.R.S. § 41-1481(D)

> (Within ninety days after the giving of such notice [of the right to sue] a civil action may be brought against the respondent named in the charge by the charging party . . . . In no event shall any action be brought pursuant to this article more than one year after the charge to which the action relates has been filed.).

In this case, the earlier of the two dates was one year of filing the charge of discrimination, so Plaintiff had to file suit on or prior to February 25, 2021. Plaintiff filed her Charge with the Division on February 25, 2020, so she needed to amend her complaint to include the discrimination and retaliation claims by February 25, 2021.

[11] *See* n.6, *supra*.

Houk Law Firm, PLLC
1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282
Telephone: 480.569.2377 - Fax: 480.569.2379

the Complaint on December 2, 2020, even though the Right to Sue Letter was mailed the day before on December 1, 2020 by the ACRD.[12] The Right to Sue letter was not received by Sandra's attorney until December 3, 2020.

Sandra couldn't have filed her complaint before exhausting her administrative remedies,[13] and, in any event, the Notice of Claim statute tolls its limitations during the mandatory administrative claims process.[14] This tolling meant that Sandra's claim accrued when the Right to Sue letter was received on December 3, 2020 and thus she had at the very least one year from the filing of the charge of discrimination, or until February 25, 2021, to file suit.

## V. Defendants Refused to Consent to the Amendment of the Complaint, Forcing Sandra to Move for Leave to Amend Complaint.

Alternatively, Defendant argues that Sandra should have filed the civil rights claims by February 25, 2021,[15] one year from the date she filed her charge of discrimination. The Notice of Right to Sue states the ARCD deems the filing date of the charge of discrimination to be February 25, 2020, so the complaint was to be filed by February 25, 2021. Had Defendants consented to the amendment of the complaint on January 22, 2021, when Sandra so requested, the Amended Complaint could have been filed by February 25, 2021. But Defendants refused to consent to the amendment, so pursuant to Rule 15, Ariz.Civ.P., Sandra

---

[12] *See* Exhibit 3, ACRD's Right to Sue Letter.
[13] A.R.S. § 41–1481(A); *Peterson v. City of Surprise*, 244 Ariz. at 251, 418 P.3d at 1024 citing *Ornelas v. Scoa Indus., Inc.,* 120 Ariz. at 547, 587 P.2d at 266.
[14] A.R.S. § 12-821.01(C)
[15] Defendants incorrectly use February 21, 2020 as the date of the filing of the charge of discrimination. The ACRD's Right to Sue letter, attached as Exhibit 3, notes the filing date of the charge of discrimination as February 25, 2020.

HOUK LAW FIRM, PLLC
1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282
Telephone: 480.569.2377 - Fax: 480.569.2379

had to filed her motion for leave to amend the complaint, which she did on February 11, 2021.[16] By doing so, Sandra met the February 25, 2021 deadline under A.R.S. § 41-1481(D).[17]

**VI. Alternatively, Equitable Tolling Is Appropriate.**

**A. Defendants' Argument that Sandra's October 2020 Complaint Should Have Been Amended with the ACRA Claims Filed by December 2, 2020 Is Subject to Equitable Tolling.**

In the alternative, though Sandra's cause of action did not accrue until her administrative remedies had been exhausted—December 3, 2020—when Sandra's attorney received her right-to-sue letter from the Division and thus Sandra had until at least February 25, 2021 (one year after filing the charge of discrimination) to bring her state civil rights claims, if the court finds another timetable to be applicable, Sandra moves the court to deem her complaint timely under principles of equitable tolling.

Because the statute of limitations is a procedural requirement, it is subject to equitable tolling, including the limitations contained in the ACRA and the Notice of Claim statute.[18] Court have expressed several circumstances where equitable tolling is appropriate.

---

[16] Counsel for Defendants argued that Sandra could have just filed her complaint without leave of court, but that is not so under Rule 15. If Counsel is arguing that Sandra could have filed a separate lawsuit, that is not consistent with joinder rules. *Staffco, Inc. v. Maricopa Trading Co.*, 122 Ariz. 353, 357, 595 P.2d 31, 35 (1979) ("The thrust of these two rules is that, whenever possible, all claims should be disposed of in one action. This prevents a multiplicity of actions and allows the court to grant complete justice to all the parties."). Alternatively, if that position is persuasive, equitable tolling should be permitted as discussed in the following section.
[17] *See* n. 6, supra.
[18] "Time requirements in lawsuits between private litigants are customarily subject to 'equitable tolling'...." *Irwin v. Dep't of Veterans Affs.*, 498 U.S. 89, 95 (1990) ("Indeed, we have held that the statutory time limits applicable to lawsuits against private employers under Title VII [Federal Civil Rights Act] are subject to equitable tolling."); *Kyles v. Contractors/Engineers Supply, Inc.*, 190 Ariz. 403, 406, 949 P.2d 63, 66 (Ct. App. 1997) (tolling the limitations under the ACRA;

HOUK LAW FIRM, PLLC
1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282
Telephone: 480.569.2377 - Fax: 480.569.2379

HOUK LAW FIRM, PLLC
1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282
Telephone: 480.569.2377 - Fax: 480.569.2379

- "Equitable tolling applies when the plaintiff is prevented from asserting a claim by wrongful conduct on the part of the defendant, or when extraordinary circumstances beyond the plaintiff's control made it impossible to file a claim on time."[19]

- "[A] defendant may not use the statute of limitations as a shield for inequity."[20]

- "The Court [in *Irwin v. Dep't of Veterans Affs.*, 498 U.S. 89, 95 (1990)] noted that federal courts have allowed equitable tolling in situations where the claimant diligently sought judicial relief by filing a defective pleading during the statutory period or where the complainant had been induced by his adversary to allow the filing deadline to pass."[21]

- "'A court in an appropriate case may temper the application of the bar in exercise of its equitable powers.'"[22]

- A "lack of clarity in the law that would justify a court's equitable tolling of a limitations period."[23]

Here, with regard to Defendants' argument that the filing of the lawsuit had to occur by December 2, 2020, the circumstances of Sandra's case are appropriate for equitable tolling of the statute of limitations. Sandra suffered harm on December 2, 2019 by being discriminatorily terminated. Sandra timely filed a charge with the ACRD, as mandated by the ACRA, on February 25, 2020. The Right to Sue Letter was only mailed to Sandra's lawyer Cheri McCracken according to the mailing certification on the Right to Sue letter. Ms. McCracken's office did not receive the Right to Sue Letter until December 3, 2020.[24]

---

"Like a statute of limitations, this procedural requirement [regarding the Notice of Claim statute] is subject to waiver, estoppel and equitable tolling." *Pritchard v. State*, 163 Ariz. 427, 432, 788 P.2d 1178, 1183 (1990).
[19] *Stoll v. Runyon*, 165 F.3d 1238, 1242 (9th Cir. 1999), *as amended* (Mar. 22, 1999).
[20] *Nolde v. Frankie*, 192 Ariz. 276, 279, 964 P.2d 477, 480 (1998)
[21] *Cap. Tracing, Inc. v. United States*, 63 F.3d 859, 861 (9th Cir. 1995)
[22] *Id.* at 862 citing *Catawba Indian Tribe of S.C. v. United States*, 982 F.2d 1564, 1566 (Fed. Cir. 1993)
[23] *Id.*
[24] Exhibit 1, Declaration of Denise Adetokunbo.

Houk Law Firm, PLLC
1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282
Telephone: 480.569.2377 - Fax: 480.569.2379

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Sandra acted reasonably and in good faith by bringing her ACRA claim within the one-year time limitation provided for in the ACRA (within one year of the February 25, 2020 filing of the charge of discrimination). A procedural impediment existed in that Sandra could not bring her proposed cause of action without the approval of the ACRD, and Sandra didn't receive the Right to Sue letter until December 3, 2020. This was a circumstance beyond the Sandra's control that made it impossible for her to file all of her claims within one year of her forced resignation, and therefore makes the case appropriate for equitable tolling.

**A. Defendants' Argument that Sandra's October 2020 Complaint Should Have Been Amended with the ACRA Claims Filed by February 25, 2021 Is Subject to Equitable Tolling.**

Further, with regard to Defendants' argument that the October 6, 2020 Complaint should have been amended with civil rights claims by February 25, 2021, equitable tolling should apply. The ACRA states that a plaintiff must bring her cause of action in Superior Court within one year from the date she filed her claim with ACRD.[25] Though Sandra filed her Motion for Leave to File the First Amended Complaint on February 11, 2021 and thus brought the action timely within the year,[26] this deadline should also be equitably tolled, if the court finds this requirement was not met. Sandra has brought her case diligently. Defendants' refusal to consent to the amendment of the complaint under Arizona Rule of Civil Procedure 15(a)(2), prevented the filing of the actual amended complaint by February 25, 2021 and thus equitable tolling is warranted.

---

[25] A.R.S. § 41-1481(D).

[26] *See* n. 6, supra.

Page 10 of 12

**B.      Sandra's Proposed Amendment Is Not Prejudicial to Defendants.**

A denial of leave to amend should only be granted where there exists "'undue delay in the request, bad faith or a dilatory motive on the part of the movant, undue prejudice to the opposing party as a result of the amendment, or futility in the amendment."[27] Prejudice is "the inconvenience and delay suffered when the amendment raises new issues or inserts new parties into the litigation."[28] "Denial of leave to amend is generally considered an abuse of discretion where the amendment merely seeks to add a new legal theory supported by factual issues already in the case."[29]

Here, Defendants argue that Mr. Tadder "would be greatly prejudiced" by the proposed Amendment. But, Defendants would not be unduly prejudiced by this proposed Amendment because Sandra does not raise new factual issues; Sandra relies on the same transactions at issue in her original claim. Sandra's hands were procedurally tied in filing the discrimination and retaliation claims in the original Complaint. Sandra gave notice of these potential claims when filing the original Complaint. Additionally, Sandra does not add these new claims close to the end of trial or discovery—rather, she brings them at the initial phase of the case before discovery has even started. Defendants will not suffer from any inconvenience or delay if the Sandra amends her Complaint.

---

[27] *Bishop v. State Dept. of Corr.*, 172 Ariz. 472, 474–75, 837 P.2d 1207, 1209–10 (Ariz. Ct. App. 1992) (finding undue delay where Plaintiff "sought to amend her complaint more than two years after filing her original complaint and only a few months before the date set for trial.").
[28] *Spitz v. Bache & Co., Inc.*, 122 Ariz. 530, 531, 596 P.2d 365, 366 (Ariz. 1979).
[29] *Walls v. Arizona Dep't of Pub. Safety*, 170 Ariz. 591, 597, 826 P.2d 1217, 1223 (Ct. App. 1991); *Uyleman v. D.S. Rentco*, 194 Ariz. 300, 303, 981 P.2d 1081, 1084 (Ariz. Ct. App. 1999) (Courts generally abuse their discretion in denying leave to amend "where the amendment merely advances a new legal theory.").

HOUK LAW FIRM, PLLC
1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282
Telephone: 480.569.2377 - Fax: 480.569.2379

**C.    Conclusion.**

Despite having actual notice of Sandra's civil rights claims through 1) the charge of discrimination that was filed 85 days after her termination and 2) within 177 days through the notice of claim letter served on them on May 27, 2020, Defendants ask this court to violate the ACRA and the Notice of Claim statute by requiring the filing of the civil rights claims without providing the time required by the ACRA and without tolling the Notice of Claim deadlines.   Alternatively, Defendants argue that Sandra should have violated Rule 15 by filing an amendment to the Complaint both without their consent and without leave of the Court by February 25, 2021. Sandra respectfully requests the court to reject these arguments and grant Sandra leave to amend her complaint.

DATED this 29th day of March, 2021.

By:    /s/ Christopher R. Houk
Christopher R. Houk
*Attorneys for Sandra Matlock*

The foregoing was e-filed
with the Court this 29th day
of March 2021
and a copy emailed to:

Gordon Lewis
**JONES, SKELTON & HOCHULI, P.L.C.**
40 North Central Avenue, Suite 2700
Phoenix, Arizona 85004
*Attorneys for Defendants*

/s/Christopher R. Houk
Christopher R. Houk

Page 12 of 12

HOUK LAW FIRM, PLLC
1050 East Southern Avenue, Suite A-3, Tempe, AZ 85282
Telephone: 480.569.2377 - Fax: 480.569.2379

Exhibit 1

I, Denise Adetokunbo, do declare as follows:

I am a paralegal for Cheri McCracken who represents Sandra (Corder) Matlock. It is the practice of the firm to record the date that incoming mail is received on the piece of mail itself and enter that information into a log. I received the Right to Sue Letter from the Arizona Civil Rights Division on December 3, 2020. On the date of receipt, I placed a handwritten notation at the bottom of the Right to Sue Letter indicating the date of receipt as December 3, 2020.

I declare under penalty of perjury that the above is true and correct.

Dated: __3-29-2021__          /s/ Denise Adetokunbo

                              _____

                              Denise Adetokunbo

**Signature:** _Denise Adetokunbo_
Denise Adetokunbo (Mar 29, 2021 13:47 PDT)

**Email:** cherimccracken@gmail.com

# Declaration from Denise

**Final Audit Report** 2021-03-29

| | |
|---|---|
| Created: | 2021-03-29 |
| By: | christopher houk (chouk@houklawfirm.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAU1QTMaK5Hs-WtiqZ44V_H3dfgHkonTbv |

## "Declaration from Denise" History

📄 Document created by christopher houk (chouk@houklawfirm.com)
2021-03-29 - 8:04:28 PM GMT- IP address: 108.170.45.34

📧 Document emailed to Denise Adetokunbo (cherimccracken@gmail.com) for signature
2021-03-29 - 8:04:45 PM GMT

📄 Email viewed by Denise Adetokunbo (cherimccracken@gmail.com)
2021-03-29 - 8:44:28 PM GMT- IP address: 66.249.84.85

✍️ Document e-signed by Denise Adetokunbo (cherimccracken@gmail.com)
Signature Date: 2021-03-29 - 8:47:08 PM GMT - Time Source: server- IP address: 184.187.220.222

✅ Agreement completed.
2021-03-29 - 8:47:08 PM GMT

🅰️ Adobe Sign

Exhibit 2

| | |
|---|---|
| **From:** | GORDON LEWIS |
| **To:** | Chris Houk |
| **Cc:** | Cheri McCracken; Ian Beck |
| **Subject:** | RE: Corder - City of Flagstaff |
| **Date:** | Tuesday, January 26, 2021 10:56:52 AM |
| **Attachments:** | image001.png |

Chris,

I hope that you and your family are healthy and staying safe.

The Tadders will not agree to Ms. Corder's proposal to amend the complaint.

Feel free to contact me if you want to discuss the matter.

Very truly yours,

Gordon Lewis



**GORDON LEWIS** | Partner

Jones, Skelton & Hochuli, P.L.C.

40 North Central Avenue, Suite 2700 | Phoenix, AZ 85004

**P** (602) 263-7341 | **F** (602) 200-7897

**website** | **bio** | **vCard** | **map** | **email** | **linkedin** | **facebook** | **twitter**

**From:** Chris Houk [mailto:chouk@houklawfirm.com]
**Sent:** Friday, January 22, 2021 2:56 PM
**To:** GORDON LEWIS
**Cc:** Cheri McCracken; James Montanez; Marina Kovačević
**Subject:** Corder - City of Flagstaff

Good Afternoon and Happy New Year Gordon:

I hope you and your family are well.

Attached please find our First Amended complaint. I am writing to ask if you would consent to the filing of the complaint under Rule 15(a)(2).

Also, I believe we were talking about mediation (through the Coconino County courts, for example) at some point. Is that still a possibility?

Thanks. Chris

This electronic mail transmission contains information from the law firm Jones, Skelton & Hochuli, P.L.C. that may be confidential or privileged. Such information is solely for the intended recipient, and use by any other party is not authorized. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of this message, its contents or any attachments is prohibited. Any wrongful interception of this message is punishable as a Federal Crime. Although this e-mail and any attachments are believed to be free of any virus or other defect that

might affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by the sender for any loss or damage arising in any way from its use. If you have received this message in error, please notify the sender immediately by telephone (602) 263-1700. Thank you.

Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS under Circular 230, we inform you that any U.S. federal tax advice contained in this communication (including any attachments), unless otherwise specifically stated, was not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any matters addressed herein.

Exhibit 3



## OFFICE OF THE ARIZONA ATTORNEY GENERAL

### CIVIL LITIGATION DIVISION
### DIVISION OF CIVIL RIGHTS SECTION

**MARK BRNOVICH**
**ATTORNEY GENERAL**

## NOTICE OF RIGHT TO SUE

**REBEKAH BROWDER**
**CHIEF COUNSEL**

_Sandra Marie Corder_          v.          _City of Flagstaff_

CRD No.:    CRD-2020-0189                EEOC No.: 35A-2020-00277

On 02/25/2020, you filed a charge with the Division of Civil Rights Section alleging employment discrimination. Arizona law provides that you may bring a civil action in Superior Court of the county where the alleged discriminatory action took place. Should you decide to file a civil action, you must do so **within 90 days** of the date you receive this Notice or **within one year** of the date you filed the charge, **whichever comes first**. A.R.S. 41-1481(D.)

This Notice of Right to Sue letter is being issued because:

the Division of the Civil Rights Section has not completed the processing of your charge(s), but there are approximately 90 days left before the expiration of the one year deadline for filing a civil action in Superior Court.

If you have any questions concerning this notice, please contact us at 602-542-5263 or toll free at 1-877-491-5742. If you need legal assistance, you should seek the advice of an attorney.

BY:

_Stephen Scott, Compliance Manager_

Sent by regular mail this 1st day of December 2020

Cc: Sandra Marie Corder c/o Cheri L. McCracken, Esq. and City of Flagstaff c/o Gordon Lewis, Esq.

2005 NORTH CENTRAL AVENUE, PHOENIX, AZ 85004 • 602.542.5263
400 WEST CONGRESS, SOUTH BUILDING, SUITE S-315, TUCSON, AZ 85701 • 520.628.6500
WWW.AZAG.GOV

rec'd
12/3/2020